Case 1:21-cr-00657-BAH Document 19 Filed 10/28/21 Page 1 of 13
Case 1:21-mj-00657-RMM Document 6 Filed 10/28/21 Page 1 of 13

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. 21-mj-622 |
| Cody Mattice ) | |
| _____ ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:
  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
    ☐**(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C.
      § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
    ☐**(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
    ☐**(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the
      Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act
      (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
    ☐**(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a)
      through (c) of this paragraph, or two or more State or local offenses that would have been offenses
      described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal
      jurisdiction had existed, or a combination of such offenses; **or**
    ☐**(e)** any felony that is not otherwise a crime of violence but involves:
      **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
      **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
  ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C.
    § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to
    Federal jurisdiction had existed; **and**
  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was
    committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the
    defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

❏ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

  ❏ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

  ❏ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

  ❏ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

  ❏ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

  ❏ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

❏ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

  ❏ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis, with the evidence or argument presented by the defendant summarized in Part III.C.

  ❏ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

  **OR**

  ❏ The defendant has not presented sufficient evidence to rebut the presumption. Moreover, after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

### Part III - Analysis and Statement of the Reasons for Detention

A. After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

  ☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

  ❏ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

B. In addition to any findings made on the record at the hearing, the reasons for detention include the following:

  ☑ Weight of evidence against the defendant is strong
  ☑ Subject to lengthy period of incarceration if convicted
  ❏ Prior criminal history
  ❏ Participation in criminal activity while on probation, parole, or supervision

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

- ❒ History of violence or use of weapons
- ❒ History of alcohol or substance abuse
- ❒ Lack of stable employment
- ❒ Lack of stable residence
- ❒ Lack of financially responsible sureties
- ❒ Lack of significant community or family ties to this district
- ❒ Significant family or other ties outside the United States
- ❒ Lack of legal status in the United States
- ❒ Subject to removal or deportation after serving any period of incarceration
- ❒ Prior failure to appear in court as ordered
- ❒ Prior attempt(s) to evade law enforcement
- ❒ Use of alias(es) or false documents
- ❒ Background information unknown or unverified
- ❒ Prior violations of probation, parole, or supervised release

**C. OTHER REASONS OR FURTHER EXPLANATION:**

The defendant's evidence/arguments for release:

See Attachment.

Nature and circumstances of offense:

See Attachment.

The strength of the government's evidence:

See Attachment.

The defendant's history and characteristics, including criminal history:

See Attachment.

The defendant's dangerousness/risk of flight:

See Attachment.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: 10/26/2021

BERYL A. HOWELL
Chief Judge, United States District Court
for the District of Columbia

*United States v. Mattice*, 21-MJ-622

**ATTACHMENT TO ORDER OF DETENTION PENDING TRIAL, PART III. C:**
**Consideration of Defendant's evidence/arguments for release and**
**18 U.S.C. § 3142(g) Factors**

(1) **The Nature and Circumstances of the Offense**:

The nature and circumstances of the offense weigh heavily in favor of detention. Defendant is charged with five felonies and two misdemeanor offenses, Criminal Compl. ("Compl."), ECF No. 1, based on his alleged offense conduct, on January 6, 2021, of engaging in two separate confrontations with law enforcement that involved defendant aggressively pushing himself to the front of the mob in two separate locations outside the U.S. Capitol building and, in the first confrontation, ripping away a crowd-control barrier that a defensive line of police officers had erected to try to bar rioters from entering the U.S. Capitol Building through the West Plaza and, in the second confrontation, spraying a chemical agent, believed to be pepper spray, directly at police officers packed tightly in a stationary, defensive position as they tried to bar rioters from entering the U.S. Capitol Building through an archway located in the Lower West Terrace. Statement of Facts ("SOF") at 7–12, ECF No. 1-1.

The government proffers—and has presented video evidence showing—that defendant carried out two coordinated and sustained attempts to breach the police line in the West Plaza and in an archway on the Lower West Terrace to facilitate the progress of the mob into the Capitol Building.[1] In so doing, defendant disregarded police officers' instructions and encouraged others to do the same. First, at approximately 2:30 PM, publicly available video footage shows defendant at the front of the mob gathered at the West Plaza where a massive group of rioters faced off against a line of police officers, who were in a stationary, defensive

---

[1] The government provided eleven video exhibits directly to the Court and filed a Report on the Video Evidence Described in the Government's Motion for Review of Release Order, ECF No. 12, describing the videos. The government was then directed, with the consent of the parties, to make the video exhibits publicly available using the "drop box" technical solution described in Standing Order 21-28, *In re: Media Access to Video Exhibits in Pretrial Capitol Cases. See* Min. Order (Oct. 22, 2021).

position guarding access to the Capitol Building. Gov't's Mot. for Review and Appeal of Release Order ("Gov't's Mot.") at 7, ECF No. 7; Gov't's Video 1. Video footage shows the police using a long metal barrier to protect themselves and keep the mob at bay and instructing rioters, including defendant, to step back. Gov't's Video 1. Seconds later, defendant grips the top of the barrier and pulls it away, passing the barrier back into the crowd of other rioters. *Id*. Minutes later, the mob completely overruns the police, forcing them to retreat from the West Plaza, and the crowd of rioters begin climbing the stairs to the Lower West Terrace. *Id*.; Gov't's Mot. at 10.

Second, at approximately 4:00 PM, publicly available video footage shows defendant at the Lower West Terrace, forcing his way to the front of a densely-packed mob surging towards an archway door to the Capitol Building. Defendant appears to climb over other rioters and onto a ledge next to an archway, where police were standing tightly shoulder to shoulder, back to back in a stationary, defensive position guarding the doorway into the Capitol Building. Gov't's Video 2. After positioning himself on a ledge slightly above the rioters, defendant receives a canister from an individual in the crowd and then stretches his body and arm in the opening of the archway to spray directly at the officers. *Id*. Other video footage shows defendant spraying the canister at police until the canister is empty. Gov't's Video 2; Gov't's Video 3. Defendant's friend, and co-defendant, James Mault, also receives a canister from an individual in the crowd that he sprays at officers and then passes to another individual, who continues to spray the canister's contents at the police. Gov't's Video 3. Body-worn camera footage of an officer inside the archway entrance and CCTV footage from the same archway shows the officers being unable to escape the spray, even as one officer puts his arm up in an attempt to block the spray directed by defendant from directly striking him. Gov't's Video 4; Gov't's Video 5.

Defendant's actions were part of a sustained assault on the Lower West Terrace, where, the government proffers that approximately twenty-seven minutes after defendant's contribution to the mob's efforts by spraying the police officers, rioters were able to pull two officers from under the archway and into the mob and assaulted them. Gov't's Mot. at 11 n.4.

As a result of this offense conduct, as noted, defendant is charged with five serious felony offenses. Specifically, he is charged with (1) forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with any person designated in 18 U.S.C. §1114 while engaged in or on account of the performance of official duties, in violation of 18 U.S.C. § 111(a)(1) and (b), which offense carries up to 20 years imprisonment; (2) committing or attempting to commit any act to obstruct, impede, or interfere with any law enforcement officer lawfully engaged in the lawful performance his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects the performance of any federally protected function, in violation of 18 U.S.C. § 231(a)(3), which offense carries up to 5 years imprisonment; (3) knowingly entering or remaining in any restricted building or grounds without lawful authority while using or carrying a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A), which offense carries up to 10 years imprisonment; (4) knowingly, and with intent to impede or disrupt the orderly conduct of government business or official functions, engaging in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct in fact impedes or disrupts the orderly conduct of government business and official functions, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A), which offense also carries up to 10 years imprisonment; and (5) knowingly engaging in any act of physical violence against any person or property in any restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A), which

offense also carries up to 10 years imprisonment. The government proffers that the chemical spray defendant used qualifies as a dangerous weapon, based on statements by defendant to law enforcement that the chemical spray used was pepper spray, Gov't's Mot. at 16, and text messages sent by the defendant indicating that he planned to bring pepper spray to the protest and that he "maced a [police officer]," Gov't's Mot. at 17–18. Additionally, defendant, in a statement to another rioter captured on videotape, admitted to spraying police officers with pepper spray. Gov't Video 9.

Defendant appears to have engaged in prior planning for violence. *United States v. Chrestman*, 525 F. Supp. 3d 14, 26 (D.D.C. 2021); *see* Gov't's Mot. at 23. Specifically, defendant texted with Mault and others about what supplies to bring to the protests, including "[g]loves, [k]nife, [b]aton, [p]epper spray, [a]sskicking boots, [h]elmet, [and] [e]ye protection." Gov't's Mot. at 23. Defendant's statements made on the way to the Capitol, captured on videotape, demonstrate his intention to "cause[] mayhem and disrupt[] the democratic process." *Chrestman*, F. Supp. 3d at 26; Gov't's Video 6; Gov't's Video 7, Gov't's Video 8. Defendant explicitly stated that he and his friends came "to fuck shit up," Gov't's Video 7, and that they planned to "get[] up front" and "take" Capitol Hill, Gov't's Video 8. Additionally, defendant's use of a dangerous weapon during the riot, "indicates at least some degree of preparation for the attack and an expectation that the need to engage in violence against law enforcement . . . might arise." *Chrestman*, F. Supp. 3d at 26. Although several items defendant planned to bring could have been used for non-violent defensive purposes, *see* Def.'s Opp'n to Gov't's Mot. for Review and Appeal of Release Order at 11, ECF No. 11, the fact that defendant brought several of these items and then engaged in violent confrontation with law enforcement indicates that their intended use was not benign.

*United States v. Mattice*, 21-MJ-622

Defendant did not enter the Capitol building, *Chrestman*, F. Supp. 3d at 27, but the government proffers evidence that defendant coordinated with other riot participants before and during the riot, *id.* at 26. As mentioned earlier, defendant's text message with his group of friends on January 5, Gov't's Mot. at 17, his formal coordination with Mault to bring chemical spray with them, *id.*, and his possibly informal, spontaneous coordination with other rioters to be handed a cannister of chemical spray to deploy against police, Gov't's Video 3, highlight defendant's efforts to ensure a sustained attack. The government also proffers evidence that demonstrates that defendant tried to "assume[] . . . a *de facto* leadership role in the assault," *Chrestman*, F. Supp. 3d at 26–27, by positioning himself at the front of the mob in two different locations outside the Capitol building to confront officers by ripping away the police barrier and again at another location at the Lower West Terrace to deploy pepper spray against officers, suggesting that "he played a significant role in the efforts to disperse law enforcement who were protecting the Capitol," *United States v. Caldwell*, --- F. Supp. 3d. ----, No. 21-cr-181 (CKK), 2021 WL 2036667 at *8 (D.D.C. May 21, 2021).

Defendant's "confront[ations with] . . . law enforcement," including his "attempt[s] to injure" an entire line of officers at whom he sprayed pepper spray, demonstrates defendant's willingness to engage in aggressive and violent conduct towards police officers in order to pursue his own political views. *Chrestman*, F. Supp. 3d at 27. The D.C. Circuit has instructed that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). This defendant falls within the "different category" of January 6 defendants identified in

*Munchel* by virtue of having assaulted police officers in attempting to overwhelm a police line and gain entry to the Capitol building. By contrast, the defendants in *Munchel*, though carrying a dangerous weapon (taser) inside the Capitol, did not activate the weapon, vandalize any property, or physically harm any person. *Id*.

The nature and circumstances of defendant's offense conduct weigh heavily in favor of pretrial detention.

**(2) The Weight of the Evidence Against the Person:**

The weight of the evidence against this defendant also strongly favors pretrial detention. The government has presented five videos and numerous photos showing defendant engaging in the offense conduct underlying the charges against him. SOF at 7–13; Gov't's Videos 1–5. The videos, and screenshots taken from the videos, clearly show defendant engaging in the two separate confrontations described above. Defendant also admitted in an interview with law enforcement that the individual in several images taken at the Capitol was him, including one in which he was spraying pepper spray into the Lower West Terrace archway. Gov't's Mot. at 16. Additionally, defendant texted family and friends during and after the riot describing his conduct, including that "[defendant and Mault] got everyone to push through the police," *id*. at 17, that defendant "yanked a crowd-control gate away from police officers," *id*., and that defendant "maced a cop," *id*. at 18.

In short, the weight of the evidence is very strong and favors pretrial detention.

**(3) The History and Characteristics of the Person:**

Defendant is 28 years old and has very close ties to the Rochester area, where he has lived for most of his life. W.D.N.Y. Hr'g Tr. #2 (Oct. 15, 2021) at 54–55. He is a stay-at-home father and primary caregiver for his two children, ages eleven and four. *Id*. He has a large

family, with six siblings, and has a good relationship with all of them. *Id*. He has lived with his fiancée and two children for nine years. Ashley Choate Letter, ECF No. 14-2. He appears to be financially stable and has no criminal history, although he has completed two court-ordered substance abuse treatment programs and smokes marijuana every couple weeks. W.D.N.Y. Hr'g Tr. #2 (Oct. 15, 2021) at 54–55. Defendant's community ties and employment weigh generally in his favor and certainly provide assurance that he presents no risk of flight. Over fifteen friends and family members sent in letters in support of defendant, and all speak highly of him. *See* Def.'s Supp., ECF No. 14-1 to 14-16. At the same time, none of these reference letters mention defendant's conduct on January 6, 2021, and the government has supplied information from text messages indicating that some of these references "knew about, supported, and wanted to see proof of [defendant's] riotous conduct." Gov't's Reply at 2, ECF No. 15 (defendant received a text message from a someone named "Shae"—likely his sister, who wrote a reference letter—instructing defendant to "[g]et videos" and "go on Facebook Live recording everything so we can all see it"; defendant received a text message from someone named "Casey"—likely his brother, who wrote a reference letter—replying "[l]mao hell yea" in response to defendant's text of a picture of him within the mob); *see also* Gov't's Mot. at 17–18 (defendant texted someone named "Casey"—likely his brother, who wrote a reference letter—stating that he had "[n]ever been fuck8n better bro me and james got everyone to push through the police, me and james fought through the police line on the door step of Capitol hill lmao"; defendant texted someone identified as "Becca Aunt"—likely his Aunt Rebecca, who wrote a reference letter— letting her know that "he yanked a crowd-control gate away from police officers," that he and Mault "fought off like 4 or 5 cops and stand fucking victorious," and that he "also maced a cop"

to which she replied, "Awesomeness!"). Thus, the Court does not find that they lend much weight to an assessment of whether defendant poses a continuing danger to the community.

Furthermore, other aspects of defendant's characteristics raise red flags pertinent to the consideration of the dangerousness that he poses to others. Defendant lied to law enforcement about his conduct on January 6, Gov't's Mot. at 16, 25, denying that he used chemical spray against police officers and minimizing his conduct and responsibility by saying he was using the spray against other rioters, *id.* at 16. This story is wholly belied by the video footage, Gov't's Videos 2–5, and defendant's own admission on videotape on January 6, Gov't's Video 9. In a text to his mother in response to her worry about whether the FBI would investigate him for his participation in the Capitol attack, defendant stated: "Oh well I don't really care [if we get in trouble] we went there to stop the count and that's what we did . . . . It was just a million or so completely regular every day Americans sick of the corruption and exercising our constitutional rights to defend ourselves and our country. They can spin it however they want but America wasn't formed by people who were willing to be controlled and betrayed by their own government." *Id.* at 18. Defendant's mindset in describing his actions as something "every day Americans" would do to promote their political beliefs is a troubling indicator that defendant's willingness to engage in violence for his political ends on January 6 may not be an aberration.

Thus, taken together, while defendant's history, employment, and ties to his community weigh in favor of release, his statements surrounding the Capitol attack weigh slightly in favor of detention in assessing his dangerousness.

**(4) <u>The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Person's Release:</u>**

The nature and seriousness of the danger to the community posed by the defendant's release weigh in favor of detention. Defendant enthusiastically participated in the mob attack on

the Capitol in which many people, including police officers, suffered grievous injury and Congress's constitutional task of counting electoral college votes was disrupted and delayed for hours. He was an active participant at the front of the mob facing off against the police and engaging in two separate confrontations: one with the law enforcement line on the West Plaza of the Capitol grounds and another consisting of a coordinated pepper spray assault on the Lower West Terrace, both in an attempt to breach a police line and gain access to the Capitol Building.

The facts of this case show that defendant's dangerousness is not limited to "the particular circumstances of January 6." *Munchel*, 991 F. 3d at 1283. Defendant's blatant and repeated confrontations with law enforcement on January 6, coupled with the evidence that he prepared for and coordinated his violent conduct with others, and his statements before, during, and after January 6, especially his description of his conduct as defending his rights and his country, demonstrate a complete disregard for the law and willingness to use force to achieve political ends, raising serious concerns about the danger that defendant poses if released pending trial and makes plain that the danger he presents is not isolated to the context of the events of January 6.

This factor weighs in favor of detention.