IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 21-cr-00117-TFH-1 |
| RYAN TAYLOR NICHOLS, | |
| Defendant | |

**DEFENDANT RYAN NICHOLS' MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO REMOVE SENSITIVITY DESIGNATIONS
FROM CERTAIN VIDEOS PURSUANT TO PROTECTIVE ORDER**

Ryan Taylor Nichols, represented by undersigned counsel Joseph D. McBride, Esq., respectfully moves this Court for an order directing the Government to remove sensitivity designations from eight videos subject to the Protective Order in this case.[1] The first seven videos were previously marked as Exhibits 13-19 in Mr. Nichols' November 1, 2021, Motion for Modification of Bail.[2] The eighth video is marked in the instant motion as Exhibit A. The complete list of videos is as follows:

| | | |
|---|---|---|
| Exhibit 13: | West Terrace 3 Hour Block | Highly Sensitive Designation |
| Exhibit 14: | 4 Warning Graphic Content | Sensitive Designation |
| Exhibit 15: | GoPro Raw 360 Clip | Sensitive Designation |
| Exhibit 16: | His Pants are Falling Down | Sensitive Designation |
| Exhibit 17: | I Can't Breathe | Sensitive Designation |
| Exhibit 18: | RSBN US Capitol on Lockdown | Sensitive Designation |
| Exhibit 19: | Patriots Storm the US Capitol | Sensitive Designation |
| Exhibit A: | That's One Big Flag | Sensitive Designation |

---

[1] *See* Protective Order at ECF No. 26, April 8, 2021.

[2] *US v. Ryan Taylor Nichols,* Motion For Modification of Bail to Place Defendant on Conditional Release Pending Trial, Case No. 21-cr-00117-TFH-1, within this Court at ECF Dkt. # 55.

These videos show exculpatory and highly probative evidence necessary to mounting several affirmative defenses in Ryan Nichols' case, and by extension the cases of other January 6th defendants ("January Sixers) charged with assault and weapons possession at the U.S. Capitol's Western Terrace.  Removing the sensitivity designations will give Mr. Nichols unencumbered access to all the discovery in his case, which will in turn empower him with the ability to participate in his legal defense in the way that commiserates with the protections of the Sixth Amendment to the U.S. Constitution.

Removing the sensitivity designations will also allow the media and general public access to the truth regarding what happened on the Western Terrace on January 6th.  This is extremely important given that the current videos which have been made available to the public have been heavily edited and have without question cast all January Sixers in the worst possible light.

For instance, on July 27, 2021, The Select Committee to Investigate the January 6th Attack on the United States Capitol held a public hearing where multiple edited videos were presented to the public.  These heavily edited videos reduced all protestors to a violent mob of insurrectionists.[3] The national and local coverage portraying January Sixers as violent insurrectionist has only intensified since that time.  As such, Mr. Nichols has grave concerns that the D.C. Jury Pool has been poisoned beyond repair.

The time has come for the complete tale of January 6th to be told.  America will never know the truth about Mr. Nichols or any January Sixer until the sensitivity designations are removed.  As such, we respectfully ask this Court to release the tapes, and let truth have its day in court.

---

[3] *See* CNN Politics coverage on the July 27, 2021, Select Committee Hearings "The committee showed never-before-seen video of the attack and the officers described the violent events of Jan. 6 at the hands of a pro-Trump mob", available at https://www.cnn.com/politics/live-news/jan-6-house-select-committee-hearing-07-27-21/index.html (last visited on November 30, 2021).

2

### I. CAPITOL BUILDING CCTV VIDEO DESIGNATED HIGHLY SENSITIVE BY THE GOVERNMENT.

On October 1, 2021, undersigned council submitted a Rule 16 Discovery Request[4] asking for, amongst other things, the turning over of closed-captioned video footage from a specific CCTV camera located on the Capitol's Lower West Terrace.

In response to said Rule 16 Discovery Request, the Government turned over what appears to be an unedited three-hour block of video from Camera 0074 USCH BA Lower Terrace Door Exterior 2021-01-06. This three-hour block of video begins at 13:59:58, is 3:00:02 long, and was previously marked as Exhibit 13 in Mr. Nichols' Motion for Modification of Bail.

This video shows the interior of the arched tunnel-like entrance to the U.S. Capitol from the viewpoint of the inside of the passageway, down the tunnel-like passageway, and out towards the outside. Amongst other things, this video also shows multiple occurrences of police brutality including a vicious beating given by a Metropolitan Police Department officer of an unarmed civilian woman taking place at approximately 4:07 PM.

Here is an analysis of said beating as seen from Exhibits 13 and 14 as follows (Please note that the time stamps pertain to the three-hour long video itself, attached as Exhibit 13, and not the 4:07 PM time of day on January 6, 2021):

> 2:07:01: White-shirt hits the woman in the head with his baton five times in seven seconds;
>
> 2:07:22: The woman is sprayed directly in the eyes by ledge officer;
>
> 2:07:24: White-shirt batons a person wearing a mask;

---

[4] Exhibit B:   October 1, 2021, Rule 16 Discovery Request

3

2:07:30 The woman and others are still being maced and hit by White-shirt and ledge officer;

2:07:38 Blood is visibly coming out of the woman's head and can be seen on the white hoody;

2:07:55 White-shirt and other officers are randomly assaulting people for no apparent reason;

2:08:17 White-shirt makes his way to front of crowd again and targets woman who is attempting to escape;

2:08:30 White-shirt spears and pokes the woman with his baton in the head, neck, and face so as to inflict maximum pain;

2:08:46 White-shirt beats the woman with his baton striking her eight times in six seconds;

2:09:13 White-shirt punches the woman in the face, with his left-hand, landing five punches in five seconds, with all of his might;

2:09:35 Another officer joins in and starts beating the woman in the head with his baton, landing twelve strikes in seven seconds;

2:10:47 If you pause the video here, you will see the welts on the woman's face along with a disturbing look of helplessness;

2:10:54 Officers push the woman around the tunnel.

2:10:55 The woman temporarily collapses.

2:11:13 White-shirt follows the woman to the front of the tunnel and beats her with his baton as she's collapsing; and

2:11:24 The woman is re-taken to the back of tunnel and is never seen again.

Ryan has his eyes peeled on the tunnel but the woman never comes out. As he is looking for her, he sees a blonde-haired woman attempting to leave the tunnel. Just as she is about to exit, she gets kicked and stomped in the head by an officer. She is screaming, along with many others.

Motion for Modification of Bail, *USA v. Ryan Taylor Nichols*, Case No. 21-cr-00117-TFH-1, within this Court, ECF Dkt. # 55, November 1, 2021, pp. 14-15.

## II. PUBLICLY SOURCED VIDEO DESIGNATED SENSITIVE BY THE GOVERNMENT.

Exhibits 14-19 and Exhibit A: Are various compilations of publicly sourced and edited videos showing what happened at the West Terrace's tunnel entrance on January 6, 2021. Some of these videos overlap and each of them has footage that the other Sensitive Videos do not. These videos are different from Exhibit 13 because they show the events that took place on the Western Terrace from different vantage points outside of the tunnel looking toward the tunnel's interior.

### A. THERE IS A GLOBAL COMMUNITY OF OPEN-SOURCE INTELLIGENCE INVESTIGATORS (OSINT) WORKING TOGETHER TO ASSIST THE FBI AND D.C. CAPITOL POLICE IN FINDING PEOPLE WHO ALLEGEDLY COMMITTED JANUARY 6TH RELATED CRIMES

The websites seditionhunters.com and jan6attack.com are associated with a "global community of open-source intelligence investigators (OSINT) working together to assist the U.S. FBI and Washington D.C. Capitol Police in finding people who allegedly committed crimes in the January 6 Capitol riots."[5] These OSINT work hand in glove with Facebook, Twitter, and other social media platforms to identify, hashtag, track, dox[6], and locate hundreds of American Citizens charged with January 6th related crimes. It is likely that the FBI has already kicked down your door and the Department of Justice has indicted you, if you went to the U.S. Capitol on January 6th and were subsequentially identified by the OSINT.

---

[5] *See* Sedition Hunters Welcome Message, available at https://seditionhunters.org (last visited on November 28, 2021).

"Sedition Hunters is a global community of open-source intelligence investigators (OSINT) working together to assist the U.S. FBI and Washington D.C. Capitol Police in finding people who allegedly committed crimes in the January 6 capitol riots.

We examine thousands of hours of videos and hundreds of images searching for individuals who committed crimes on Jan 6, 2021 at the United States Capitol. As we look for those wanted by the FBI we are able to identify other crimes and pass that information along to law enforcement officers."

[6] *See* attached hereto Exhibit C: Homeland Security's Explanation of "Doxxing."

Ryan Nichols was identified, tracked, and doxed via this process.[7] He was then labeled an insurrectionist / domestic terrorist, and arrested by the FBI. As argued in his Motion for Modification of Bail, Mr. Nichols is an honorably discharged Marine Corps veteran with no criminal history who lives with his wife and two young sons. Normally, when a United States citizen with a personal history like Mr. Nichols' is a suspect in an investigation, they are given a chance to self-surrender absent controversy. However, that is not what happened in this case.

In the early hours of January 18, 2021, approximately 20 Federal Agents led by the FBI, descended upon Mr. Nichols' East Texas home. Believing that Ryan Nichols was asleep inside with his wife and two young sons, this militarized fire team used hand signals to communicate as they approached in silence. Next, a few members of the team surreptitiously entered Nichols' curtilage, cut the security cameras and unscrewed all the outdoor light bulbs. The team then rolled an armored tank onto Mr. Nichols' front lawn, pointed the turret toward the front door and hit the front door with so much force that it caused significant structural damage to the home. The Government then stuck the Nichols family with the bill and has never reimbursed them.

Fortuitously, the Nichols family was not home. They were instead in Oklahoma celebrating Martin Luther King Day with Ryan's in-laws. Once Mr. Nichols discovered what had happened, he called the FBI and turned himself in later that day, with no resistance whatsoever.

---

[7] *See* Sedition Hunters Description of Ryan Nichols, available at https://seditionhunters.org/161-afo (last visited on November 28, 2021).

B. **THERE IS A GROUP OF PEOPLE WHO HAVE BEEN IDENTIFIED BY THE OSINT AS PERSONS WHO MATERIALLY PARTICIPATED ON JANUARY 6TH THE ATTACK ON THE CAPITOL, BUT THERE IS, APPARENTLY, NO RECORD OF THEIR ARREST OR INDICTMENT.**

There is a group of people who have long been identified by the OSINT websites as persons who materially participated on January 6th the attack on the Capitol, but apparently have never been arrested or indicted.  Several members of this group circulated weapons and sprays throughout the crowd.  Some members of this group were present in the now infamous fight inside the tunnel.  Additionally, other members of this group can first be seen on January 6th at the ellipse, then again during the march to the Capitol, and then in highly strategic places on the Western Terrace. The OSINT previously identified, assigned hashtags, and began doxing these men, but then, suddenly, the doxing stopped— and their hashtags began disappearing from the OSINT databases and social media platforms.

We submit that these persons are government agent provocateurs whose identities the government does not want revealed.  Furthermore, these provocateurs were sent to the Capitol to urge non-violent protestors to become violent, because violence would entirely undermine the legitimacy of the protests and open the door to serious government intrusion.

It is a historical fact that law enforcement frequently infiltrates political movements using agent provocateurs who urge others to engage in violence. The FBI's COINTELPRO and its progeny, the Patriot Act, are positive proof of the Federal Government's willingness to disregard the constitutional rights of U.S. citizens in order to bring down a political movement.[8]  There is also the on-point example of the Government's infiltration of the political protest movement associated with the "Ministry of Puppetganda."

---

[8] *See* the ACLU's publication on FBI's long history of suppressing domestic political movements via COINTELPRO, available at https://www.aclu.org/other/more-about-fbi-spying (last visited on November 29, 2021).

Threatened by the growing support for a political movement that opposed the World Trade Organization, agent provocateurs posing as union carpenters infiltrated said movement to create conditions of dangerousness where none existed. During meetings, these provocateurs encouraged political violence, property destruction, and violence against police. The Government then used the fact that the organizers had been planning violence as pretext to bring down the movement. Protest leaders and participants where then targeted for prosecution, arrested, detained, and regularly beaten while in jail. Once it was uncovered that agent provocateurs were materially involved, the criminal charges were dropped, and multiple lawsuits followed.[9]

Like the case of the Ministry of Puppetganda, there are widespread reports of agent provocateurs inciting violence, steering crowds, and materially participating in acts of violence and the distribution of weapons on both January 5th and January 6th of 2021. Congressman Thomas Massie raised this issue while questioning A.G. Merrick Garland on October 21, 2021. During said questioning, Massie played a widely circulated and infamous video of agent provocateur, Ray Epps, encouraging a D.C. crowd of Trump Supporters to breach the Capitol on the night of January 5, 2021. Massie also played a video of Epps funneling protestors toward vulnerable parts of the Capitol during the march from the ellipse. Additionally, Massie played a video of Ray Epps apparently directing Ryan Samsel to breach a police barricade of Capitol's West side. This breach would be the first of many other breaches that would follow shortly thereafter.

---

[9] *See* the Intercept's June 2, 2020, publication regarding the History of Law Enforcement Infiltrating Protests, available at   https://theintercept.com/2020/06/02/history-united-states-government-infiltration-protests   (last visited on November 29, 2021).

In his line of questioning, Congressman Massie showed a continuous chain of events starting on January 5th leading into January 6th, where at each critical juncture, agent provocateur Ray Epps can be seen encouraging Trump supporters to commit violence. However, when confronted on the matter, A.G. Merrick Garland did not deny if Epps was a government agent— he simply declined to comment.[10]

We previously introduced that fact that we intend to raise the issue of agent provocateurs materially participating in the events that took place in and around the Tunnel and Western Terrace in our November 1, 2021, Bail Modification Motion. We now make the following offer of proof to support these claims.

1. **THE OSINT IDENTIFIED #REDFACE45 AS SOMEONE WHO MATERIALLY PARTICIPATED IN AN ATTACK ON THE CAPITOL ON JANUARY 6, 2021, YET HE HAS NOT BEEN CHARGED WITH ANY CRIME.**[11]

#RedFace45 ("RF45") is a large man with an athletic build who was dressed all red on January 6th. RF45 wore a red KEEP AMERICA GREAT AGAIN (KAGA) hat with the number 45 (for President Trump) and an American flag on it. RF45 is also wearing a MAGA red jacket, red pants, black gloves, and Oakley sun glasses. Importantly, RF45 materially participated in the events that took place on the Western Terrace.

At first glance RF45 looks like a Trump supporter. Closer review, however, suggests that he is likely an undercover agent. For instance, RF45 is in the tunnel at different times, yet he is never maced or bothered by uniformed police. At one point in the tunnel, RF45 reaches into a

---

[10] *See* Congressman Thomas Massie's October 21, 2021, Twitter post memorializing his questioning of A.G. Merrick Garland, available at **https://twitter.com/RepThomasMassie/status/1452673529531469832**.

[11] *See* OSINT description of #RedFace45, available at **https://jan6attack.com/individuals/redface45/** (last visited on November 28, 2021).

uniformed officer's supply bag and removes an item, yet he is never once hit or maced for his actions. RF45 is seen passing weapons through the crowd on multiple occasions, and is seen communicating with other suspicious persons through use of military hand signals. All this suggests that he is indeed an undercover agent.[12]

The OSINT identified #RedFace45 as someone who materially participated in an attack on the Capitol and as a participant in the tunnel fight. Moreover, RF45 is clearly seen on various discovery videos passing weapons through the crowd, in possession of a riot shield, and in possession of spray. How is it that massive Trump supporter covered head to toe in red MAGA gear was able to freely enter and exit the tunnel unencumbered by police? What plausible explanation is there for the fact that someone identified by the OSINT as a material participant in the attack on the Capitol appears to have never been publicly identified? We submit that RF45 has never been identified or arrested because RF45 is a government agent.

Ryan Nichols' needs to know if this is true and his ability to investigate this matter should no longer be hamstrung by the Government's protective order. Moreover, because the OSINT community has worked hand and glove to identify, hashtag, track, dox, and locate hundreds of American Citizens charged with January 6th related crimes, principles of justice and fairness dictate that Mr. Nichols should be able to rely on open-sourced Internet investigations too. This right should also extend to the hundreds of other January 6th Defendants that have been charged with crimes related to the Western Terrance. Also, the American Public without question, has a vested interest in obtaining the truth about what actually happened on January 6, 2021.

---

[12] *See* Exhibit 13: West Terrace 3 Hour Block at 2:15:29 where #RedFace45 reaches into the bag of a uniformed police officer and removes an item, and at 2:21:14 where #RedSkin45 is seen communicating with military hand signals at the tunnel's entrance; *See also Video*: "That's One Big Flag at 8:37" (showing #RedSkin45 is passing weapons through the crowd).

### 2. THE OSINT ALSO IDENTIFIED #GOGGLESMAN AS SOMEONE WHO MATERIALLY PARTICIPATED IN AN ATTACK ON THE CAPITOL ON JANUARY 6, 2021.[13]

The OSINT identified #GogglesMan ("GMAN) as someone who materially participated in an attack on the Capitol on January 6, 2021 and as a participant in the tunnel fight. The OSINT also identified GMAN as a Proud Boy— but we have no information corroborating that claim.

GMAN is relevant to Mr. Nichols because Mr. Nichols has been charged with possessing and using a bottle of OC Spray.  Exhibits 14-19, however, clearly show that the alleged bottle of OC Spray that Mr. Nichols is charged with possessing, in fact originated with GMAN. Specifically, these videos clearly show GMAN walk up behind Mr. Nichols and hold a bottle of what is alleged to be OC Spray.  GMAN keeps the bottle held up until it is grabbed by a protestor and circulated into the crowd. GMAN then begin furiously pointing toward the tunnel's entrance and appears to be saying "pass it up!"  The bottle eventually makes it into Mr. Nichols' hands, and Nichols is charged as a result.[14]

At best GMAN is an undercover law enforcement agent trying to take the bottle of OC Spray out of circulation.  At worst, GMAN is an agent provocateur arming unsuspecting protestors. Mr. Nichols without question overcomes the assault charge against him if this is proven true under either theory.  Furthermore, if validated, Mr. Nichols will certainly be able to raise cognizable claims of outrageous government conduct, entrapment, or estoppel by invitation, which may result in a complete defense against every crime that Mr. Nichols has been charged with.

---

[13] *See* OSINT description of *Gogglesman*, available at ***https://jan6attack.com/individuals/gogglesman*** (last visited on November 28, 2021).

[14] *See* Exhibit A*:*  That's One Big Flag at 3:00 where #GogglesMan enters the bottle into circulation at the bottom right-hand side of the screen.

### 3. THE OSINT ALSO IDENTIFIED #PIPPILONGSCARF AS SOMEONE WHO MATERIALLY PARTICIPATED IN AN ATTACK ON THE CAPITOL ON JANUARY 6, 2021.[15]

The OSINT identified #PippiLongScarf ("PLS") as someone who materially participated in the attack on the Capitol on January 6th, and as someone who was present in the tunnel fight. PLS is wearing a TRUMP 45 knit hat with a pom, a TRUMP 2020 long scarf, and a black and red lumberjack coat. PLS is first seen on the ellipse during President Trump's speech. He is later seen in the tunnel during the now famous "heave-ho" and he is most visible posted up on the left-hand side of the tunnel entrance for a significant portion of the afternoon. He appears to be regularly talking into a microphone imbedded into the right-side collar of his jacket, sometimes covering his mouth with his scarf while he talks, and other times speaking directly into the jacket's collar.

PLS coordinates with uniformed police in the tunnel[16], as well as multiple suspected plain clothes agents in the crowd, such as #RedFace45. At one-point PLS, RF45, and several other persons of interest can clearly be seen working together in the front of the tunnel. During other times PLS and RF45 are seen with sprays, collapsible sticks, poles, riot shields, and even a sledge hammer.[17] Importantly, at Mr. Nichols' January bond hearing, the Government alleged that a person in the crowd reacted when Nichols discharged a bottle of OC Spray. That person is none other than PLS, who was in fact reacting to being sprayed by another man, who sprayed mace at PLS after calling PLS an agent.[18] It is also worth noting that PLS sprayed mace by the tunnel.

---

[15] *See* OSINT description of #PippiLongScarf @ **https://jan6attack.com/individuals/pippilongscarf/**; **https://seditionhunters.org/mpdslide121/**; last visited on November 28, 2021.

[16] *See* Exhibit 13: West Terrace 3 Hour Block at 1:43:15, where #PippiLongScarf communicates with MPDC

[17] *See* Exhibit 13: West Terrace 3 Hour Block at 1:59:25 (showing where #PippiLongScarf and #Birdman take a sledgehammer out of crowd circulation and hand it over to uniform MPDC).

[18] *See* video: "I Can't Breathe" at 8:23 where man standing behind #GogglesMan sprays #PippiLongScarf.

Mr. Nichols is accused of participating in the tunnel fight. PLS participated in the tunnel fight.[19] Nichols is accused of spraying mace in front of the tunnel. PLS sprayed mace in front of the tunnel.[20] Clearly, Mr. Nichols will be able to raise cognizable claims of outrageous government conduct, entrapment, or estoppel by invitation if PLS is a government agent.[21]

    4.    **THE DEFENSE HAS IDENTIFIED A PERSON OF INTEREST DUBBED "BIRDMAN" WHO IT BELIEVES TO BE A GOVERNMENT AGENT. BIRDMAN IS SEEN TAKING COORDINATED ACTION WITH MULTIPLE PERSONS IDENTIFIED BY THE OSINT AS HAVING MATERIALLY PARTICIPATED IN THE JANUARY 6TH ATTACK ON THE U.S. CAPITOL. (#FLOPSWEATRAT, #GREENNEWSBOY, #BLUECAMOBOY, AND #TUNNELTRAITORRIGHT)**

The Defense has identified a person of interest dubbed "Birdman" who it believes to be a government agent. Birdman is seen standing above the tunnel entrance waving an American flag. He is dressed in brown and has a backpack on with a small American flag sticking out. He has light brown hair, a patriotic hat, and sun glasses. Each time something material happens at the tunnel entrance he descends from the area atop the tunnel and interacts with uniformed police. Additionally, on multiple occasions Birdman takes coordinated actions with #PipiLongScarf, #FlopSweatRat, #TunnelTraitorRight, #GreenNewsBoy, and #BlueCamoBoy. Birdman has a bird's eye view to everything to everything that took place in front of the tunnel, including Roseann Boylan's death. He appears to be accompanied by multiple other persons taking videos and using communication devices as well. To our knowledge Birdman has not been arrested and no discovery has been produced related to him. His identification, however, is material to Ryan Nichols' defense.

---

[19] *See* Exhibit 13: "I Can't Breathe" at 00:59:27 where at #PippiLongScarf is standing on left side of tunnel interior.

[20] *See Id.* at 1:36 (showing at #PippiLongScarf attempting to discharge spray in front of the tunnel).

[21] *See* Exhibit 13: West Terrace 3 Hour Block at 1:59:39 (showing where #PippiLongScarf and #Birdman take a sledgehammer out of crowd circulation and hand it over to uniform MPDC).

### III. GOVERNING AUTHORITY

Federal Rule of Criminal Procedure 16(d) gives district courts the discretion to enter protective orders, "subject always to the Sixth Amendment's limitations." *United States v. Cordova*, 806 F.3d 1085 (D.C. Cir. 2015). The Sixth Amendment guarantees a defendant the right to assist meaningfully in his own defense. *See McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984) (highlighting that "The [Sixth Amendment] . . . implies a right in the defendant to conduct his own defense, with assistance at what, after all, is his, not counsel's trial.").

The Sixth Amendment also guarantees the right to a trial by a fair and impartial jury. U.S. Const. Amend. VI. The Supreme Court has found that the right was violated where, in the months preceding a defendant's trial, "a barrage of newspaper headlines, articles, cartoons and pictures was unleashed against him," which were "delivered regularly to approximately 95% of the dwellings" in the jury pool, the collective result of which was that the "continued adverse publicity caused a sustained excitement and fostered a strong prejudice" in the jury pool. *Irvin v. Dowd*, 366 U.S. 717, 726 (1961). The defendant in *Irvin* established this with 46 negative headlines. *Id.* at 725. In assessing potential impartial-jury prejudice from negative publicity, courts consider the source of that publicity and whether it derives from government action. *See, e.g.*, *United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991).

The Protective Order provides that "the burden of demonstrating the need for a protective order remains with the Government at all times." *See* Protective Order, at ECF No. 55, p. 4. "Nothing in [the] Order . . . prevent[s] any party from seeking modification of this Order nor prevent[s] the defense from contesting a sensitivity designation."

### IV. ARGUMENT: REMOVAL OF THE SENSITIVITY DESIGNATIONS FOR ALL EIGHT VIDEOS IS WARRANTED IN THIS CASE

The Government has designated these and other videos recorded from the unattended, fixed security camera videos as "Highly Sensitive" as a status under the Protective Order. And the Government has designated these and other videos publicly sourced from the Internet as "Sensitive" under the protective order. According to the Government, the reason for restricting Capitol surveillance footage is that it might "result in the release of information regarding the vulnerabilities and security weaknesses of the U.S. Capitol which could be used in a future attack." *United States v. John Anderson*, 21-cr-215 (D.D.C. 2021), ECF No. 25 at p. 2.

In another January 6 case very analogous to this one, Chief Judge Howell rejected the government's stated wish to withhold from public access Capitol video footage. *United States v. Torrens*, DDC 21-204-2, at ECF 83 (Decided September 15, 2021). Judge Howell cited both First Amendment and common law rights of access to the information the government sought to withhold., noting particularly the DC Circuit's expressed presumption in favor of public access to "judicial proceedings, including judicial records." *United States v. Hubbard*, 650 F. 2d. 293, 317 (D.C. Cir. 1980)(internal quotations omitted).

> Judge Howell parsed the six considerations enumerated by *Hubbard*:
>
> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Id.* at ___.

Consequent to the *Hubbard* factors, Judge Howell rejected the government's rational for withholding the video recordings subject of that case, namely that their release would jeopardize Capitol security. This Court should do no differently in view of the dramatically selective standard the government has employed in opposing or acceding to public access to Capitol video footage of that day.

In general, the Government itself has made video recordings from inside the Capitol available online in a request for public assistance in identifying suspects. *See, e.g.*, U.S. Capitol Violence, FBI, available at http://www.fbi.gov/wanted/capitol-violence.  Capitol surveillance video has also been made public multiple times in connection with the January 6 events, prominently in President Trump's second impeachment trial. [22] The Government has also included images pulled from Capitol CCTV video in briefs in many of its cases—in order to jail people. *See, e.g., Anderson*, 21-cr-215, ECF No. 1-1 (D.D.C. 2021), at 3-8. In some January 6 cases, the Government has expressly agreed to remove sensitivity designations from CCTV surveillance footage from inside the Capitol Building.  In others, it refuses.

The Government cannot satisfy its sensitivity-designation burden under the Protective Order by allowing the public, the jury pool, and the media to see evidence it deems inculpatory and preventing them from seeing the exculpatory variety. Such selective designation satisfies neither the Order's terms nor Defendant Nichols' rights to due process, to an impartial jury, and to assist in his own defense.

---

[22] See, e.g., See full video of how insurrection at Capitol unfolded, CNN, available at http://www.cnn.com/videos/politics/2021/02/10/security-footage-capitol-riot-plaskett-timeline-impeachment-trial-two-vpx.cnn  (Capitol security video shown at 12:30, 17:30, 21:40, 22:50, 33:40, 34:34).  (Last visited November 30, 2021)

On October 11, 2021, in the case of *USA v. Nordean*, D.C. District Court Judge, Timothy J. Kelly, ordered video sensitivity designations removed under a Protective Order identical to the one in this case.[23]  In *United States v. Morss*, 21-cr-40-TNM-5, Magistrate Judge Harvey ordered the Government to make publicly available several video exhibits that the Government submitted in connection with Defendant Morss's detention hearing, including four clips of video from Capitol surveillance cameras.[24] Importantly, the Capitol surveillance video clips released in the *Morss'* case depict activity in the tunnel leading to the Lower West Terrace doors to the U.S. Capitol.[25]  Lastly, in *United States v. John Anderson*, 21-cr-215, D.C. District Court Judge Rudolph Contreras ordered the Government to remove a Highly Sensitive designation from Capitol CCTV video, over the Government's objections. The video in that case was again from a camera on the entrance to the Lower West Terrace of the Capitol Building on January 6th.  This appears to be videos from the same location, and during the same time frame as is being requested by Mr. Nichols in the instant motion.

The facts in the *Nordean, Morss,* and *Anderson* line of cases are very similar to the facts in Mr. Nichols' case.  For instance, the date, time, and location of the requests in the *Nordean, Morss,* and *Anderson* cases match up with those in Mr. Nichols' case.  Because of this, the *Nordean, Morss,* and *Anderson* line of cases suggest that this Court will remove the sensitivity designations in Mr. Nichol's case as well, even over the Government's objections.

---

[23] Minute Order of October 11, 2021, *United States v. Nordean;* Dkt. 129 (Order removing sensitivity designations)

[24] Minute Order of June 19, 2021, *United States v. Morss*; Dkt. 91 (indicating Exhibits H, J, and N are clips of surveillance video); *see also* Ryan J. Reilly (@ryanjreilly), Twitter (July 20, 2021), available at https://twitter.com/ryanjreilly/status/1417540426169556993 (publishing the video clip designated as Exhibit L, which likewise appears to be Capitol surveillance footage).

[25] *See* Gov't's Mem. in Supp. of Pretrial Detention at 12-17, *United States v. Morss*, Dkt. 80

As mentioned above, on July 27, 2021, The Select Committee to Investigate the January 6th Attack on the United States Capitol held a public hearing where multiple edited videos were presented to the public. These heavily edited videos reduced all protestors to a violent mob of insurrectionists.[26] The national and local coverage portraying January Sixers as violent insurrectionist has only intensified since that time.

Moreover, by taking actions to facilitate the media's collection of video clips that the Government believes advance its case, while simultaneously denying access to exculpatory video (even as it removes sensitivity designations on Capitol video in other cases, where it helps the Government), the Government is actively managing the negative publicity that threatens Nichols's right to an impartial jury. *Irvin*, 366 U.S. at 726. In that way, it is not unlike the former D.C. U.S. Attorney's interview on primetime television, where he previewed various legal theories that January 6th defendants were probably guilty of, based partly on his personal eyewitness experience.

Removing the sensitivity designations, therefore, will allow the media and general public access to the truth regarding what happened on the Western Terrace on January 6th. When the aforementioned Highly Sensitive and Sensitive videos are viewed together, one is able to see what happened both inside and immediately in front of the tunnel on January 6th. Defendants and members of the public alike, are able to get a holistic 360-degree account of what actually took place, and make their own objective assessment of the day's events. This is both necessary and proper, given the fact that the D.C. jury pool has been inundated with highly edited videos and negative press coverage since January 2021.

---

[26] *See* CNN Politics coverage on the July 27, 2021, Select Committee Hearings "The committee showed never-before-seen video of the attack and the officers described the violent events of Jan. 6 at the hands of a pro-Trump mob", available at https://www.cnn.com/politics/live-news/jan-6-house-select-committee-hearing-07-27-21/index.html (last visited on November 30, 2021).

V.   **CONCLUSION**

The aforementioned police brutality incident on the tunnel witnessed by Mr. Nichols has already been proffered by the undersigned attorney as a reasonable basis for defense of a third person. In that vein, we respectfully submit that this video will also serve as a reasonable basis for forthcoming claims of defense of a third person that will made by other January Sixers who witnessed police brutality on the Capitol's West Terrace.

The Sensitive and Highly Sensitive videos greatly enhance each other, and one set is not complete without the other. Because of this, the need for both the Highly Sensitive video and the Sensitive videos to be made public clearly outweighs any concerns about the locations of the CCTV cameras. As stated above, these videos appear to identify possible agent provocateurs or agitators operating inside and outside the tunnel. If validated, the affirmative defenses of outrageous government conduct and entrapment may provide complete defenses in other January 6th related cases.

Furthermore, removing the sensitivity designations will (1) allow Ryan Nichols and all January Sixers immediate unencumbered access to these exculpatory lines of defense, (2) allow the general public access to the truth regarding what happened on the Capitol's Western Terrace on January 6, 2021, and (3) potentially undo the damage that has been done to the jury pool via the Government's selective release of heavily edited videos to the public.

The time has come for the false narrative suggesting that January Sixers are insurrectionist to be eliminated from public discourse and for the tale of January 6th to be told in its entirety. America will never know the truth about Ryan Nichols or any January Sixer until the sensitivity designations are removed. As such, we respectfully ask this court to release the tapes.

Dated:  December 1, 2021

                                                    Respectfully Submitted,

                                                    */s/ Joseph D. McBride, Esq.*
                                                    Joseph D. McBride, Esq.
                                                    THE MCBRIDE LAW FIRM, PLLC
                                                    Attorneys for the Defendant
                                                    99 Park Avenue, 6th Floor
                                                    New York, NY 10016
                                                    Phone: (917) 757-9537
                                                    Email:  jmcbride@mcbridelawnyc.com

## **CERTIFICATE OF SERVICE**

I hereby certify on the 1st day of December, 2021, a copy of same was delivered to the parties of record, by email pursuant to the Covid standing order and the rules of the Clerk of Court.

*/s/ Joseph D. McBride, Esq.*