UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-CR-117 (TFH) |
| | ) | |
| RYAN NICHOLS | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO COMPEL DISCOVERY**

Comes now Defendant Ryan Nichols, by counsel, and moves the Court to compel the disclosure by the Government of all communications between the Department of Justice and the House Select Committee for January 6th (the "Committee"). Mr. Nichols seeks such to supplement his joinder in the motion for change of venue. The Committee's nationally televised hearings have irreparably poisoned the jury pool - most dramatically in this District, the jurisdiction that suffered the physical effects of the January 6th USCP-declared riot, and the months of severe security measures imposed afterwards. Much of the video footage aired by the Committee appears to come from body worn cameras and CCTV, much if not most of which footage is designated "Sensitive" or "Highly Sensitive" in the discovery provided to defendants. Dissemination of such footage is restricted by Protective Order of this Court for all January 6th defendants. At least one attorney for the Committee's investigative team asserted when requesting an interview with a defendant who had pled guilty that nothing from his interview and notes would be provided to the DOJ. Numbers of other January 6th defendants have requested such communications as well as the one thousand hearing transcripts or notes the Committee publicized that it had. Mr. Nichols seeks discovery pertaining to a possible agreement between the Committee and the Executive Branch, specifically the Department of Justice. Mr. Nichols' seeks to discover why the Committee has not provided its investigative interviews to the DOJ.

1

I.  **The Committee Hearings Have Poisoned the Jury Pool**

The Committee orchestrated a "produced for TV" - by a TV producer - choreographed rendition of January 6th defendants as "insurrectionists" and murderous orchestrators of an attempted coup. The Committee's July - August 2022 presentations included imagery of Mr. Nichols with the one-sided, screenplay narrative. The "TV shows" where the Committee serves as judge, prosecutor, and jury are readily available online, with Google pop-up ads directing users to the media, even those searching for even unrelated topics.

For instance, in his opening remarks on the first day of Committee hearings, Chairman Rep. Bennie Thompson said:

"I'm from a part of the country where people justify the actions of slavery, the Ku Klux Klan, and lynching. I'm reminded of that dark history as I hear voices today trying to justify the actions of the insurrectionists on January 6th, 2021."

Rep. Thompson compared January 6th with the burning of the Capitol in the War of 1812. He referred to everything as an attempted coup and a brazen attempt to overthrow the government. These emotionally charged and prejudicial descriptions—by the chair of the Committee no less— were aired to at least 19 million people. Matt Webb Mitovich, Thursday Ratings: Jan. 6 Committee Hearing Draws 19 Million Viewers, YAHOO! NEWS (June 10, 2022).[1] The estimate is low since it does not include every channel and streaming service.

Falsehoods have been blatantly presented, such as by Rep. Pete Aguilar who expostulated: "[T]he Capitol was overrun, police officers lost their lives, and the Vice President was taken to a secure location because his safety was in jeopardy."[2] No police lost their lives as a result of January

---

[1] https://news.yahoo.com/thursday-ratings-abc-msnbc-lead-192047653.html.

[2] https://www.npr.org/2022/06/10/1104156949/jan-6-committee-hearing-trab=nscript.

6th, while four unarmed protestors died at the scene through apparent use of excessive force by police.

Neither Mr. Nichols nor any of the other 800+ January 6th defendants were able to cross-examine any witness or Committee member despite the inflammatory statements demonizing them before the entire American public.  The hearings were conducted without any remote indication of any contrary view or possible grounds for skepticism.  Indeed, Chairman Thompson said that many people "have tried to whitewash what happened on January 6th, to rewrite history."  Committee Vice Chair Rep. Liz Cheney addressed her "Republican colleagues who are defending the indefensible."

Millions of people viewed hearings that not only portray Mr. Nichols (and every other January 6th defendant) as a violent insurrectionist, an orchestrator of an attempted coup, and a threat to American democracy - but also proclaim that any defense or counter to their narrative is reprehensible.  The Committee's portrayal of the January 6th defendants as members of a seditious, murderous mob renders the notion of an impartial jury anywhere, but especially in the District of Columbia, extremely unlikely if not impossible.  The day's very unsettling events happened in D.C. – where the jury pool lives and works, and experienced victimhood with ensuing months of armed National Guardsmen and personnel carriers on the city's streets.

## II. Discovery Will Illuminate Any Collusion Between the Committee and the Executive Branch

On June 9, 2022, the Committee released video footage from January 6th.[3]  This footage was also shown during the first Committee hearing.  Much of the footage broadcast appears to

---

[3] January 6th Committee, Select Committee NEW Footage, YOUTUBE (June 9, 2022), https://www.youtube.com/watch?v=MaLkM7Nun1E.

3

comprise discovery born of body-worn cameras or CCTV, which images are generally designated Sensitive or Highly Sensitive within discovery and are therefore restricted as to their dissemination by this Court's Protective Orders. The Department of Justice should not be collaborating with the Committee to further poison the jury pool. While a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). The Department of Justice appears to have done just that.

Additionally, Committee member Rep. Jamie Raskin articulated a fundamental motivation of the Committee: "[Former President Trump] has not been criminally charged yet for it [incitement to violent insurrection], but we're perfectly willing to turn over any evidence that we have of criminal acts, and we are turning over evidence of criminal acts to the Department of Justice."[4] Thus, the Committee will turn over anything it believes implicates President Trump and nothing else, while it receives DOJ discovery materials far in advance or to the exclusion of January Sixth Defendants to their great disadvantage. And to the disadvantage of the American public as well.

Additionally, the exhibits that the Committee has broadcasted to date suggest that the Department of Justice, or officials within it, are actively supporting the Committee's objectives that are not legislative in purpose, which in turn exploits January 6th defendants as collateral damage. As such, we need to conclusively know whether the Committee is purposefully withholding Brady material whereby the DOJ does not have to provide what it does not possess. Importantly, an unknown number of January 6 defendants were interviewed by the Committee, yet we have no knowledge as to what potential exculpatory evidence has been ascertained.

---

[4] The Dean Obeidallah Show, Rep Jamie Raskin: the Jan 6 committee will turn over any evidence of Trump's crimes to DOJ, YOUTUBE (September 25, 2021), https://www.youtube.com/watch?v=c126-Xl8NIY.

**CONCLUSION**

The hearing remarks of Committee members, and others such as Rep. Raskin, belie a punitive purpose that presupposes a willingness on the part of Committee members to collaborate with members of the Department of Justice. The evidence adduced by the Committee suggests an official source. Taken in concert, these circumstances more than constitute "some evidence tending to show the existence" of impermissible government collaboration with the Legislative Branch for the purpose of precluding an impartial jury. *United States v. Berrios*, 501 F. 2d 1207, 1211-12 (2nd Cir. 1974).[5] The disclosure sought by the Defendant will, at the least, supplement his pending joined motion for change of venue since the nationwide poisoning effect of the hearings is only amplified in this District for the reasons adduced in the venue motion.

**WHEREFORE**, for the foregoing reasons and any others in our reply or that the Court should find, Mr. Nichols moves the Court to Compel the Government to provide all its communications with the Committee where a determination of further appropriate relief may arise.

---

[5] Berrios involved a demand for internal government communications pursuant to a claim of selective prosecution.

<table>
<tr><td>Dated August 11, 2022</td><td>Respectfully submitted,<br>/s/ Joseph D. McBride, Esq.<br>Joseph D. McBride, Esq.<br>Bar ID: NY0403<br>THE MCBRIDE LAW FIRM, PLLC<br>99 Park Avenue, 6th Floor<br>New York, NY 10016<br>p: (917) 757-9537<br>e: jmcbride@mcbridelawnyc.com</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify on the 11th day of August 2022, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Joseph D. McBride, Esq.
Joseph D. McBride, Esq.