## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21-CR-117 (TFH)** |
| | ) | |
| **RYAN NICHOLS** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE AND MEMORANDUM OF LAW

Defendant RYAN TAYLOR NICHOLS, by way of undersigned counsel, respectfully moves this court to dismiss Count Two of the indictment, along with the accompanying aiding and abetting charge because the Government has failed to state an essential element of the offense.

### I.    INTRODUCTION

Count Two of the Indictment reads as follows:

On or about January 6, 2021. within the District of Columbia and elsewhere, RYAN TAYLOR NICHOLS and ALEX KIRK HARKRIDER attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College votes as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

Section 1512(c) falls under Chapter 73 of Title 18, which deals with "Obstruction of Justice." *See generally* 18 U.S.C. §§ 1501–1521.  As the Ninth Circuit has carefully considered and recognized, based on the plain language of the statute, an offense under Section 1512(c) does not prohibit the obstruction of every governmental function; it only prohibits the obstruction of proceedings such as a  hearing that takes place before a tribunal.  *See United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013).  Stated differently, Section 1512(c), by its plain language, does not criminalize the obstruction of legislative action by Congress.  Any alleged obstruction of the certification of an Electoral College vote is simply outside the reach of Section 1512(c).

As noted above, Count Two of the Indictment charges that Mr. Nichols obstructed an "official proceeding," in violation of 18 U.S.C. § 1512(c)(2) and identifies that "proceeding" as "Congress's certification of the Electoral College vote." As set forth below, Mr. Nichols argues that the Department of Justice (DOJ) has taken § 1512(c)(2) completely out of the context of the parent chapter that is titled Witness Tampering. Section 1512(c) was designed for one purpose— to prevent a party from altering, tampering, destroying, or otherwise making evidence non-available. In the context of January 6th related cases, however, the legislative history and purpose behind Section 1512(c) have been flatly ignored. Its application to January 6th defendants is also unsupported by any prior judicial decision. In essence, 1512(c) has been reconstructed and its scope widened to the point where it is unrecognizable, for the specific purpose of dragnetting, capturing, and indicting hundreds of American Citizens who protested at the United States Capitol on January 6, 2021. "Due process bars courts from applying a novel construction of a criminal statute that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier,* 520 U.S. 259, 268 (1997).

In this case, Mr. Nichols was indicted for the crime of 18 U.S.C. § 231(a)(3), Civil Disorder, which is charged separately in Count 1. He was also indicted for Entering or Remaining in a Restricted Building or Grounds, § 1752(a)(1), in Count 5. He was indicted in Count 7 for § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds. Hence in what appears as an arbitrary and capricious application that makes anything an element of § 1512(c)(2), the crimes of both Civil Disorder and Being on Restricted Grounds are lesser charges inherent to §1512(c)(2). Moreover, Mr. Nichols was nowhere near Congress when the electoral count was disrupted. Nor is there any evidence indicating that he took any action with respect to a document, record, or another object in order to corruptly obstruct, impede or influence an official proceeding.

The multitude of alleged acts that violated Section 1512(c)(2) for January 6 defendants - when no evidentiary document related to the ceremony of debating electoral votes upon objection and ceremoniously using a script for the opening and counting of certificates - shows an arbitrary interpretation and application of the statue. The fact that someone walking in the Senate with a Trump flag would be charged with Section 1512(c)(2) while another person who carried no flag in the Senate had the charge dismissed in plea discussion implicates political weaponization of the statute. This arbitrary application and capricious determination of what comprises a violation of Section 1512(c)(2) is flatly unconstitutional, as such Count Two of the indictment should be dismissed.

## II.    STATUTORY BACKGROUND AND HISTORY

### A.  Section 1512(c)(2)'s Structure and Legislative History

Section 1512(c) provides: "Whoever corruptly
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned. . .

§1512(c)(2)

Section 1515 defines the term "official proceeding" as used in Section 1512(c). "[T]he  term 'official proceeding' means
> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> (B) a proceeding before the Congress;
> (C) a proceeding before a Federal Government agency . . . .

§ 1515(a)(1)

Congress subsequently amended § 1515 to provide:
> As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

3

§ 1515(b)

**B. Section 1512 falls under Chapter 73, Obstruction of Justice**. Section 1512 is titled "Witness Tampering."

**C. Congress created Section 1512(c) to fill a loophole that existed at the time of the Enron case**.

The Senate Report for the Act identified this statutory loophole:

Indeed, even in the current Andersen case, prosecutors have been forced to use the "witness tampering" statute, 18 U.S.C. § 1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the shredding, this legal hurdle might present an insurmountable bar to a successful prosecution.

S. Rep. No. 107–146, p. 7 (2002).

Senator Lott introduced § 1512(c) on July 10, 2002. He said the amendment's "purpose" was "[t]o deter fraud and abuse by corporate executives" as happened in the Enron case. 148 Cong. Rec. S6542 (daily ed. July 10, 2002). Then-Senator Joseph Biden referred to the new subsection (c) as "making it a crime for document shredding." *Id*. at S6546. Senator Hatch made similar statements regarding the focus of the proposed new subsection on documents and document-shredding, as well as its ties to the then-recent Enron scandal. Senator Hatch said, "the amendment strengthens an existing federal offense that is often used to prosecute document shredding and other forms of obstruction of justice," noting that current law "does not prohibit an act of destruction committed by a defendant acting alone." *Id*. at S6550.

## MEMORANDUM OF LAW

### III.    LEGAL STANDARD

Before trial, a criminal defendant may move to dismiss a count of the indictment based on a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B). Defects can include "lack of specificity" and "failure to state an offense." *Id*. A "failure to state an offense" argument includes constitutional challenges to the statute creating the charged offenses. See *United States v. Stone*, 394 F.Supp.3d 1, 7 (D.D.C. 2019); *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973). Where an indictment is defective for failing to state an offense, a pretrial motion to dismiss the defective indictment is warranted, and the Court must dismiss an indictment which fails to state all essential elements of the crime charged. Fed. R. Crim. P. 12 (b)(3)(B)(v). The indictment must be plain, concise, and clear as to the facts of the offense charged. Fed. R. Crim. P. 7(c)(1). The indictment must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he is prosecuted upon facts presented to the Grand Jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962); *Stirone v. United States*, 361 U.S. 212 (1960)).

When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment;" "the Court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F.Supp.2d 51, 60 (D.D.C. 2009) (internal quotation marks omitted). "The operative question is whether [those] allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Sanford, Ltd*., 859 F.Supp.2d 102, 107 (D.D.C. 2012).

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein,* 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 135 S.Ct 2551, 2556 (2015)). "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes. And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). Notice requires the person to be able to know what acts are criminal.

"[T]he rule of lenity is venerable," *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) having arisen to mitigate draconian sentences in England and having been firmly established in English law by the time of Blackstone. *Id*. at 473. "Under the rule of lenity, courts construe penal laws strictly and resolve ambiguities in favor of the defendant," *id.*, so long as doing so would not "conflict with the implied or expressed intent of Congress," *Liparota v. United States*, 471 U.S. 419, 427 (1985). Under current doctrine, the rule of lenity applies to instances of "grievous" ambiguity, see *Shular v. United States*, 140 S. Ct. 779, 788 (2020) (Kavanaugh, J., concurring) See William Blackstone, Commentaries *88 ("Penal statutes must be construed strictly.").

## IV.   ARGUMENT

### A.  Count One of the Indictment Fails to State an Offense Because the Conduct it Charges Mr. Nichols With is Beyond the Reach of § 1512(c)(2), and § 1512(c)(2) is Unconstitutional as Applied.

#### 1. <u>The Purpose of 18 U.S.C. § 1512(c) Requires a Witness or Evidence</u>.

18 U.S.C. § 1512(c), of which § 1512(c)(2) is a part, was enacted by the Sarbanes-Oxley Act as an amendment to 18 U.S.C. § 1512. Sarbanes-Oxley Act, Pub. L. No. 107-204, § 1102, 116

Stat. 807 (2002). The Department of Justice's own interpretation of Section 1512 is reflected in their Criminal Resource Manual. See Criminal Resource Manual, CRM 1729, Department of Justice that states Section 1512 "proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings. . . ." DOJ and Congress never distinguished before January 6, 2021 that any part of 1512(c) was not tied to interfering with the presentation of evidence by witnesses or by tangible items like documents. A review of other parts of Section 1512 shows it involves actions against people, whereas 1512(c) was added for actions taken by people against documents and tangible evidence. Section 1512(c)(2) may have been ahead of its time in compensating for electronic drives and cloud files. Section 1512 requires action against a witness or evidentiary document.

Mr. Nichols cannot have violated Section 1512(c)(2) because he was not inside the Capitol Building when the "proceeding" was interrupted.  Neither is he accused of doing anything to tamper with a witness or evidentiary documents that would be used by Congress on January 6, 2021, or later.  Mr. Nichols did not come near, let alone attempt to take the electoral certificates, which were the only documents for the "proceeding." Importantly, the electoral certificates were never intended as evidence. The certificates are on fancy paper in fancy envelopes and were intended for a ceremony. They were not marked as evidence. They were placed in a fancy box and are likely in the National Archives somewhere. The key element of the crime is not charged in that there was no evidence related to documents or files that were tampered with. Because Mr. Nichols did not "tamper" with evidence or documents, and was not accused of such, he is beyond the reach of § 1512(c)(2), and the count should be dismissed.

    **2. <u>The Statute is Unconstitutional in Arbitrary Application</u>**.

    Count Two provides not a scintilla of information about whom Mr. Nichols aided and abetted, how, and for what. No person can know what will make their actions a crime under Section 1512(c)(2) as applied. The statute is not vague as written - but its interpretation and application against Mr. Nichols are novel and capricious, and therefore, unconstitutional.

    The Government, as well as the DC District Court's judges, view and apply Sections 1512(c)(1) and (c)(2) as disjointed, because of the word "otherwise," even though in the English language "otherwise" as used in Section 1512(c)(2) is a conjunctive adverb. Despite Senators stating at the time of enactment circa 2002 that Section 1512(c) closed a loophole for document destruction or tampering, for January 6th cases the legislative intent is ignored. Section 1512(c)(2) is used without any relation to a witness or evidence. Despite every other part of Section 1512 having a purpose to deter a threat to a witness or tangible document or file related to evidence, the Government and District Court have decided that Congress buried 1512(c)(2) as a crime for anything that interrupts "the proceeding," where no interference with a witness or evidence is required. There was not a single "witness" on January 6. The Electoral Count Act never once mentions the word "witness.' The Act never once mentions the word 'evidence' as a requirement to ceremoniously count certificates. Because of the above, the statute is being applied unconstitutionally and outside of its design, where anything that interrupts "a proceeding" can be charged as a twenty-year felony.

    A judge, U.S. Attorney, or FBI agent can decide at their whim what obstructs a proceeding involving no witness or evidence such that Section 1512(c)(2) is violated. A proceeding is now anything involving Congress, except when Stephen Colbert's television comedy crew remains in the buildings connected by tunnel to the Capitol after being told to leave. DOJ did not use Section

1512(c)(2) on January 6, 2017, when a man wandered yelling through the occupied chamber and disrupted the Electoral Vote Count.

The DOJ did not weaponize Section 1512(c)(2) in 2017 when groups in intervals showed up in the Senate gallery and yelled during the Justice Kavanaugh confirmation hearings, where said hearings were actually "obstructed" and had to stop while members of Code Pink were removed. The DOJ did not use 1512 when people verbally surrounded and accosted Republican Senators in hallways and by elevators during breaks from the confirmation hearings - where the locations were off-limits to the public. The DOJ did not use 1512 when Congresswoman Kyrsten Sinema was accosted by activists while using the restroom. The DOJ did not use 1512 after gun control activist David Hogg was escorted out of a House Judiciary Committee hearing on June 20, 2022, following an outburst that received over one million views on Twitter within hours of the incident. Importantly, DC Jail's Inmate Grievance Process Coordinator T. Campbell clearly violated 1512(c) when on April 11, 2022, she when materially altered crucial evidentiary documents necessary for the administrative grievance process at DC Jail—yet she has never been charged by the Department of Justice.[1]

In application, nobody can tell what acts will be criminal under Section 1512(c)(2), where DOJ and the D.D.C. say that 1512(c)(2) can be anything that disrupts what they label as a "proceeding." According to DOJ's and DDC's interpretation, and current permissible application of 1512, it is a felony punishable by twenty years in prison to block a Senator's parking space. However, your chances of being prosecuted are extremely high if you support Donald Trump, and non-existent if you don't.

---

[1] *See* Habeas Corpus Petition, *Nichols v. Garland et al*, Case No. 1:22-cv-02356 at ECF No. 1 at 33:140 and 34:140

This novel and unprecedented application – unique and newly invented for January 6 defendants - relies on the false idea that Congress buried a catch-all clause to all of Section 1512 in Section 1512(c)(2) where no person would know what conduct violates what part of the law, if any. As a catch-all phrase, Section 1512(c)(2) applies to Section 1512(c)(1). But as applied, instead of the focus being on witness and evidence tampering (the reason for the overall statute's existence), the new DOJ and court-made law as applies to January 6 defendants has turned Section 1512(c)(2) on its head. Now anything that might interrupt any "proceeding" that is deemed "official" with no evidence and no witnesses can result in a 20-year felony if DOJ decides to prosecute.  The potential reach of this statue is limitless, has no bounds, and must be reined in at once.

If Mr. Nichols' prosecution is not in fact arbitrary, the government should be able to articulate a credible statutorily based standard that would explain why it thinks his alleged conduct falls under its broad reading of § 1512(c)(2), in a way that also accounts for why it has failed to charge not only other persons whose alleged conduct would also have disrupted the counting of the Electoral College votes on January 6th but also persons who have disrupted official proceedings in the past.

In Mr. Nichols' case, the indictment shows that the Government made the equivalent of trespass (with a "knowing" scienter) and being amidst what it claims was a civil disorder, to be conduct within the elements of a crime that is supposed to be about document tampering. Because the statute is unconstitutional as applied, where others similarly situated are not charged equally, then Mr. Nichols Count Two should be dismissed.

**3. <u>Under DOJ and The Court's Mistaken Grammatical Interpretation, There Are No Set Elements That Make Up A 1512(C)(2) Crime</u>**.

A thorough review of the entire statutory context proves that the word "otherwise" was intended by Congress to marry sections 1512(c)(1) and 1512(c)(2) together. The obvious contextual evidence that counters the Court's usual "plain meaning" determination is § 1512's repeated use of the disjunctive "or" throughout the statute as a way of demarcating plainly separate and independent conduct. In fact, the word "or" is used nine times in 18 U.S.C. § 1512 to create twenty separate and independent methods of obstructing justice. "Or" is used in § 1512(a)(1) to demarcate three separate methods of obstructing justice by murder or attempted murder. Similarly, "or" appears twice in § 1512(a)(2), effectively demarcating seven distinct methods of obstruction through threats or physical force. Congress, unlike in twenty surrounding places in the Witness Tampering statutes, inserted "otherwise" only between subsections (c)(1) and (c)(2) of § 1512(c). Why would Congress, after using "or" to unambiguously demarcate twenty plainly separate and independent methods of obstructing justice, insert the word "otherwise" between subsections (c)(1) and (c)(2) for the exact same purpose? In other words, Congress could have "underscored" that (c)(1) and (c)(2) involve different obstructive conduct by omitting "otherwise" from the statute altogether. Therefore, logically "otherwise" must have been intended by Congress to have a statutory constructive purpose different than, as the Court found, underscoring disjunction between the subsections.

Because of the above, Mr. Nichols' indictment makes it impossible to defend against Section 1512(c)(2) separately from the other counts for Civil Disorder and Restricted grounds violations. The government can say that any act violates the statute.

**4.** **<u>Misuse of Grammar Allows Misapplication of the Law from What was Intended</u>**.

"Otherwise" is used as a conjunctive adverb in thoughtful reading of the entire statute. In Section 1512(c)(2) Congress left open the ability to address other means of interfering with the availability of documents as evidence in a proceeding. In the Enron case, the lack of a "Section 1512(c)" meant that the document possessor could destroy, shred, tamper, or otherwise make documents disappear. Again, why would Congress delineate--twenty times--separate types of obstructive conduct by using "or," but then insert the word "otherwise" in § 1512(c) for the same purpose? In the rest of the statute, Congress listed very specific acts (murder, kidnapping, etc.) whereas for documents it left open other ways someone trying to obstruct a proceeding could impact them.  Nothing indicates Congress intended Section 1512(c)(2) as a placeholder for DOJ and courts to come along and implement their own version of this law.

There are six types of adverbs in the English language: adverbs of time, manner, place, degree, frequency, and conjunction.[2] The first five types are similar in nature, and are used to modify (typically) verbs within their clauses or sentences.[3] The sixth type of adverb is the "conjunctive adverb," which "is an adverb that acts like a conjunction."[4] In § 1512(c), "otherwise" operates as a conjunctive adverb. That "otherwise" in § 1512(c)(2) is a conjunctive adverb is clear. According to a well-respected dictionary:

"When used to connect two related clauses, otherwise is usually classified as a conjunctive adverb, which by grammatical tradition should be preceded either by a semicolon or by a period."[5] <u>A "conjunctive adverb" conjoins and modifies two separate clauses</u>. The difference between

---

[2] https://www.thesaurus.com/e/grammar/types-of-adverbs/ (online thesaurus).
[3] *Id*.
[4] *Id*. A "conjunctive adverb" is sometimes called an "adverbial conjunction."
[5] AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th Ed. 2020), https://www.ahdictionary.com/word/search.html?q=otherwise, (Usage note) (emphasis original).

"otherwise" the "adverb" and "otherwise" the "conjunctive adverb" is significant. An "adverb" modifies an adjacent word, e.g., "she believed otherwise," "quickly ran," "knocked on the door loudly," "briefly spoke," etc. Conjunctive adverbs, by contrast, do not modify adjacent words; instead, these grammatical renegades relate the entire adverbial clause back to the preceding clause, thus modifying, in some respect, the first clause. A conjunctive adverb connects independent clauses and acts as a modifier *by using one clause to modify another*.[6]

A "conjunctive adverb" is "a word that modifies a whole previous statement." Frederick Crews, The Random House Handbook 403 (6th ed. 1992). Unlike the Government's interpretation, "otherwise" was not used for disjunction where an unregulated catch-all could be applied to Section 1512 in its entirety. Under the Government's interpretation the entirety of Section 1512 could be eliminated and replaced with just Section 1512(c)(2).

Congress's intent in Section 1512(c)(2) was to criminalize obstructive conduct related to documentary-type evidence technically not captured or anticipated under Section 1512 (c)(1); and not to hand prosecutors and courts a sweeping, over-lapping obstruction of justice statute equipped with a 20-year maximum penalty sledgehammer. As the Supreme Court has emphasized "over and over," when "expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat'l Bank v. Independent Ins. Agents of Amer.*, 508 U.S. 439, 455 (1993) (internal citations omitted).

The current version of § 1512(c) was enacted as part of Sarbanes-Oxley and was intended by Congress to improve the accuracy of corporate disclosures by penalizing those who obstruct justice "by impairing the integrity or availability of records, documents, and other tangible

---

[6] Dictionary.com (online dictionary and thesaurus),
https://www.thesaurus.com/e/grammar/conjunctive-adverbs/ (emphasis added).

objects." *United States v. Hutcherson*, No. 6:05CR00039, 2006 U.S. Dist. LEXIS 6652, at *6-7 (W.D. Va. Feb. 3, 2006). Accordingly, "the amended § 1512(c) created a specific subsection dealing with tampering with tangible evidence, in what was otherwise a statute that previously dealt only with tampering of persons." *Id*. Section 1512 was not intended to create two separate crimes, but instead, was "meant to criminalize difficult to enumerate conduct that would otherwise slip past Section 1512(c)(1)'s specific prescription. *Id*. Accord *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 U.S. Dist. LEXIS 170271, at *54-55 (E.D.N.Y. Dec. 21, 2015) ("Accordingly, this structure suggests that subsections (1) and (2) of Section 1512(c) outlining two separate ways that a person can corruptly violate the statute.").

**5.   The Government's Interpretation Violates the Canons of Noscitur A Sociis and Ejusdem Generis.**

That Congress only intended for § 1512(c)(2) to apply to conduct that resembles the specific acts listed in § 1512(c)(1) in some way (other than misapplied to make a felony any conduct that disrupts a proceeding) is required by the application of the interpretative canons of noscitur a sociis and ejusdem generis as illustrated by *Yates v. United States*, 135 S.Ct. 1074 (2015) and *Begay v. United States*, 553 U.S. 137 (2008).

In *Yates*, fishermen threw grouper overboard when they were about to be caught with under-sized fish. They were charged with Section 1519 - a felony carrying up to a twenty-year sentence. *Yates* at 1520. 18 U.S.C. § 1519 made it a crime to "alter[],destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] false entry in any record, document, or tangible object" in relation to certain types of investigations, matters, and cases. 18 U.S.C. § 1519. In reversing the Eleventh Circuit's judgment, a four-Justice plurality of the Supreme Court noted that 18 U.S.C. § 1519 was created through the Sarbanes-Oxley Act ((the same act that created 18 U.S.C. §1512(c), the act where Mr. Nichols is charged, without any involvement with documents)).

The plurality noted that the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, LLP, had systematically destroyed potentially incriminating documents." *Yates*, 135 S.Ct. 1081. With this backdrop, the plurality determined that the term "tangible object" in § 1519 is only meant to refer to tangible objects that are of a type with a "record" or "document" and not just to "all objects in the physical world." *Id*. at 1081. The four-Justice plurality indicated that this conclusion was compelled by use of the interpretive canons of noscitur a sociis (it is known by its company) and ejusdem generis (of the same kind). *Id*. at 1085-86. In this, they were joined by a fifth Justice. *Id*. at 1089-90. To show how reading Sections (c)(1) and (c)(2) as disjointed creates an absurdity, upon review of the rest of the statute that harmonizes like "things" in each section where what the section is intended to address is clear, *Miller* aptly observed that the government's construction of § 1512(c)(2) presumes Congress would "hide [an] elephant in [a] mousehole." 2022 U.S. Dist. LEXIS 45696, at *29. More aptly the Government's interpretation appears as a zebra standing out in a flock of geese.

As the plurality in *Yates* explained, under the noscitur a sociis canon, a term should not be ascribed "a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Id*. at 1085 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Under the ejusdem generis canon, "[w]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id*. at 1086 (quoting *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2008)) ("[usually]" added in *Yates*). By applying the noscitur a sociis canon and the ejusdem generis cannon to "any record, document, or tangible object" in § 1519, the four-

Justice plurality and the concurring Justice determined that "tangible object" should not be understood to be something of a type different than "record" or "document." *Yates*, 135 S.Ct. 1087, 1089.

Begay concerned the interpretation of an "otherwise" clause in 18 U.S.C. § 924(e)(2)(B). In *Begay*, the issue was whether DUI for example fell under the "otherwise" section after specific violent crimes were listed. *Begay* held that the proximity of the listed crimes "burglary, arson, extortion, or crimes involving the use of explosives" to a general crime "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another" was sufficient to "indicate[] that [the 'otherwise' clause] covers only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142. Specifically, even though DUI posed a serious risk of injury, the Court found "that DUI falls outside the scope of clause (ii). It is too unlike the provision's listed examples [burglary, arson, extortion, or crimes involving explosives] for us to believe that Congress intended the provision to cover it." *Id*. at 142.

### 6.  The Government's Construction of § 1512(c)(2) Creates Surplusage

Accepting the Government's construction for § 1512(c)(2) creates surplusage for almost the entirety of § 1512.  The canon against surplusage holds that "all words in a statute are to be assigned meaning, and that nothing therein is to be construed as 'surplusage.'" *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (quoting *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995)). "[T]he canon . . . is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013) (emphasis added). If § 1512(c)(2) covers every and any act that obstructs, influences, or impedes an official proceeding, then seven of the provisions are rendered

16

superfluous and run afoul of § 1512(c)2). :§§ 1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(B)(iii), 1512(a)(2)(B)(iv), 1512(b)(1), 1512(b)(2)(A), 1512(b)(2)(C), 1512(b)(2)(D), and 1512(d)(1).

Because the Government's interpretation of Section 1512(c) creates surplusage - where the above sections are duplicative in effort, the majority of Section 1512 is unconstitutional. This is absurdly outside the legislative intent but this far the D.D.C. by the majority has ignored the absurdity.

**7.   Review of all of § 1512 Shows the Government Interpretation of § 1512(c) is Wrong.**

A review of § 1512(a), (b), and (d) shows that each provision proscribes only conduct that is intended to cause the suppression or corruption of testimony, evidence, and information that could be relevant at an official proceeding: § 1512(a) proscribes murder or attempted murder, and the use of force, threats of force, or attempts to use force or threats of force that has such intent; § 1512(b) proscribes intimidation, threats, and corrupt persuasion that has such intent, and § 1512(d) proscribes harassment that has such intent.

Given that Congress inserted the current § 1512(c) into the scheme that included the above three provisions shows that it intended for § 1512(c) as whole to only address conduct that might affect the evidence an official proceeding would review—not all conduct that affects or can affect an official proceeding as a general matter. Because of arbitrary decisions, the Government makes for construing actions as meeting the elements of Section 1512(c)(2), its incorrect construction of the language, and failure to look at the legislative history, the government failed to correctly apply the statute. And because of the incorrect and arbitrary application, Mr. Nichols cannot have known at the time he violated the law, and what he is supposed to defend against.

Section 1512(c)(2) requires an act against documents. Mr. Nichols is charged with no such offense, and instead, the Government makes Civil Disorder and Restricted area "trespass" the lesser crimes under Section 1512(c)(2), that once charged, implicated violation of a statute's section that was all about documents.

The Count for 1512(c)(2) should be dismissed because Mr. Nichols cannot have known what acts would violate this law; the statute is being applied unconstitutionally, and the government and District Court are using a faulty construction of the language where they can make anything a crime in violation of Section 1512(c), and Mr. Nichol's is beyond the reach of what was the intended construction for determining a violation. Mr. Nichols is not charged with committing the acts, or having the *mens rea*, required for 1512(c)(2). Because of this, Count Two should be dismissed.

**B.  The Electoral Count is not a Proceeding as Contemplated When Section 1512(c) Was Passed**.

The counting of the Electoral College votes by the Vice President is conducted pursuant to the Twelfth Amendment to the U.S. Constitution and the rules spelled out in 3 U.S.C. § 1 et seq. The actual meeting to count the Electoral College votes is conducted pursuant to 3 U.S.C. § 15. At such a meeting of both houses of Congress, "certificates of electoral votes" are "presented" to the Vice President by "tellers" on a state-by-state basis and "read… in the hearing of the two Houses." After such reading of the certificates of electoral votes from each state, the votes are then "counted… and delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States." *Id*. This procedure allows for no

exercise of discretion or judgment on the parts of the tellers and the President of the Senate, *id.*, and their roles must therefore be regarded as purely ceremonial or ministerial.

"Ministerial describes an act or a function that conforms to an instruction or a prescribed procedure. It connotes obedience. A ministerial act or duty is a function performed without the use of judgment by the person performing the act or duty."[7] "MINISTERIAL. . . . as opposed to judicial; as, the sheriff is a ministerial officer bound to obey the judicial commands of the court. When an officer acts in both a judicial and ministerial capacity, he may be compelled to perform ministerial acts in a particular way; but when he acts in a judicial capacity, he can only be required to proceed; the manner of doing so is left entirely to his judgment."[8]

There is significant case history prior to January 6, 2021, articulating what a "proceeding" is under 1512(c)(2), none of which, includes an electoral count.  The necessary requirements for the sufficiency of an official proceeding are (1) a witness and (2) evidence through testimony or documents under Section 1512. There is not a single mention of a witness in the Electoral Count Act, nor is there any mention of evidence. There is instead, a scripted procedure that the Vice President reads. While there was an objection to the votes from Arizona on January 6th prior to evacuation, the thing cut short was a debate in each house and a vote as to whether to accept the certificates. No witnesses were scheduled. The Secretaries of State who certified the electors' certificates were not present. Debate was going to include words, but no document evidence was going to be provided.

---

[7] West's Encyclopedia of American Law, edition 2. Copyright 2008 The Gale Group, Inc.
[8] https://legal-dictionary.thefreedictionary.com/Ministerial

A "proceeding" cannot simultaneously be both a proceeding where decisions and judgments are made and a ceremony where there is no discretion, decision, or judgment. In his letter dated January 6, 2021, VP Pence wrote that his role was largely ceremonial. The Congress recently engaged in revision work for the Electoral Count Act, where the word "ministerial" will be included to solidify that there is no decision-making. The use of "proceeding" to describe a function where no decisions were to be made by a master of ceremonies or the electoral vote talliers, and where everything was scripted for a ceremony, with not a single witness, does not meet the historical usage that required hearings and evidence for a proceeding. The operative terms prior to Section 1512 as rewritten to incorporate Section 1519 and Section 1505 were "hearing" and "evidence."  January 6, 2021 was not a hearing and there was no evidence to be presented by a witness or document. The debate for any objections did not involve any witnesses or documents.

## V.    CONCLUSION

Mr. Nichol's Count Two should be dismissed because Count Two of Indictment fails to state any allegation where Mr. Nichols' actions fall within the ambit of conduct that is necessary for the triggering or statute 1512, as such, Mr. Nichols' motion to dismiss should be granted.

WHEREFORE, Defendant, Ryan Nichols, moves this Honorable Court to dismiss Count Two of the Indictment for failure to state an offense for 18 U.S.C. Section 1512 (c)(2) and 18 U.S.C Section 2; and for unconstitutional application of both statutes.

Dated August 12, 2022

Respectfully submitted,

/s/ Joseph D. McBride, Esq.

Joseph D. McBride, Esq.
Bar ID:  NY0403
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
p: (917) 757-9537
e: jmcbride@mcbridelawnyc.com

**CERTIFICATE OF SERVICE**

I hereby certify on the 12th day of August 2022, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Joseph D. McBride, Esq.
Joseph D. McBride, Esq.