IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:21-cr-117 (TFH) |
| RYAN TAYLOR NICHOLS  (01) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL DISCOVERY**

The government respectfully submits this opposition to defendant Ryan Taylor Nichols' Motion to Compel Discovery (ECF 133, "Motion") seeking all communications between the Department of Justice and the House Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"). In his Motion, Nichols asserts that the discovery he seeks is needed to "supplement[1] his joinder in the motion for change of venue" and seeks discovery to "Illuminate Any Collusion" between the Select Committee and the Executive Branch.  Nichols' Motion should be denied.[2]

**I.      The Select Committee Hearings Provide No Basis to Transfer Venue.**

In seeking to "supplement" his venue transfer motion, Nichols claims (Mot. 2-3) that the Select Committee hearings have "poisoned the jury pool."  In contending that the Select Committee's nationally televised hearings support a change of venue, Nichols points out that

---

[1] Nichols provides no explanation or justification for his failure to seek discovery prior to the due date of his motion for a change of venue.

[2] The Honorable United States District Judge Carl Nichols recently denied a virtually identical motion filed by a January 6 defendant.  *See United States v. McKellop*, 1:21-cr-268-CJN (Minute Entry, July 25, 2022) ("The Defendant has not pointed to any evidence beyond mere conjecture that the government has engaged in any misconduct.  Nor is it apparent what role, if any, the sought-after discovery would play in Defendant's … Motion to Change Venue, or any other pending Motion.  By its nature, this information, if it exists, would be unknown to the jury pool.").

**Government's Opposition to
Defendant's Motion to Compel Discovery—Page 1**

approximately 19 million people watched the televised coverage of the first hearing on June 9, 2022. *Id.* at 2. But this exposure was not limited to the District of Columbia.[3] Instead, the hearings were carried on national networks across the country. In similar circumstances, the D.C. Circuit affirmed the denial of a change of venue where the defendants—who were high-ranking members of the Nixon administration—complained that they were prejudiced by news coverage of the Watergate-related hearings. *United States v. Haldeman*, 559 F.2d 31, 62-64 & nn. 35, 43 (D.C. Cir. 1976) (en banc) (per curiam). The court of appeals observed that "a change of venue would have been of only doubtful value" where the "network news programs and legislative hearings" related to Watergate were "national in their reach." *Id*. at n.43.

Moreover, the 19 million viewers of the June 9, 2022, hearing represent only about 6% of the total U.S. population. Nichols has not pointed to any evidence that D.C. residents were more likely to have watched that hearing than citizens in other parts of the country. And even if D.C. residents tuned in at a higher rate, it is still likely that a majority of D.C. residents did not watch the hearings. Moreover, those hearings have focused on the events of January 6 as a whole, not only on Nichols' actions. There is no reason to believe that coverage of the hearings will create in the District of Columbia such a degree of bias against Nichols that an impartial jury cannot be selected.

Additionally, a careful voir dire—rather than a change of venue—is the appropriate way to address potential prejudice from the Select Committee hearings. "[V]oir dire has long been recognized as an effective method of routing out [publicity-based] bias, especially when conducted in a careful and thoroughgoing manner." *In re Nat'l Broadcasting Co.*, 653 F.2d 609,

---

[3] Nichols implicitly acknowledges this undisputable fact by noting elsewhere that the population of the District of Columbia is approximately 700,000. (*See* ECF 92 at 6.)

**Government's Opposition to**
**Defendant's Motion to Compel Discovery—Page 2**

617 (D.C. Cir. 1981). After a careful voir dire, this Court can select a jury from those residents who either did not watch the hearings or who, despite having watched the hearings, give adequate assurances of their impartiality. *See Haldeman*, 559 F.3d at 62 n.35 (rejecting claim of prejudice even though "several jurors" had "seen portions of the televised Senate hearings" related to Watergate). The voir dire process can thus assure that no one who shares Nichols' view that the Select Committee hearings offer "emotionally charged and prejudicial descriptions" (Mot. 2) in a manner that prevents that person from fairly and impartially considering the evidence is seated on the jury.

Finally, the fact that the defendant has resorted to filing a motion to compel to obtain the information he seeks, proves *de facto* that the jury pool does not have access to it either. And if the jury pool does not have access to the information Nichols seeks, the jury pool cannot have been tainted by it. Accordingly, the underpinning of Nichols' motion to compel—the purported need for information to supplement his change of venue motion—lacks reasonable foundation. *See McKellop*, 1:21-cr-268-CJN (Minute Entry, July 25, 2022).

## II. Defendant Provides No Legal or Factual Basis for His Discovery Request.

Nichols next suggests (Mot. 3-4) that the Select Committee may have colluded with the Executive Branch, and that such collusion supports his request for additional discovery. That contention is both factually and legally flawed.

As a preliminary matter, Nichols' request for an order compelling the production of discovery should be denied as premature. Per Local Criminal Rule 16.1, "[n]o discovery motion shall be heard unless it states that defense counsel has previously requested that the information sought from the attorney for the United States and that such attorney has not complied with the request." In this case, Nichols never requested the information sought from the government.

**Government's Opposition to**
**Defendant's Motion to Compel Discovery—Page 3**

Had Nichols made such request, however, he would have learned that, as a factual matter, his speculation that the Select Committee coordinates—or, in his words, "collaborat[ed]"—with the Executive Branch is inaccurate.  For one thing, the House of Representatives created the Select Committee to investigate the "facts, circumstances, and causes" related to the Capitol siege on January 6, 2021, and to make recommendations aimed to prevent any similarly violent acts in the future.  *See* H.R. Res. 503, 117th Con. §3-4 (2021); *see Trump v. Thompson*, 20 F.4th 10, 16 (D.C. Cir. 2021).  As such, the legislatively created Select Committee is distinct from the Executive Branch, including the Department of Justice.  *See, e.g.*, *Trump*, 20 F.4th at 16 (litigation involving Select Committee request from Archivist of the United States).  Moreover, as the Chief Judge recently noted, the Department of Justice has sought access to certain of the Select Committee's investigative materials, which would be unnecessary if the two entities were operating jointly.  *See United States v. Williams*, 21-cr-377, ECF No. 108 (D.D.C. June 23, 2022); *see also United States v. Nordean*, 21-cr- 2022 WL 2292062, at *2 (June 24, 2022) (noting that the Department of Justice was uncertain about the timing of the release of Select Committee interview transcripts).  In short, Nichols fails to establish any improper collaboration or collusion with the Select Committee.

Nichols also fails to establish any legal ground that would entitle him to the discovery he appears to request.  The Federal Rules of Criminal Procedure provide that upon a defendant's request, the government must permit the defendant to "inspect and to copy or photograph" documents or objects, including buildings or places, that are within the government's possession, custody or control.  Fed. R. Crim. P. 16(a)(1)(E).  Rule 16 establishes "the minimum amount of discovery to which the parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery in appropriate cases."  *United States v. Karake*, 281 F.Supp.2d 302, 306

(D.D.C. 2003) (quoting Fed. R. Crim. P 16 advisory committee's note to the 1974 amendments). Rule 16 does not, however, bestow on the defendant a right to unrestricted access to all documents and objects within the government's possession, custody, or control. *See United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) ("Rule 16 does not authorize a blanket request to see the prosecution's file"). Rather, it applies to those documents and objects that (1) are "material to preparing the defense;" (2) the government intends to use in its case-in-chief at trial; or (3) were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

Evidence is material under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). Material evidence includes both exculpatory and inculpatory evidence. *Id*. Nevertheless, to show materiality, the defense must demonstrate that the evidence bears "some abstract logical relationship to the issues in the case" and would enable "the defendant significantly to alter the quantum of proof in his favor." *Lloyd*, 992 F.2d at 351 (internal quotation omitted); *see also United States v. Slough*, 22 F. Supp. 3d 1, 4-5 (D.D.C. 2014) (observing that the movant bears the burden of demonstrating that the requested discovery bears "more than some abstract logical relationship to the issues in the case").

Any communications between the Department of Justice and the Select Committee does not meet this standard. The government would not use the communications in its case-in-chief nor would they be obtained from or belong to Nichols. As a result, the defense must show that these communications are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). But Nichols does not advance any arguments that such communications would be material to his

defense. Nor is it remotely evident how such communications could be relevant, let alone material, to any issue at trial. Nichols makes passing reference (Mot. 1) to footage from Select Committee hearings that appears to have originated with body-worn cameras or closed-circuit video at the Capitol, but he does not suggest that he seeks any of that footage—footage which he would already have received through discovery.

*United States v. Berrios*, 510 F.2d 1207 (2d Cir. 1974), on which Nichols relies (Mot. 5), is inapposite. In *Berrios*, the Second Circuit vacated the district court's dismissal of the indictment on the ground that the district court exceeded its authority in requiring the government to disclose to the defendant an internal memorandum (and then dismissing when the government refused to do so). *Id*. at 1212. Moreover—and as Nichols notes, Mot. 5 n.1—Berrios concerned a claim of selective prosecution, which Nichols has not advanced here. Nor could he. Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). To overcome that presumption, a defendant must present "clear evidence" that a decision to prosecute was "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id*. at 464-465. "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). Concerned that selective-prosecution inquiries "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the Supreme Court has also imposed a "correspondingly rigorous standard for discovery in aid of such a claim." *Id*. at

468. The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent." *Id*. (citation omitted). The defendant's evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id*. at 470. "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc*., 684 F.2d 928, 947 (D.C. Cir. 1982). Nichols has not adduced enough (indeed, any) evidence of selective prosecution. *See United States v. Miller*, 21-cr-119, ECF No. 67 (D.D.C. Dec. 21, 2021) (rejecting motion for discovery under a selective prosecution theory).

## CONCLUSION

WHEREFORE, the Government respectfully requests that the Court deny Nichols' Motion.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

 */s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
Federal Major Crimes – Detailee
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8604
douglas.brasher@usdoj.gov

SARAH W. ROCHA
Trial Attorney
D.C. Bar No. 977497
219 S. Dearborn Street, Fifth Floor
Chicago, Illinois 60604
Telephone:  202-330-1735
sarah.wilsonrocha@usdoj.gov