# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF DISTRICT OF COLUMBIA

```
_____
                                    )
UNITED STATES,                      )
                                    )
        v.                          )        Case No. 21-cr-117-1(TFH)
                                    )
RYAN TAYLOR NICHOLS                 )
        Defendant.                  )
                                    )
_____)
```

## DEFENDANT NICHOLS' REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR PRETRIAL RELEASE

Defendant Ryan Nichols, by and through his undersigned counsel, hereby submits this Reply to the Government's Opposition to Defendant's Motion for Pretrial Release.

## I.      BACKGROUND

### A.  Conditions of confinement

The Defendant hereby incorporates as if set forth fully herein the Petition for Habeas Corpus filed with this court, with its corresponding exhibits, as Exhibit A to this Reply Brief. Exhibit A.  The Habeas Petition sets forth the deplorable conditions and other events related to treatment Defendant has endured since being incarcerated.

The Defendant hereby incorporates as if set forth fully herein Exhibit C which further sets forth the deplorable conditions of the prison including, no religious services, no attorney access, delay in receiving mail for as much as 3-4 months, inedible food, mold on the walls, and many other deplorable conditions that justify Defendant's release.

### B.  Plaintiff has an extraordinary character.

Despite how the Government wishes to present Mr. Nichols as a dangerous person, Mr. Nichols is not dangerous.  In fact, is an extraordinary person.  Plaintiff attaches as Exhibit C a

document describing Mr. Nichols' character as Ex. B and incorporates it as if set forth fully herein. He served this Country honorably in the Marines. He has saved countless lives. He was featured on the popular talk show Ellen for his good works. This and many other facts about his life are set forth in Exhibit B and incorporated as if set forth fully herein.

The Court can take judicial notice to the fact that Mr. Nichols' served honorably as a marine, and as his life saving work has been acclaimed in the national news, the Court can take judicial notice to all of his great life saving work, including his assistance to law enforcement, and his saving the life of law enforcement during natural disasters.

Ryan is also a loving father, husband, son, and friend. Despite the efforts of the Government to portray Ryan as a dangerous person, the public record shows that he is a good person. *See* Exhibit E. *See also* the multitude of Character letter exhibits attached.

## C. The September 5, 2022 incident.

On September 5, 2022, Mr. Nichols was subject to abuse by a lieutenant at the Jail. *See* Exhibit D. Mr. Nichols' version of events is easily corroborated by multiple witnesses and camera footage. He was never charged with a disciplinary report for the incident. The incident was in retaliation for his filings against the prison. After the event, one of his thumb drives mysteriously disappeared and he was transferred to a different facility where he is currently being held.

## D. Confiscation of Mr. Nichols' thumb drives.

The events of Mr. Nichols thumb drive (also referred to as a hard drive) being stolen on August 29, 2022, are set forth in the Motion for pretrial release, ECF 150, and are incorporated as if set forth fully herein, including all of its exhibits. The government does not deny that Mr. Nichols' hard drive was stolen for long enough for someone to copy all of its contents. ECF 161.

Mr. Nichols has two thumb drives/hard drives that contain sensitive attorney-client information. *See* Ex. D. On September 5, 2022, after Nichols was taken from his cell and transferred to another part of the jail, one of his hard drives mysteriously disappeared. *See* Ex D.

**E. The Government's attempt to moot the habeas petition by transferring Mr. Nichols.**

The USMS has transferred Mr. Nichols to a different facility for the specific purpose of mooting Mr. Nichols' habeas petition against the USMS and the DC jail.

## II.    ARGUMENT

**A. The confiscation of Mr. Nichol's thumb drive containing his privileged litigation strategies is sufficient basis for release, pursuant to § 3142(i).**

The Government in its opposition admits that the DC Jail, under the supervision of the U.S. Marshals, confiscated Mr. Nichols' thumb drive containing privileged attorney-client communications, work product, and litigation strategies (the "thumb drive"), for no reason, against prison policy, and held the thumb drive long enough to copy all of the contents, and the Government provides no assurances that the contents were not copied or that the contents were not released to unknown third parties. Further, the Government admits that the current policies of the Jail only allow for access to a laptop two weeks at a time with an unspecified amount of time in between, making it impossible to properly prepare for trial. Finally, on or about September 5, the thumb drive was confiscated again and is currently in the Government's possession, its whereabouts are unknown to Mr. Nichols or his attorneys.

Pursuant to 18 U.S.C.S. § 3142(i), temporary release is warranted if the Court finds that it is "necessary for preparation of the person's defense;" the Sixth Amendment guarantees a criminal defendant the right to meaningfully participate in his own defense; and the attorney client privilege is one of the oldest, sacred, and absolute privileges. If the Government can allow a pretrial detainee's privileged documents to be confiscated by the Government at will, at any time, for

indefinite periods of time, without warning, and without accountability or consequence, then §
3142(i), the Sixth Amendment, and the attorney-client privilege have no meaning.

### 1. Only "90 minutes" is enough time to copy the contents of a thumb drive.

The Government admits that Mr. Nichols' thumb drive containing his confidential
attorney-client communications and litigations strategies has been confiscated by the Jail.  The
only defense for this indefensible, unconstitutional and unconscionable action is that "he was only
deprived of the thumb drive for approximately 90 minutes."  Gov. Opp. at page 5.  Astonishingly,
the Government does not deny that the contents of the thumb drive may have been copied during
that time by anyone from the DC Jail, the US marshals, the January Sixth committee, the news
media, or some other unknown third-party.

Even a technical layman understands that 90 minutes is more than enough time to copy all
of the contents of a thumb drive, giving full access to Mr. Nichols' entire litigation strategy to any
number of unknown parties.  Not insignificantly, the DC Jail is currently an opposing party to Mr.
Nichols in litigation before this Court.

Would the Government or the DC Jail provide 90 minutes of unrestricted access to a thumb
drive with their entire litigation strategy to Mr. Nichols' counsel?  Of course not.  This constitutes
a flagrant violation of the most sacred and absolute privilege.  *Coleman v. Am. Broad. Cos.,* 106
F.R.D. 201, 204 (1985).

### 2. The Government's representation that "the prosecution team" has not yet possessed or reviewed the contents of the thumb drive is meaningless.

The Government "represents to the Court that no member of the prosecution team ever
possessed or reviewed the contents of the defendant's thumb drive," and that "the defendant is
certainly free to conduct a forensic investigation of the thumb drive."  First, the burden is on the
Government, not the Defendant, to conduct a forensic investigation.  No reason was ever provided

as to why the thumb drive was confiscated.  Prior to the confiscation, Mr. Nichols was permitted to retain his thumb drive in his possession for six months, and then suddenly, without warning or reason, the Jail confiscated the thumb drive and held it for just 90 minutes.  Absent a reasonable explanation, this suspicious behavior is itself circumstantial, if not direct evidence that the thumb drive was confiscated for the purpose of copying its contents, and the burden is on the Government to show otherwise.

Second, the Government, almost as an afterthought on the final page of its brief, represents that "no member of the prosecution team ever possessed or reviewed" the contents of the thumb drive.  Gov. Opp. at page 8.  They do so without any evidence such as an affidavit or a chain of custody form showing how they can make such a representation.  Further, the Government attorneys do not explain the scope of their carefully worded qualified representation.  Even taking them at their word that "no member of the prosecution team" was involved in compromising Mr. Nichols private litigation strategies, the Government conspicuously fails to represent that some other party did not.  Most suspiciously, throughout the brief, the Government refers to itself as "the Government," yet only with respect to this representation does the Government's undersigned attorney refer to "the prosecution team," strongly indicating that this deliberate choice of words was made because some other member of the government who is not a "member of the prosecution team" has possessed and reviewed the documents.  The Government's representation allows for the possibility that the guards, the Jail's litigation team, the US marshals, the January Sixth committee, or the news media all possessed and reviewed Mr. Nichols' litigation strategies. The carefully chosen words may even exclude the Government's law clerks, paralegals or support staff, who the Government attorneys may not consider to be "members of the prosecution team." Further, the "prosecution team" may not have personally possessed or reviewed the thumb drive,

but someone else could have and verbally revealed to the Government Mr. Nichols' private litigations strategies. Without more than the Government's narrow representation, the Court must assume that Mr. Nichols' privileged litigation strategies were compromised.

Third, the Government does not, and indeed cannot, represent to the Court or the Defendant that the contents of the thumb drive were not copied by the DC Jail or another unknown party. If the contents were copied by an unknown party, and the Government cannot represent they were not, it is entirely possible, even likely, that the Defendant's private privileged litigation strategy and attorney work product could be leaked to the media or the January 6th committee, in which case the Government will ultimately have access to the contents. The fact is, Mr. Nichols privileged litigation strategies were confiscated for unknown reasons and were in the possession of unknown parties for enough time to copy all of the contents. No representation by the Government can un-ring that bell.

Most importantly, though the Government "snooping on his litigation" is a most serious matter and a breach of the law, the constitution, and the sacred attorney client privilege, even assuming arguendo that the Government can prove they did review or copy the materials, it does nothing to remedy the fact that Mr. Nichols is deprived of his litigation materials, which makes it impossible for him to prepare for trial and therefore warrants release pursuant to 3146(i). This Court has held that even non-U.S. Citizens held in Guantanamo Bay have the right to "keep a certain amount of legal materials in [their] cell." *See Mohamedou Ould Salahi v. Obama*, Civil Action No. 05-0569 (RCL), 2015 U.S. Dist. LEXIS 168879, at *13 (D.D.C. Dec. 17, 2015) (finding that the prisoner had adequate access to his legal materials only after a showing by the Government that *inter alia* the prisoner was permitted to keep a certain amount of legal materials

in his cell, and that guards and staff judge advocates had not reviewed the contents). The deprivation of his materials alone should warrant the Court to order his release.

### 3. *The thumb drive was confiscated again and its whereabouts are currently unknown.*

The Government's primary defense against the unlawful and unconstitutional confiscation of Mr. Nichols' thumb drive is that "at most, he was deprived possession of a thumb drive for a 90-minute period when he did not have a laptop to view or work with any of the materials on the drive," implying that if Mr. Nichols was deprived for a longer period of time, it would warrant release pursuant to 3142(i).

Since this motion was filed on August 30 (ECF No. 150), Mr. Nichols' thumb drive was confiscated again on September 5 (*see* ECF No. 156 at page 3) and has never since been returned, the whereabouts of the thumb drive remains unknown to Mr. Nichols or his attorneys, thereby depriving Mr. Nichols of his privileged materials for over two weeks and counting. Mr. Nichols made this known to the Government in a supplemental briefing to this Motion filed on September 8 (ECF No. 156), yet the Government chose to ignore this in its Opposition to the Motion, filed a week later.

As the Government's primary argument that 3146(i) does not warrant release because his materials were returned after a de minimus period of time, the argument fails because of the ongoing deprivation of the materials spanning two weeks and counting.

### 4. *The Court's findings in Ali that the Jail's harsh conditions violated due process were not reversed.*

In the Defendant's Motion for Release, the Defendant cited this Court's decision in *United States v. Ali*, 965 F. Supp. 2d 139 (D.D.C. 2013)*,* stating:

> This case bears a striking resemblance to *Ali* where this Court found "a disregard for Ali's constitutional rights, as well as the depressing reality of conditions at the D.C. Jail." *Id.* In that case, the pretrial detainee was punished without a timely

hearing for allegedly possessing in the form of a USB drive containing educational materials. *Id.* The Court found that this conduct by the DC Jail "exemplifies the exceedingly harsh conditions that pretrial detainees face while awaiting trial" and "points strongly to a denial of due process." *Id.* (citing *Gonzales Claudio*, 806 F.2d 334, 341(2d Cir. 1986). The Court accordingly weighed the length of Ali's pretrial detention heavily in his favor in evaluating his due process claim. *Id.*

In its Opposition, the Government notes that *Ali* was reversed by the D.C. Circuit Court of Appeals in *United States v. Ali,* 534 F. App'x 1, 2 (D.C. Cir. 2013). But the Government failed to notice that the Court of Appeals did not reverse the findings of this Court, specifically that the DC Jail's confiscation of a pretrial detainee's thumb drive "exemplifies the exceedingly harsh conditions that pretrial detainees face while awaiting trial" and "points strongly to a denial of due process." The Court of Appeals only reversed the district court's decision to release Ali because Ali was a "serious flight risk," which was a gross understatement.

Ali was a Somali pirate who assisted other pirates in holding hostages at sea for 67 days until a $1,7 million ransom was paid. After Ali successfully disembarked from the attacked ship, he managed to elude authorities for two years before being apprehended. At the time he was apprehended he was living in Somalia as the acting Director General of the Somalia Ministry of Education and was lured from Somalia to the U.S. by an elaborate ruse whereby U.S. officials concocted a fake educational conference in North Carolina. *Ali*, 965 F. Supp. 2d at 142. Before the Court of Appeals reversed, this Court granted Ali's Motion for pretrial release.

It is noteworthy that this Court ordered the release of a foreign government official wanted for piracy, despite the serious risk of flight, based on an incident strikingly similar to what happened to Mr. Nichols, namely the confiscation of a thumb drive. Here, Mr. Nichols is an American citizen and resident, a husband and father of two small children, a business owner, a decorated military veteran, a known philanthropist, and "the government has not argued risk of flight." Further, as noted in the Motion for Release, Ali's thumb drive merely contained

educational, while *Nichols* contains privileged attorney-client communications and litigations strategies, with no assurances that they have not already been compromised, and the deprivation of which prevent him from meaningfully participating in his own defense.

The findings in *Ali* were not reversed, specifically the finding that the DC Jail has a practice of unlawfully confiscating digital materials, and that such practices are "harsh" and violate the pretrial detainee's due process.  While the confiscation of the thumb drive is "strikingly similar" to Mr. Nichols' case, the similarities end there.  As the distinguishing factor that was the basis for the Court of Appeals' reversal in *Ali* is not present in this case, this Court should grant Mr. Nichols' Motion for Pretrial Release, as the Court did in *Ali.*

> ### 5.   *The Government's stated policies make it impossible for Mr. Nichols to properly prepare for trial.*

According to the Government, "due to the limited number of devices available, the defendant was on a rotating list to have a laptop for a two-week period.  At the end of the two-week period, defendants on the list are required to return the laptops to the jail's litigation team until their next two-week turn."  The Government never explains who this "jail litigation team." Nor does the Government cite to this policy to inform the Court or the Defendant what they are referring to.  Critically, the Government doesn't inform the Court or the Defendant about the frequency of these "two-week turns."

The Government further informs us, again without helpful citation, that in the last two weeks "the jail updated its policy to make it clear that defendants may not continue to possess their thumb drives when they do not have access to the laptops, and that the drives would be held, but not viewed, by the jail's litigation team between each defendant's two-week rotation with a laptop."

These policies are untenable and constitute a *prima facie* denial of Mr. Nichols' right to meaningful participate in his defense and warrant release pursuant to 3142(i).  The Government is not restricted to "two-week turns" in using computers to work on its prosecution of Mr. Nichols, therefore, Mr. Nichols should likewise, not be so restricted in working on his defense.  The Government does not provide any facts that support that the jail cannot procure more laptops to accommodate its population, nor does the Government provide any facts to show that there does not exist a less harsh alternative to the current system.  *S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.,* Civil Action No. 18-760 (CKK), 2020 U.S. Dist. LEXIS 106416, at *60 (D.D.C. June 17, 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 539 n.20 (1979)).

As set forth extensively in Mr. Nichols Motion for Release (ECF No. 150 at page 6), and as this Court has noted in the past, the "physical and psychological toll of pretrial detention" can "significantly affect a defendant's ability to participate in his own defense."  *Ali,* 965 F. Supp. 2d at 151-52 (citations omitted) *reversed on other grounds.*  The Court's statement rings true under normal circumstances, but are even more true given the harsh policies of the jail which make it impossible for Mr. Nichols to prepare for his own defense, and therefore the Court should grant his Motion for Release.

**B.  § 3142(i) does not require a material change in the 3142(g) factors.**

The Government argues that Nichols' motion should be denied because "Nichols fails to point to any new or material changes in the § 3142(g) factors."  But the Government fails to point to any authority that requires Nichols to show any new or material change in the § 3142(g) factors.

In fact, the Court may, by subsequent order, permit the temporary release of the person for compelling reasons or if it is necessary for the preparation of the person's defense, even in the absence of a material change to the 3142(g) factors, if the Court finds that the compelling reasons or necessity to prepare for the defense outweighs the prior determinations.  *United States v. Thorne*,

No. 18-389 (BAH), 2020 U.S. Dist. LEXIS 73346, at *4-5 (D.D.C. Apr. 27, 2020) ("Under [§ 3142(i)], *a defendant otherwise subject to pretrial detention* may be granted temporary release by showing both (1) that he would be released to "the custody of a United States marshal or another appropriate person," and (2) that the temporary release is "necessary for" a "compelling reason.") (emphasis added).

In *Thorne,* the Court expressly stated that the § 3142(g) factors are considered only for the purpose of assessing both statutory elements for exercise of the discretion inherent in Section 3142(i). *Thorne*, 2020 U.S. Dist. LEXIS 73346, at *5-6. In other words, the factors are considered, but no "new or material change" is required.

In *Ali,* upon finding that the defendant's due process rights were violated, the Court ordered his release because the Court found that a "slight risk of flight" was outweighed by the substantial due process violations. *Ali,* 965 F. Supp. 2d at 157. The Court of Appeals reversed because it found that the risk of flight was such that *Ali* failed to satisfy § 3142(i) requirement to show that he could be released into the custody of an appropriate person that could assure his appearance in court, combined with the fact that the trial was being held the next month. *Ali,* 534 Fed. Appx. at *2.

In *Thorne,* the defendant moved for release in March of 2020, based on the "compelling reason" of the COVID pandemic. The defendant was facing up to life imprisonment with a minimum sentence of 20 years for, among other things, illegal possession of over 44 kilograms of heroin laced with fentanyl, over 50 pounds of marijuana, and five firearms. At the time of his 3142(i) motion for release there was no "new or material change" to the § 3142(g) factors. *Thorne*, 2020 U.S. Dist. LEXIS 73346, at *2. Even though Thorne had been found with enough fentanyl

that could potentially _kill over 1,000,000 people_,[1] Judge Howell of this Court said, "This does not make for an easy case." _Id._ at *8.

In light of _Thorne_ and _Ali,_ this case makes for an easy case, requiring the Court to grant Mr. Nichols' release to his wife's custody. As set forth above, the confiscation of Mr. Nichols' thumb drive containing his privileged litigation strategies is by itself both a compelling reason for release and makes his release necessary for trial preparation, thereby satisfying the second prong of § 3142(i). In light of _Ali,_ both the confiscation of Mr. Nichols' thumb drive and the excessive length of his detention weigh heavily in favor of his release. Further, in _Ali,_ the Court of Appeals took into consideration the fact that _Ali's_ trial was a month away. Here, no trial date is set, but the earliest it can be anticipated is in March of 2023, which is almost half a year from now.

Mr. Nichols has satisfied the second prong of § 3142(i).

Unlike _Ali,_ the Government has never argued that Mr. Nichols is a flight risk. _See_ ECF No. 75 at 5, n. 3. Also, unlike _Ali,_ Mr. Nichols is not a pirate; on the contrary, rather than attacking people at sea, he has sailed to people's rescue and saved lives. Unlike _Thorne_, which was a close case, Mr. Nichols has not been charged with attempted genocide.

Also, his wife is a proper custodian…

## C.  Defendant's Complaints about Jail conditions are directly relevant to his motion for release

### 1.  _The Court weighs past due process violations, including conditions of confinement, when deciding on a motion pursuant to § 3142(i)_

The Courts weighed past due process violations in both Ali and Thorne. Some of the allegations in the habeas petition are ongoing, even with the transfer, for instance, he still does not have his

---

[1] Thorne was caught with 44 kilograms of fentanyl, and, according to the DEA, just two milligrams of fentanyl can be lethal. _See Facts about Fentanyl_, www.dea.gov/resources/facts-about-fentanyl ("Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage.") (last visited September 22, 2022).

thumb drive, he still has PTSD, he is still subject to solitary confinement.  He is still subject to retaliation.

   **2.  *The Government is his immediate custodian and is therefore directly responsible for his conditions of confinement.***

   Both the jail and the federal government has admitted that the Government is the immediate custodian.  *See* Exhibit E.  Even though he is no longer housed at the DC Jail, he is and has always been under the custody of the federal government and therefore nothing has changed and the conditions of confinement are not moot.  The timeline shows a clear pattern of retaliation as he is punished and/or transferred in response to court filings.

   **3.  *The Government's transfer of Mr. Nichols is by itself an additional violation of his due process rights.***

   The government transferring him is itself both retaliation and is meant to deprive him of his right to petition for habeas corpus.  They have not given a reason why he was transferred or pursuant to what policy.

<u>CONCLUSION</u>

   For the foregoing reasons, the Court should grant Mr. Nichols Motion for pretrial release.

Dated: September 30, 2022

Respectfully Submitted,

/s/Jonathan Gross
Bar ID: MD0162
2833 Smith Ave. Suite 331
Baltimore, MD 21209
(443) 813-0141
jon@clevengerfirm.com

Joseph D. McBride, Esq.
Bar ID:  NY0403
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
p: (917) 757-9537
e: jmcbride@mcbridelawnyc.com

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on September 12, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF System, with consequent service on all parties.

/s/Jonathan Gross