```
1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2
     * * * * * * * * * * * * * * *    )
3    UNITED STATES OF AMERICA,        )    Criminal Action
                                      )     No. 21-00117
4                     Plaintiff,      )
                                      )
5        vs.                          )
                                      )
6    RYAN TAYLOR NICHOLS,             )    Washington, D.C.
                                      )    October 7, 2022
7                     Defendant.      )    10:08 a.m.
                                      )
8    * * * * * * * * * * * * * * *    )

9

10                 TRANSCRIPT OF STATUS CONFERENCE
               BEFORE THE HONORABLE THOMAS F. HOGAN,
11                   UNITED STATES DISTRICT JUDGE

12

     APPEARANCES:
13
     FOR THE GOVERNMENT:      DOUGLAS B. BRASHER, ESQ.
14                            UNITED STATES ATTORNEY'S OFFICE
                                FOR THE NORTHERN DISTRICT OF TEXAS
15                            1100 Commerce Street
                              Third Floor
16                            Dallas, Texas 75242

17                            SARAH W. ROCHA, ESQ.
                              U.S. DEPARTMENT OF JUSTICE
18                            219 South Dearborn Street
                              Fifth Floor
19                            Chicago, Illinois 60604

20
     FOR THE DEFENDANT:       JOSEPH D. McBRIDE, ESQ.
21                            THE McBRIDE LAW FIRM, PLLC
                              99 Park Avenue
22                            25th Floor
                              New York, New York 10016
23
                              JONATHAN GROSS, ESQ.
24                            THE CLEVENGER LAW FIRM
                              2833 Smith Avenue
25                            Suite 330
                              Baltimore, Maryland 21209
```

1    REPORTED BY:                LISA EDWARDS, RDR, CRR
                                 Official Court Reporter
2                                United States District Court for the
                                   District of Columbia
3                                333 Constitution Avenue, Northwest
                                 Room 6706
4                                Washington, D.C. 20001
                                 (202) 354-3269
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURTROOM DEPUTY:  This is Criminal Matter

 2    21-117-1, the United States of America versus Ryan Taylor

 3    Nichols.

 4              Counsel, please approach the lectern and state

 5    your appearance for the record, beginning with Government

 6    counsel.

 7              MR. BRASHER:  Good morning, your Honor.  Doug

 8    Brasher for the Government, along with --

 9              You can introduce yourself.

10              MS. ROCHA:  Sarah Rocha.  Good morning, your

11    Honor.

12              THE COURT:  Thank you.  Good morning.

13              Good morning, Mr. Brasher.  Good to see you up

14    here from Texas.

15              MR. BRASHER:  Good to be here.

16              MR. McBRIDE:  Good morning, your Honor.  Joseph

17    McBride on behalf of Mr. Nichols.  And I have with me

18    today --

19              MR. GROSS:  Jonathan Gross on behalf of

20    Mr. Nichols.

21              THE COURT:  Thank you both for coming down from

22    New York.  I appreciate it.

23              Mr. Nichols is here.

24              And I appreciate getting him in for the hearing in

25    person so we can discuss these issues.
```

1          Let me just talk about a couple procedural matters

2     first and then counsel can respond as necessary and then we

3     can go to the merits of the Defendant's motion for --

4     emergency motion for immediate pretrial release and request

5     for an emergency hearing filed earlier last month.

6          I received this morning a supplemental filing and

7     opposition to the motion for release by the Government, and

8     I want to make sure whether Mr. McBride has had a chance to

9     review that and see that at all.

10          MR. McBRIDE:  No, I have not, your Honor.

11          THE COURT:  Well, we're going to have to suspend

12     for a minute so you get a chance to read it through.  It has

13     in it an attachment, Exhibit 1, and that is concerning the

14     issue about the hard drives.  And the Government in their --

15     you need to read it.  And I'll give you a chance now to take

16     a break, because you need to read it.  It said they

17     confiscated one hard drive on August 29th and Mr. Nichols

18     returned it without reviewing its contents, with an attached

19     exhibit and affidavit from the person who did that, and that

20     there is no second hard drive still in existence.  The last

21     other drive was the one returned to you, but it didn't work

22     a while ago.

23          So you need to look at that and talk to

24     Mr. Nichols about it and make sure where we are here and

25     what we're talking about and be ready to respond to that.

1     If that is a problem for you, you can file an opposition to

2     the supplemental reply, a supplement later, and I won't

3     decide about the issue of the hard drive today.

4             The other issue that came up today was, the sudden

5     thing that changed in the case is the petition for habeas

6     was dismissed voluntarily.  I got that this morning.  So

7     Mr. McBride -- and I'm sure the Government hasn't seen it,

8     but Mr. McBride dismissed the habeas petition this morning.

9     So that's not pending for us right now.  But it wasn't ripe

10    yet, but it's not pending.  So he can dismiss it if he wants

11    to without prejudice.

12            So then it leaves Defendant's emergency motion for

13    immediate pretrial release, although part of that was the

14    seizure of the hard drive with the discovery materials of

15    Mr. Nichols, what he was concerned about, and he alleged

16    there's also strategy contained in that with his counsels'

17    advice, et cetera, contained in that.

18            The Government covers that as well in their

19    affidavit they filed from the officer that seized it about

20    it was in an envelope and never reviewed, never seen by

21    anyone.

22            But let me let you look at those documents.  If

23    there's no extra copies, I will provide copies to you in a

24    minute from here, both as to the exhibit and supplement to

25    opposition, because you're going to have to be in a position

1    to address that somehow.  And if you want to leave that out

2    of the argument today, we can treat it later.  That's fine.

3              MR. McBRIDE:  Your Honor, the sum and substance of

4    our argument today will turn on the hard drive.  It is what

5    is at issue.  I can say with absolute confidence that the

6    hard dive -- I'm going to review this, obviously.  But the

7    hard drive has not been returned to us.  We don't have it.

8              THE COURT:  Read the thing, because it's talking

9    about a different hard drive maybe.

10             MR. McBRIDE:  Okay.

11             THE COURT:  There's also Exhibit 1.  Did you have

12   a copy of the exhibit?

13             MR. BRASHER:  Yes, your Honor.

14             THE COURT:  And the supplement, both?

15             MR. BRASHER:  Yes.  I just gave it to him.

16             THE COURT:  I'm going to take a break.  I really

17   think you need to look at that with your client for a few

18   minutes --

19             MR. McBRIDE:  Okay.

20             THE COURT:  -- particularly if you want to make

21   that the main issue today.  Be ready to either address it or

22   ask for an extension and we'll have you back here as soon as

23   we can.

24             MR. McBRIDE:  Okay.

25             THE COURT:  In fairness to you, you haven't gotten

 1     it.

 2                 MR. McBRIDE:  I understand, your Honor.  Thank you

 3     for the opportunity to be able to review this.  We certainly

 4     were not aware of its existence until just now.  So we will

 5     review it and come back and be prepared to proceed one way

 6     or another.

 7                 MR. BRASHER:  Just briefly, if I could address the

 8     timing of our supplement.

 9                 THE COURT:  All right.

10                 MR. BRASHER:  We spoke with Ms. Washington, I

11     think, on September 26th.  And then there was the issue

12     about the second hard drive that was raised in the filing

13     that was more recent.  So we just -- I would have liked to

14     have provided this to the Court and to counsel sooner, but

15     just the timing of when information was made available to us

16     has dictated when we could file it.  So I apologize.

17                 THE COURT:  Dealing with the jail is difficult for

18     both sides.

19                 I'll take a break now and let you all talk about

20     it with Mr. Nichols as well.  And just let my courtroom

21     deputy know when you're ready to proceed.

22                 MR. McBRIDE:  Yes, your Honor.  Thank you.

23                 THE COURT:  Thank you.  We'll stand in recess.

24                 (Thereupon a recess was taken, after which the

25     following proceedings were had:)

1          THE COURT:  We're back on the record.

2          Now we've taken a break for counsel to review the

3     new pleading that came in.  It's 11:03.  The pleadings filed

4     by the Government yesterday were filed at 3:50 p.m. on the

5     record.

6          So let me hear where we are at this point.  I'll

7     ask Mr. McBride to address it.

8          MR. McBRIDE:  Thank you, Judge.  Is it okay that I

9     speak from here?

10          THE COURT:  Why don't you come up if you're going

11     to talk for a while.  It'll be easier to stand and everybody

12     can hear you better.  Thank you.

13          MR. McBRIDE:  Is it okay if I remove this?

14          THE COURT:  Yes, please.  Thank you.

15          MR. McBRIDE:  Thank you, your Honor.

16          So we were prepared to move forward today with

17     regard to the hearing based on the papers that were

18     available up until yesterday.  It's come to our attention --

19     the Court has notified us, and we're thankful for that --

20     that a supplemental motion was filed late last night which

21     calls into question some of the material issues and facts

22     with regard to the discovery and hard drives that are at

23     issue in this case.

24          We need to ask for a continuance.  We don't want a

25     long one here and we certainly don't want to get into a

1     back-and-forth.  But we believe that -- we know for a

2     reasonable degree of certainty that we'll be able to provide

3     the Court information indicating that the hard drive -- the

4     zip drive with attorney-client-privileged work product

5     information does in fact exist.  I think in essence, if I

6     were to sum up the Government's supplemental motion in one

7     sentence, basically it says that there's really no proof

8     that this drive exists, that the thumb drive exists.  And

9     because of that, you know, maybe it shouldn't be considered.

10              We obviously disagree.  We have different ways

11     that we can prove the thumb drive's existence.

12              THE COURT:  There are two different thumb drives?

13              MR. McBRIDE:  Right.

14              THE COURT:  He was in possession, you're saying,

15     of two different thumb drives back on August 29?

16              MR. McBRIDE:  Yes.  So let me -- if the Court will

17     indulge me for a moment, I will explain sort of the progeny

18     of the hard drives.

19              There is a discovery hard drive that I gave

20     Mr. Nichols.  It's a one-terabit [sic] discovery on a black

21     ScanDisk hard drive.  That hard drive has traveled with

22     Mr. Nichols from the D.C. Jail to his new location in

23     Virginia.  He has that.  That has the discovery from the

24     Government on it and it's obviously necessary for him to be

25     able to prepare for his defense.

 1          Additionally, there are two other thumb drives

 2    that have been in existence.

 3          So the way it works is I came onto this case in

 4    August of '21.  Prior to that, Buck Files, who was the

 5    previous attorney, had given Mr. Nichols two thumb drives

 6    for his discovery.  The reason why he needed to give him two

 7    is because -- which he was his attorney for two discovery

 8    dumps.  So one discovery was on one; one discovery was on

 9    the other.  When I -- so he had that.  He had those two

10    drives, a blue thumb drive and a red thumb drive, before I

11    ever came on.

12          When I came on, I said:  Look, these multiple

13    thumb drives don't make any sense.  I'm just going to buy

14    you all a big terabit hard drive and we'll just put your

15    discovery on there and we'll swap it out accordingly,

16    because these little thumb drives are not going to work,

17    given the magnitude of the discovery in this case.

18          So what we did with those other two hard drives is

19    we essentially converted them into attorney-client work

20    product, where we were able to put his -- my thoughts, his

21    thoughts on there and work on the case with those thumb

22    drives.

23          I have in my possession the red thumb drive.  The

24    blue thumb drive is what's unaccounted for.  So we're not --

25    we don't have all the information that is on the blue thumb

1    drive, but we have most of it on the red thumb drive in my

2    possession.

3              Our concern is that -- I know what's on that thumb

4    drive.  And my concern, now that it's unaccounted for, who's

5    got it?

6              At the last status hearing that we had -- or

7    hearing that we had, representations were made that I could

8    go down to D.C. Jail and pick up whatever was available.  So

9    I went down to D.C. Jail.  I said:  Hey, I'm here to pick up

10   Mr. Nichols's thumb drive, his personal belongings and

11   effects, his legal papers and his books, his personal

12   correspondence.

13             Sorry, Mr. McBride.  We don't have it.

14             I said:  Well, you know, what do you mean you

15   don't have it?  This has been at issue in the court.

16   General counsel knows about it.  You know, the jail's been

17   on notice that this stuff is material.  Please don't tell me

18   it's disappeared into the wind.

19             No.  Let me go check on it.

20             I spoke to an officer named Officer King, a very

21   nice gentleman.  He went, came back.  He said:  Look, at

22   some point the warden came down, scooped up all his stuff,

23   and I don't have an answer as to where it's gone.

24             I said:  Okay.  I'll leave my number.  I'll follow

25   up with you.  Please follow up with me at a reasonable time.

1   I'll come and get it.

2             But no followup.  It appears to be gone.

3             So that is cause for concern for us because not

4   only now are the thumb drives at issue; Mr. Ryan Nichols's

5   legal papers, other strategies and, you know -- I've met

6   with Mr. Nichols at the D.C. Jail.  I've sure we can pull

7   the visitor logs, but I've been there probably 20 or 30

8   times.  And there's a wealth of papers that have gone back

9   and forth between Mr. Nichols and I which are relevant to

10  all different types of his trials, especially the strategy

11  and theories of our defense, which are also now gone.

12            And we have to, you know, ask ourselves why.  I'll

13  make those arguments at the next adjournment.

14            For the time being, I think that it is best for me

15  to go back and to secure proof of their existence as much as

16  I can and to also make an oral Rule 16 discovery request

17  here on the record to the Government -- I will, of course,

18  provide one in writing -- asking for the evidence logs, the

19  property logs, indicating that Mr. Nichols did in fact --

20  was in possession of three drives while at D.C. Jail.  I

21  know that he signed for them with general counsel at some

22  point.  The jail was aware of their existence.

23            And it's not only Mr. Nichols who had these thumb

24  drives.  All the other guys have been using their drum

25  drives for attorney-client stuff as well.  It's not like

1    this is just him.

2             THE COURT:  Right.

3             MR. McBRIDE:  This is the culture that was there.

4    When the jail would come in and say, "Okay.  Your time is up

5    for access to the computer," they would remove the discovery

6    hard drives that didn't have the attorney-client-privileged

7    stuff for everyone.  So it was an indication culturally

8    that:  We understand.  We recognize you have your stuff on

9    your hard drives.  That's attorney stuff.  We're not going

10   to touch that.  But we are going to take the discovery back,

11   because that's the policy.

12             I don't know if that's written in the document or

13   no.  I'll look at the papers and find it.  But that is the

14   accepted way things have been done at D.C. Jail for the past

15   year.  I understand that they recently revised the policy

16   before Mr. Nichols -- or contemporaneously with

17   Mr. Nichols's departure.  And, you know, that's sort of a --

18             THE COURT:  All right.  I appreciate your

19   explanation about that there is another thumb drive that

20   hasn't been recovered.  I'm not sure when exactly it

21   disappeared per your explanation.  You can provide that,

22   whether it's August 29, September 5 or sometime earlier.

23             MR. McBRIDE:  I can, with the Court's permission,

24   of course.  So on the August -- it was gone -- it's been

25   gone permanently since the 5th of September.  Mr. Nichols

1    was put in administrative segregation with other people

2    because there was an incident that happened at the jail.  He

3    was subsequently moved after that point.

4              THE COURT:  But you're saying he had it in his

5    possession on the 5th in his cell?

6              MR. McBRIDE:  He had it on the 5th in his cell,

7    yes.

8              THE COURT:  So it wasn't taken on the 29th.  A

9    different thumb drive was taken on the 29th that was

10   returned to him?

11             MR. McBRIDE:  The discovery hard drive was taken

12   on the 29th and returned to him.  That is correct.

13             THE COURT:  And the blue one then was not taken

14   from him.  Apparently, they didn't see it in the cell or

15   something?

16             MR. McBRIDE:  The blue one was in his cell with

17   his personal effects, you know, in between whatever he had

18   there.

19             THE COURT:  The day it disappeared, then, was

20   September 5th?

21             MR. McBRIDE:  Yes.  That's correct.

22             And I actually -- you know, so of course when this

23   happened, I asked Mr. Nichols to make a record of it.  I can

24   provide that at a later date.  I have a record of this stuff

25   happening.

1          THE COURT:  So when can we get this back on to get

2     this done, the emergency motion?  I'd like to get it heard

3     and resolved.  Mr. Brasher flew up from Texas, so we need to

4     see when we can get it back on the calendar.

5          MR. McBRIDE:  Sure.  I can be here at whatever

6     time we needed.  I probably -- I need to make a request for

7     documentation.  I will make that request in writing today to

8     the Government.  I think probably we need to give them

9     whatever time the Court deems appropriate to respond, and

10    then we come back at the soonest possible time.  I can make

11    myself available at the earliest possible time that makes

12    sense to your Honor.

13         THE COURT:  Well, I think probably you should

14    confer with Mr. Brasher and with Ms. Rocha because they're

15    going to have to go to the D.C. Jail and respond to your

16    request and find out what else -- if there's any other

17    materials available or not, interview witnesses out there.

18    You may have to go there and interview people.

19         Let me have you all talk and then submit a couple

20    of different dates.  Andrea can look at our calendar with

21    you and see when we can do it again.  I'll make myself

22    available.  I'm going to be gone -- I'm not going to be

23    gone.  I'm going to be here until December 1.  I have two

24    days I'll be gone.  Otherwise, I'm here.  So I'm here

25    October, November without a break.  So I can do it sometime

1    in that timeframe that's good for you all when you're ready

2    to go forward again.

3              MR. McBRIDE:  Sure.

4              THE COURT:  I don't know if you want to file

5    something explaining this to the Court before you come in,

6    before you come back, so I know what the issues are.

7              MR. McBRIDE:  Okay.

8              THE COURT:  I'll let you work out your schedule

9    right now with them here in the courtroom.  And just tell --

10   tell Andrea here about the schedule and she'll clear it on

11   my calendar and see when we're available and I'll do it at

12   your convenience in the next few weeks whenever you're

13   ready.  But you're going to have to file a document request.

14   It takes some time for the Government to respond and then

15   you want to file a supplement.

16             MR. McBRIDE:  Sure.

17             THE COURT:  So plan all that in so we can do it

18   appropriately.

19             MR. McBRIDE:  Yes, your Honor.  I will look to do

20   that in the most expedient timeframe possible.

21             I just do believe it's important for us to give

22   whatever cold, hard proof that we have that these hard

23   drives were in fact in existence.

24             Additionally, I just want to make a brief record

25   about Mr. Nichols's current situation with regard to

1    discovery.  So he does have the hard drive at the jail, but

2    there's no way for him to use it.  He hasn't been able to

3    use it since he's been there.  Not only can he not use it;

4    he also does not have access to evidence.com, which was a

5    reasonable alternative during times where Mr. Nichols didn't

6    have the --

7         THE COURT:  So he's not provided the temporary use

8    of a laptop in the jail at this point?

9         MR. McBRIDE:  No.  No.

10        And lastly, your Honor, we've spoken about this at

11   length since March of this year, about the relativity.com

12   database, which was the -- there's two databases.  Your

13   Honor had agreed with us on a few occasions that Mr. Nichols

14   should be given access to the relativity.com database.  And

15   he was never given access to relativity.com while he was at

16   D.C. Jail and he certainly doesn't have it now.

17        So I just want to be clear that in terms of what

18   appeared to be the three available ways for Mr. Nichols to

19   participate in going through his evidence, number one, the

20   hard drive that he has and, number two, the two available

21   databases.  He's not been able to utilize any of those

22   options since being transferred to Virginia.

23        THE COURT:  All right.  That's a concern, at least

24   as to the materials that he already had on his hard drives.

25   We'll have to see about relativity in his new place.  But he

1      should at least have access to work on his discovery

2      material that you've provided to him.  We'll have to find

3      out what the rules are in this new facility that he's in in

4      Rappahannock Regional Jail.

5                  I did want to ask the Government one question, if

6      I might.

7                  Your affidavit, Mr. Brasher, from the legal

8      instruments examiner, Ms. Washington, I guess it's really

9      actually in your supplement.  It says that it's on Page 2 at

10     the bottom.  According to information provided by the U.S.

11     Marshals Service, Nicholas's USB hard drive was transferred

12     to him at the Central Virginia Regional Jail.  Is that the

13     same as what's been identified otherwise?

14                  MR. BRASHER:  Is that the same hard drive?

15                  THE COURT:  No; the same jail.  The Central

16     Regional Virginia -- it's identified as the Rappahannock

17     Jail.  Is that the same facility?

18                  MR. BRASHER:  I'm not familiar with the

19     terminology.  It's where I understand Mr. Nichols is today,

20     or has been.

21                  THE COURT:  I'm not sure.  I want to make sure we

22     have the right place.  And whatever their rules may be,

23     we'll have to find out as to the ability to review the

24     discovery regardless of any missing --

25                  MR. McBRIDE:  Your Honor, my understanding is that

1    he's at -- "Rappahannock"?

2              THE COURT:  "Rappahannock."

3              MR. McBRIDE:  Thank you.

4              I'm not sure if those are the same two places.

5    But I think we can agree that that's where he's at.

6              THE COURT:  All right.

7              MR. BRASHER:  If I can just be heard briefly, your

8    Honor.

9              THE COURT:  Yes.

10             MR. BRASHER:  I think we will certainly make

11   whatever inquiries the Court directs.  But we're also of the

12   position that as officers of the Court, we've represented

13   now multiple times that the prosecution team has never been

14   exposed to any material that it should not be exposed to.

15             So if there's missing hard drives, I understand

16   why that could be a concerning thing.  But in terms of this

17   case and where we go forward, we'll make the inquiries the

18   Court wants to make.  But I don't think it's any basis for

19   disqualification or release or dismissal.

20             THE COURT:  I understand your position, unless

21   it's been turned over or somehow exposed to the prosecution

22   team or the Justice Department in some way, if someone gave

23   it to the trial counsel here.  I understand you're concerned

24   about that, that that may have been lost as opposed to

25   anybody particularly.  But we'll wait for Mr. McBride to see

1    what he has to say about that.

2         I'm going to ask you to pick a date.  You're going

3    to have to come back.  I appreciate -- look at your calendar

4    and see what will work.

5         MR. BRASHER:  Okay.  Just so I'm clear, the Court

6    would like us to make inquiries as to --

7         THE COURT:  I would like to see if we can get a

8    history of this second drive and what happened to it and the

9    jail's knowledge of the second drive or not that he's had.

10   He said he's had two drives the whole time he's been there,

11   apparently.  He no longer has them.  So that's what we need

12   to determine.

13        MR. BRASHER:  We will do our best to gather the

14   information.  That's all we've done today, was gather

15   information and provide it to Mr. --

16        THE COURT:  It was very helpful, what you got, but

17   we need to pin this down a little bit.  And we'll see with

18   Mr. McBride whatever evidence he can produce.

19        So pick your dates and we'll get back.

20        Give me about two hours on my calendar for this,

21   please.

22        We'll stand in recess.  Thank you.

23        MR. BRASHER:  Thank you, your Honor.

24        (Proceedings concluded.)

25

**CERTIFICATE**

1

2

3            I, LISA EDWARDS, RDR, CRR, do hereby

4    certify that the foregoing constitutes a true and accurate

5    transcript of my stenographic notes, and is a full, true,

6    and complete transcript of the proceedings produced to the

7    best of my ability.

8

9

10            Dated this 12th day of October, 2022.

11

12            /s/ Lisa Edwards, RDR, CRR
              Official Court Reporter
13            United States District Court for the
                District of Columbia
14            333 Constitution Avenue, Northwest
              Washington, D.C. 20001
15            (202) 354-3269

16

17

18

19

20

21

22

23

24

25