**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

United States of America,     ) Criminal Action
                           ) No. 1:21-cr-00117-TFH-1
              Plaintiff,  )
                           ) **Status Conference**
vs.                        ) (via Zoom)
                           )
Ryan Taylor Nichols, et al.,  ) Washington, D.C.
                           ) **September 21, 2022**
            Defendants.  ) Time:  1:30 p.m.
_____

**Transcript of Status Conference** (via Zoom)
**Held Before**
**The Honorable Thomas F. Hogan** (via Zoom)
**United States Senior District Judge**
_____

A P P E A R A N C E S

For the Government:    **Douglas B. Brasher**
(via Zoom)          DEPARTMENT OF JUSTICE
                    UNITED STATES ATTORNEY'S OFFICE
                    Northern District of Texas
                    1100 Commerce Street, Third Floor
                    Dallas, Texas 75242

                    **Sarah Wilson Rocha**
                    DEPARTMENT OF JUSTICE
                    219 South Dearborn Street, 5th Floor
                    Chicago, Illinois 60604

For the Defendant Ryan Taylor Nichols:
(via Zoom)          **Joseph D. McBride**
                    THE MCBRIDE LAW FIRM, PLLC
                    99 Park Avenue, 25th Floor
                    New York, New York 10016

For the Defendant Alex Kirk Harkrider:
(via Zoom)          **Kira Anne West**
                    LAW OFFICE OF KIRA WEST
                    712 H Street, Northeast, Unit 509
                    Washington, D.C. 20002
_____

1    Stenographic Official Court Reporter:
     (via Zoom)                    Nancy J. Meyer
2                                  Registered Diplomate Reporter
                                   Certified Realtime Reporter
3                                  333 Constitution Avenue, Northwest
                                   Washington, D.C. 20001
4                                  202-354-3118

5    Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

6

7    _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      P R O C E E D I N G S

2           (REPORTER'S NOTE:  This hearing was held during the
   COVID-19 pandemic restrictions and is subject to the
3  limitations of technology associated with the use of
   technology, including but not limited to telephone and video
4  signal interference, static, signal interruptions, and other
   restrictions and limitations associated with remote court
5  reporting via telephone, speakerphone, and/or
   videoconferencing.)

6

7           THE COURTROOM DEPUTY:  This is Criminal Matter

8  21-117, United States of America v. Ryan Taylor Nichols, as

9  Defendant 1.

10          Counsel, please identify yourselves for the record,

11  beginning with the government.

12          MS. ROCHA:  Good afternoon, Your Honor.  Sarah Rocha

13  for the United States, and I'm joined by Doug Brasher.

14          THE COURT:  All right.  Thank you.

15          MS. WEST:  Good afternoon, Your Honor.  Kira Anne

16  West for Mr. Alex Harkrider, who I know is with us.  I don't

17  see him, but I see his little block there.  I know yesterday he

18  had a hard time -- there he is.

19          THE COURT:  He made it.  Thank you.

20          DEFENDANT HARKRIDER:  Sorry about that.

21          MS. WEST:  Again, Your Honor, I have Ms. Cubbage with

22  me.

23          THE COURT:  All right.  Thank you.

24          MR. MCBRIDE:  Good afternoon, Your Honor.  Joseph

25  McBride on behalf of Mr. Nichols.

1          THE COURT:  Thank you, Mr. McBride.

2          And, Mr. Nichols, the way they have the camera set up,

3    you're pretty far away.  Can you see and hear us all right?

4          DEFENDANT NICHOLS:  Yes, sir.  I can, Your Honor.

5          THE COURT:  All right.  Thank you.  I appreciate the

6    ability to get on today.  I called this emergency hearing on

7    your behalf because of the change in circumstances.  We have

8    had pending now for a while the extensive habeas motion for

9    immediate pretrial relief and emergency hearing.

10          THE COURT REPORTER:  Judge, I'm sorry.  Can we ask

11    Mr. Nichols to mute until he needs to speak.  I'm getting an

12    echo and static.

13          THE COURT:  All right.  Certainly.

14          Mr. Nichols, is there a way you can mute that on the

15    computer?

16          THE COURTROOM DEPUTY:  Your Honor, I have muted him,

17    but they will have to unmute him when you do need him to speak.

18          THE COURT:  Okay.  It should be muted okay now,

19    Mr. Nichols.  If it's a problem, you need to talk again, we'll

20    get you back on for the court reporter.

21          But I was saying the document was filed August 30th, an

22    extensive document, attached with some couple hundred

23    paragraphs of the concerns that occurred at the D.C.

24    correctional center.  And then the government's opposition has

25    been timely filed on the 15th.  And I told Mr. McBride I wanted

1    to get that and then see if he had a reply, to set this in for

2    a hearing.  I received a supplemental, actually, on

3    September 8th from Mr. McBride.  I asked if the situation

4    occurred at the -- problem with the jail authorities that had

5    resulted -- which the Court was not aware of until I was told

6    about it; that Mr. Nichols has been transferred to another

7    facility.

8         So, Mr. McBride, a couple things I wanted to ask you,

9    and then your -- if you have any concerns.  First was you had a

10   reply due that's -- that's due in a few days, and I really

11   wanted to see if you're going to address the change of

12   circumstances, because I think it may even moot or change the

13   original approach in the habeas petition.  And secondly, if you

14   needed more time to do that because the circumstances have

15   changed beyond your control.

16        So I just want to see where we are on that and --

17   setting a hearing date for you at some time in the near future

18   once we get things settled in.

19            MR. MCBRIDE:  Sure.  Thank you, Your Honor.

20        With regard to -- to the habeas motion and -- and the

21   outstanding emergency bail application as well, under the

22   Bail Reform Act, that, sort of, you know, talks about similar

23   circumstances; there's certainly a point of intersection

24   between the two.  We -- we want to -- we need to argue both of

25   these motions in the totality.

1          What has transpired at the D.C. jail with regard to --

2     to Mr. Nichols is -- is abominable.  We have a situation where

3     we have named particular guards, particular long-time offenders

4     from that facility, in our habeas petition.  After the petition

5     was given to the jail, those specific members of that staff

6     retaliated against Mr. Nichols.  They retaliated against the

7     members in the pod that he was in.  People were maced.  People

8     were transferred.  Mr. Nichols was put in solitary confinement,

9     stripped of his privileges for reasons that, once again, are

10    completely unjustifiable.

11         The last time the jail did this, he ended up on suicide

12    watch.  Moreover, as laid out in our papers, the jail has

13    routinely confiscated his discovery and, in doing so, has

14    disrupted the process, our ability, to be able to prepare for

15    trial.

16         But what's even worse than that, Judge, is the fact that

17    Mr. Nichols has been in possession of a -- of a zip drive

18    that -- that contains trial prep, trial strategy, secret

19    communications --

20         THE COURT:  I don't mean to interrupt you,

21    Mr. McBride, but the government's response, I thought, covered

22    several of those areas, and I was looking for -- if you wanted

23    to file a reply, answering the government's response, because

24    they did discuss those areas.  It may be if you have a

25    continuing concern about his present confinement, that may be

1    separate.  As to discovery, it -- the government's

2    representations are inaccurate, you could attack that.  They

3    said it was taken as part of their normal practice and no one

4    has looked at them and no one will use them until he gets those

5    back.  He actually got them back in 90 minutes.  But I don't

6    know because I haven't seen your response as to all the

7    government's allegations.

8            MR. MCBRIDE:  Your Honor, we are working on -- on the

9    response.  We anticipate having it to you, I believe, later on

10   today.

11           With -- with regard to the issue being moot, it's

12   certainly not moot.  Mr. Nichols has no access to his discovery

13   where he's at.  None of -- his -- his discovery did not travel

14   with him.  The drive that we are talking about that has secret

15   attorney-client-privileged communications on it was taken for

16   90 minutes at that first instance.  It takes nine seconds to

17   copy what's in that drive -- what's in that drive.

18           With all due respect to the government, their word

19   is meaningless when it comes to me defending my client.

20   It's meaningless because of the way that they had treated him

21   and their constant disregard for his rights as a pretrial

22   detainee.

23           Judge, that drive did not even make the trip with him to

24   Virginia.  It's gone.  It's in the wind.  We -- I mean, our

25   entire trial prep has disappeared.  I -- the -- the tactical

1    advantage that this gives to the other side, never mind the

2    constitutional violations that are -- are at issue here are

3    unconscionable.

4           You know, I have another pending habeas in Christopher

5    Quaglin's case.  Christopher Quaglin was moved six times.  Each

6    time we called out a prison for what was going on with him, he

7    was moved around like a chess piece.  Simply moving him around

8    to thwart the -- the judicial process is not a fix.

9           The jail needs to be held accountable.  We need to --

10          THE COURT:  I understand.  I'm familiar with his

11   case.  It's before a different judge.

12          But I -- I still think you're going to have to file a

13   reply that addresses these, the response to the government, and

14   the change of circumstances.  Habeas goes to where he is being

15   confined at the time he filed the habeas.  He's no longer

16   there.  That changes, somewhat, the position of the habeas.

17          It doesn't affect your challenge that the discovery has

18   disappeared and he needs that for trial and that your

19   allegations -- they're a very, very serious one, whether the

20   government has looked at your attorney-client privilege.  If

21   that's true, that would be an extremely serious problem, and

22   then we would take appropriate action.  The government's

23   represented no one has seen it, but there may have to be

24   affidavits to answer all these questions, and you may need some

25   affidavits to witnesses as well, if you wish to go ahead with

1      this.

2          But I think you need to file a response that addresses

3      the change of circumstances and the government's position in

4      their response where they indicated what happened and why, from

5      their point of view, including the discovery.  And I am not

6      aware of what this new facility is -- central Virginia,

7      wherever it is.  I don't even know where it is -- what

8      provisions they have and how they're equipped to handle these

9      matters.  And I think that's a separate problem.  It's a new

10     problem; that the access to discovery at the D.C. jail is

11     fairly extensive.  What these other facilities have, I don't

12     know.  And that's something we'll have to hear about.

13         But I really want to get a response, answer to the

14     government's opposition, that -- that treats what is moot and

15     what isn't, that treats whatever has recently happened.  And if

16     there are affidavits of witnesses, that you need, to list

17     those, and we can see where we go in from setting up the

18     hearing.  And I did that now because I don't want this to drag

19     on and get a response to you that's not responsive to

20     everything and then we have to have some more pleadings.  I'm

21     trying to get it all put together for Mr. Nichols' situation.

22         Let me ask the government about this for a minute.

23     Mr. McBride has made some very serious allegations.  Your

24     response indicated no one looked at the discovery and it was

25     returned, but then he said it disappeared again, and he's not

1    received it back, and he doesn't trust the government hasn't

2    been looking at it and reviewing it.

3            I don't know if you've protected the thumb drive or not.

4    I don't know of any fast ways on how it's protected or not.

5            But, Mr. Brasher or Ms. Rocha, what about the

6    allegations of trying to get this thing resolved, this motion?

7            MS. ROCHA:  Your Honor, the government certainly --

8    certainly, the prosecution team has not seen these materials.

9    We refer to the factual -- you know, the information that we

10   provided on -- in our response.  The first time -- we

11   understand that even in Mr. McBride's petition, it acknowledges

12   that those materials were returned.  If there's some issue

13   about -- I don't know if this is something specific to

14   something he had when he was in the D.C. facility that he may

15   not have in the Virginia facility or if it's some kind of

16   return of property.

17           You know, we haven't seen anything.  We're happy to --

18   to look if there are particular things that we can assist with,

19   but the prosecution certainly has not reviewed any of his

20   materials.

21           THE COURT:  Well, not only the prosecution, but any

22   member of the -- the Justice Department, the prosecutors.  But

23   is there any indication that -- and I don't know if it's a

24   protected -- a protected thumb drive.  I think that's what he's

25   referring to.  That anyone at the jail looked at it.  I don't

1    know.

2         I think we're going to have to do some review of this

3    and have some more accurate information brought to the Court as

4    to where the thumb drive is and what's happened to it and what

5    the access was, available or not.

6         Mr. McBride, does that have a password access?

7         MR. MCBRIDE:  No, not -- I believe it does -- it does

8    not, Judge.  Mr. Nichols is very limited as to what he can do

9    there with the drive at the -- at the jail.  We are at a

10   disadvantage in terms of his ability to access it when he

11   could.  So there was no way for us --

12        THE COURT:  Let me -- you're talking about a thumb

13   drive, as I understand it.

14        MR. MCBRIDE:  Yes.

15        THE COURT:  And you didn't put on a password so when

16   he plugged it into the computer there, he would have to enter a

17   password to see it?  So any prisoner that picked it up could

18   look at it?

19        MR. MCBRIDE:  No, no, Judge.  It's -- it's a thumb

20   drive that he keeps on his person.

21        THE COURT:  All right.  Well --

22        MR. MCBRIDE:  That he keeps on his person.  He plugs

23   it in --

24        (Indiscernible simultaneous cross-talk.)

25        MR. MCBRIDE:  He plugs it out.

1          THE COURT:  -- effective.

2          MS. ROCHA:  Your Honor -- Your Honor, if I may.  My

3     understanding is that there is -- I want to clarify from

4     before.  It's our understanding that the drive -- this is in

5     relation to the September 5th issue and his transfer; that the

6     drive is still at the D.C. jail and Mr. McBride can pick it up.

7          THE COURT:  All right.

8          MR. MCBRIDE:  Judge, I -- I just -- I have a

9     question.  We have an outstanding motion before the Court

10    that's not the habeas petition.  It -- it is the -- the -- the

11    bail motion; the -- the motion for release as related to the

12    Bail Reform Act.  Is there a way that we can get a date for a

13    hearing?

14         THE COURT:  You don't think that that's intimately

15    involved with your other matters here?

16         MR. MCBRIDE:  Sure, there are points of intersection

17    between the two, Your Honor, but this --

18         THE COURT:  One of the first -- the supplement is all

19    about the problems at the jail, the D.C. jail; your supplement

20    you wrote.  And then the original one -- I'll pull it out

21    now -- to the emergency petition.

22         MR. MCBRIDE:  Your Honor, respectfully, I also see

23    that Mr. Nichols has -- has his hand up, and he -- he may want

24    to say something.

25         THE COURT:  All right.  Well, we'll have to ask the

1     courtroom deputy if she can somehow tell the jail to help him

2     turn on his machine for a minute.

3              THE COURTROOM DEPUTY:  Your Honor, I just sent them a

4     message asking to unmute.

5              THE COURT:  All right.  Thank you.

6              THE COURTROOM DEPUTY:  He's unmuted now, Your Honor.

7              DEFENDANT NICHOLS:  Thank you.  Your Honor, may I

8     address the Court, please?

9              THE COURT:  Yeah.  If it's relevant to what we're

10    talking about, you certainly may.

11             DEFENDANT NICHOLS:  Yes, sir, it is relevant to what

12    we're talking about.

13        So good afternoon, Your Honor.  Almost a month ago, we

14    put a motion in regarding Sixth Amendment discovery violations.

15    D.C. DOC illegally and discriminately confiscated my hard drive

16    for close to an hour before returning it, giving plenty of time

17    for them to transfer all of my attorney-client-privileged work

18    to another device.

19        Two weeks ago, I was moved to the general population

20    side of the jail without the U.S. marshals' consent and placed

21    in punitive solitary confinement.  During the move, my hard

22    drive was successfully stolen by D.C. DOC and never returned.

23    I asked for it to be returned all week and was ignored.  That

24    hard drive contained my last 20-plus months of

25    attorney-client-privileged notes, trial strategy, video files,

1  habeas corpus grievance information, and much more.

2       Last Monday I was moved to a new jail, which I'm in now.

3  Now I have zero access to evidence.com, zero access to my

4  discovery hard drives, zero access to the law library, zero

5  access to call my attorney on a privileged line as desired, and

6  zero way to work on my case in any meaningful way.  For months,

7  Your Honor, I've brought to your attention the discovery issues

8  I've had.  Instead of the issues improving, they've only gotten

9  worse.

10       I may no longer be in a jail that systematically abuses,

11  mistreats, and tortures myself and other inmates, but I'm now

12  in a jail where I cannot prepare for my trial in a meaningful

13  way.  This isn't progress but, rather, a step backwards.

14  What's happening to me is not only unfair, it's

15  unconstitutional.  I have a right to equal and fair protection

16  under the law, but so far that standard hasn't been applied or

17  even been met.

18       Your Honor, I'm respectfully requesting to be placed on

19  home confinement pending trial, even under the strictest

20  conditions, so I can prepare for my trial and defend myself in

21  court fairly.

22       Thank you, Your Honor.

23       THE COURT:  All right.  I appreciate your concerns.

24  As I've always mentioned, discovery is important to you.  I

25  have no facts before me that I know where the thumb drive has

1    been, except the government's represented now they think it's

2    at the D.C. jail, and your continuing complaints about your

3    ability to review it.  Obviously, you don't have it, you can't

4    review it.  And I assume at the new jail you'll have the

5    ability to do that when it gets there.  But I understand your

6    concerns about wanting to get ready for your trial.

7         I've been trying to get to trial.  We've had three

8    different trial dates that counsel has continued.  And it makes

9    it very difficult.

10         MS. WEST:  Your Honor, Ms. West here.

11         I don't have a dog in this fight, really, but I have to

12   say, in my experience at the D.C. jail, I've had clients'

13   personal property, such as a hard drive or thumb drive,

14   disappear into a black hole of netherus [sic].  I've tried to

15   investigate it, find out where it is.  Nobody ever gets back to

16   me.  So just for what it's worth.

17         THE COURT:  There's a new counsel at the jail and a

18   new assistant trying to try to get things done, which I hope

19   will be better.  The Court actually has a working committee

20   trying to resolve problems with the jail, with the judges, that

21   we've been working with.

22         But right now we need to get facts about where it is and

23   how we can get it to Mr. Nichols if -- and secondly, we'll

24   probably have to have the government get an affidavit from some

25   people that it's not been looked at or used in any way.  And

1   then Mr. McBride can answer that, as best he wants, and

2   Mr. Nichols can come and testify, if he wants, about it.

3          But I don't have any other way to ensure the validity of

4   the thumb drive not having been reviewed and tampered with in

5   any way.  But I think we'll have to establish that.  And

6   Mr. McBride's attack is based on the supposition -- but no

7   evidence -- that they did download and look at it.  I don't

8   know that.  And so we'll have to see where that goes.

9          Mr. Nichols' concern, now he's been moved, is because of

10  his fear that, now, he can't get discovery back and look at it.

11  I don't know that yet either.

12         Additionally, the fact he's moved, I don't think can --

13  he can seek immediately without some hearings as to

14  retaliation.  There were several individuals moved after some

15  kind of confrontation with the guards.  And, again, I don't

16  know the facts of that.  There have been different allegations

17  of each side as to what happened, and the jail, obviously, has

18  a right to execute its disciplinary functions as it wishes, as

19  long as they're appropriate.  But I don't know anything.

20         And I think if Mr. McBride wants to explore into that,

21  we're going to have to set up a minitrial and have to have

22  witnesses called -- and he'll have to have witnesses called to

23  establish their point of view.  And I have to make a factual

24  determination.  But I think the first thing we need to do is

25  determine what happened to the thumb drive and -- and

1    Mr. Nichols get it and he review it as appropriate under the

2    regulations of his new jail.

3          And I don't think I can get those answers in the next

4    couple of days.  So this emergency relief to let him out, based

5    upon the suppositions of all these things have happened, except

6    that he was transferred and he says he was in solitary

7    confinement, which the government, I believe, denied in its

8    motion that he was mistreated at the old jail.  I think when he

9    gets to the new jail, things will be a little bit different.

10   So I -- I don't see the basis right now for the emergency

11   relief to be granted on -- until I find out exactly what's

12   going on.

13         So I'll set a hearing up in the next couple of weeks,

14   and I'll do it right now.  But I think Mr. McBride's got the

15   burden, since it's his motion, to produce some type of evidence

16   as -- supporting that the disc -- the thumb drive has been

17   examined by the government and used against -- and to be used

18   against him at trial, apparently.  At least that's what

19   Mr. McBride alleged what happened.  I don't know of any

20   evidence that -- the government says they think it has not

21   been, but I think the government has an obligation as well to

22   ensure what happened to the thumb drive and where it can get it

23   back to the possession of Mr. Nichols.

24         MR. MCBRIDE:  Your Honor, may I be heard for one

25   moment, please?

 1          THE COURT:  All right.  And then we'll finish up.

 2          MR. MCBRIDE:  Okay.  Thank you, Your Honor.

 3      I just want to make sure that we don't reduce the

 4  totality of our -- our habeas petition and our other motions to

 5  whether or not they looked at the drive.  If they did that,

 6  it's certainly an egregious violation on their part.  But we

 7  believe that we have substantial grounds to argue for his

 8  release.  We -- it's no -- Ryan Nichols has never had a

 9  disciplinary incident under which he's been convicted at that

10  jail.

11      After we filed a habeas -- and we named

12  Lieutenant Lancaster -- there's a massive incident that -- that

13  results in his subsequent -- in his subsequent transfer.  Now

14  we have all these jurisdictional questions about the habeas

15  petition.  Is it moot?  Is it not moot?

16      I mean, the Supreme Court has carved out an exception

17  for this kind of thing where -- wherein a case is capable of

18  repetition, yet evading review.  This is the kind of thing

19  where they can repeat over and over and over again unless

20  Your Honor holds their feet to the fire and -- and -- and holds

21  them accountable in court.  I mean, they can theoretically

22  transfer him once a week until -- until trial happens.

23          THE COURT:  I think.  It's --

24          (Indiscernible simultaneous cross-talk.)

25          MR. MCBRIDE:  -- incredibly.

1          THE COURT:  There was a concern.  You mentioned a

2     case, and Judge Mehta has a case of a January 6th defendant who

3     could not get his discovery done because he had been

4     transferred five or six times.

5          And there is a provision in the Bail Reform Act for a

6     temporary release to get ready for trial, and then you have to

7     go back in the jail when you've gotten your work done.  He used

8     that in that case -- in an opinion he put out -- that it was

9     very rarely done and it was not to be used as a typical example

10    by other January 6th defendants -- because he was convinced

11    after the multiple transfers to this individual that he had not

12    been able to get ready for trial, and he had a trial set.

13         We need to get a trial set.  We need to then see how he

14    can complete his discovery review.  If it turns out I become

15    convinced he can't do it adequately, I can take advantage of

16    that provision.  If I think he can do his discovery, then he

17    stays where he is.  I have no concern.  I don't know where that

18    is at this point.

19         But secondly, your concern, seems to me, was that

20    your habeas was his conditions under -- which he was serving

21    under Lieutenant Lancaster and the mistreatment he was getting

22    at that jail, which is no longer possible because he's not

23    there.

24         It doesn't answer your discovery issues.  It doesn't

25    answer if you think that there should be some constitutional

1    determination as -- under the Eighth Amendment, mistreatment at

2    the jail, which requires a trial, which requires a separate

3    cause of action trial.

4         So what I'm going to do is set a hearing up now in a

5    couple of weeks where you've had a chance to respond to the

6    government's opposition, which they've laid out, and any

7    additional things they filed regarding where the thumb drive is

8    and where it went and where -- what activities are available

9    for Mr. Nichols to look, and do his discovery where he is now.

10   And we'll take those up as best we can at that time.

11        I do think that -- that there are some issues with the

12   habeas, since he's been moved, certain areas that you have to

13   address in the response.

14        So let's look at the calendar and try to put this

15   together in a sensible fashion so we can do it; try to move

16   this case forward so we can get to trial.  That's been my

17   problem all along.

18        And your opposition -- I don't know.  Your response to

19   the government's opposition is due in a few days.  You said

20   you'll be ready for that.  That's fine.

21        Look at the week of October 3rd.  Let's see our schedule

22   for coming back.

23             MR. MCBRIDE:  Judge, with regard to the motion

24   schedule, if -- if we're, sort of, increasing the scope of the

25   schedule where I need to respond to the move now, we would ask

1    for more time on it.  That way we can incorporate the Court's

2    considerations into that motion.

3                THE COURT:  Well, that's fine.  What would you like?

4                MR. MCBRIDE:  Just -- today is -- if we can get it to

5    you by -- by the end of next week, the 29th, is -- is fine.

6                THE COURT:  The 30th is Friday.  That's fine.

7                MR. MCBRIDE:  The 30th.  The 30th would be great.

8    Thank you.

9                THE COURT:  All right.  Let's look to the 6th or 7th

10   of October.  My schedule is clear on the 7th.  On the 6th I

11   have hearings at 11:00 and 2:00, which will take a while.  On

12   the 7th after -- I've got something early.  So after,

13   apparently, 11 o'clock on the 7th, I could hold a hearing on

14   the emergency petition for release and parts of the habeas that

15   I think are still viable.

16               MR. MCBRIDE:  The 7th works for us, Your Honor.

17               THE COURT:  How about Ms. Rocha?

18               MS. ROCHA:  That's fine for the government,

19   Your Honor.

20               THE COURT:  So if the government is going to file a

21   surreply, they can do so.  But I have to have it in time for

22   the 7th.

23               All right.  So we'll do it at 11:00 a.m. on October 7th.

24               Mr. Nichols, we're going to do a hearing in your various

25   petitions at this time that are pending, the emergency

1    release -- release from jail for discovery reasons and for --

2    originally based upon your mistreatment at that old jail.  And

3    then, secondly, on the areas of the habeas, we can see.

4    There's some areas that Mr. McBride has raised that will

5    require witnesses and, I think, supplemental, additional

6    briefing as to what we're really looking at.

7         But we'll do that on the 7th at 11:00 a.m., and we'll

8    proceed.  If you want to appear in person, Mr. Nichols, you

9    have to get here, and the marshals would have to bring you

10   down.  And that's -- I assume it's a substantial drive.  I

11   don't know where this prison is.  I think it's in

12   western Virginia, but I don't know how far.  But it might be

13   central Virginia.  It may be a two- or three-hour drive.

14        MS. WEST:  Where he's at?

15        MR. MCBRIDE:  Well, just -- Mr. Nichols -- Ryan, you

16   can correct me if I'm wrong, but I believe the understanding is

17   that Mr. Nichols would prefer to do it virtually because each

18   time he travels back and forth from the jail, he's got to be

19   quarantined for 14 days at a time.  And that's, obviously, a

20   major inconvenience.  So if we need --

21        THE COURT:  That's not a problem.  I think -- I think

22   we can do it by Zoom.  Although I think that it would be better

23   if it were in person.  But we can do it by Zoom if Mr. Nichols

24   is -- prefers that.

25        MR. MCBRIDE:  Your Honor, may I inquire with

1    Mr. Nichols, just while we're all here are, just as to his

2    position if he wants to do it in person or not?

3              THE COURT:  Certainly.

4              MR. MCBRIDE:  Ryan, do you have a position on what

5    you'd like to do?

6              DEFENDANT NICHOLS:  We can do it in person.  That's

7    fine.

8              MR. MCBRIDE:  Okay.  In person it is.

9              THE COURT:  Okay.  I appreciate it, Mr. Nichols.  You

10   don't have to, if you don't want to.  There's a burden of

11   bringing you for the marshals.  But if that's what you want,

12   we'll do it at 11:00 a.m. on the 7th of October.

13             MS. ROCHA:  Your Honor -- Your Honor, if I may, I

14   think we raised this at the last hearing.  So apologies for

15   raising it again.

16        But I do just want to be very clear.  From the

17   government's perspective, I understand D.C. was served with a

18   habeas petition, but the United States has still not been

19   served the last time I checked.  So I just want that to be

20   clear again.

21             MR. MCBRIDE:  That's -- that's inaccurate.  We filed

22   an affidavit of service, which isn't required.  Service was

23   effectuated.  We tried multiple times.  I think we actually

24   effectuated service twice, some two weeks before the last --

25   the last status conference -- or hearing that we had.  We're

1    actually prepared to move for default should it move into

2    another week or two from now.

3              THE COURT:  There's a report of signature for service

4    on the docket that we can look at.  It is a part of the

5    certified mail-type return.  Although I'll note the -- it's not

6    indicated that anyone signed for it.  But it does have the

7    address to be used for the government.  You might look at the

8    docket, and you can see about that.

9              MS. ROCHA:  Your Honor, my -- this is for my -- my

10   colleagues and other parts of the office.  But my understanding

11   is that the rules require service on the U.S. Attorney's

12   Office, and that that has not been done.  But -- but, again,

13   that would be, you know, for -- for some of my colleagues to

14   handle, but I'm happy to -- to follow up with them.  But I want

15   to note that, again, in relation to the habeas petition.

16             THE COURT:  All right.  All right.  We'll be back on

17   the 11th, and -- I'm sorry -- on the 7th at 11:00 a.m., and

18   Mr. Nichols has elected to come in in person.  And we'll be

19   here at that time.  I hope the parties can take a look to kind

20   of resolve some of these issues and get down to what we really

21   have to decide in the case.

22             I can see, unfortunately, in my point of view, that

23   there's going to be a long delay getting to trial if we're

24   going to have to go through some kind of ancillary trials and

25   call witnesses and various sides to try to establish what

1    really happened either at the local jail or with the

2    thumb drive that the petitioner says the government stole and

3    read.  I don't have any evidence that happened.  It was

4    definitely taken away from him, but no evidence that anybody

5    read it.  And there will have to be some -- the government has

6    denied that, then it puts the burden on the plaintiff to show

7    it was potentially opened and read by someone.

8            MR. MCBRIDE:  Your Honor, just lastly, we -- we

9    agree -- we share your concerns about getting to trial, and

10   we -- we want Mr. Nichols to be able to go to trial having made

11   it through his discovery at least one time in its totality.

12   That's why we're asking for him to be released pending the

13   trial so we can get him ready and get back to trial.  Whatever

14   happens at trial, happens at trial.  We just want to make sure

15   that he's prepared.

16           THE COURT:  Let me ask you on the trial dates.  We

17   continued them, the most recent one, because of your health

18   situation.  Where are you on your health situation, without

19   going into any particulars?

20           MR. MCBRIDE:  Coming -- I'm coming along, Your Honor.

21   I -- I just left the hyperbaric chamber right before I was

22   here.  I came straight here, straight back home, and here I am.

23   So I'm -- so I'm on schedule.

24           THE COURT:  And schedule, how about a trial in

25   January?

1          MR. MCBRIDE:  Well, no, I don't -- trial in January,

2     we're not on schedule for because I have other trials.  I have

3     a trial in December.  I have a trial in February.  January

4     doesn't work.  But my understanding is that we're on track for

5     March.  So I'm on -- I'm on schedule for March for sure.

6          THE COURT:  I just want a record that establishes

7     that we have tried to get in for trial and we can't.

8          I'm going to extend the time of the speedy trial this

9     time until our next hearing date.  I find the interests of

10    justice require that and outweigh the interests of the

11    defendant and the public in a speedy trial because of the

12    necessity to resolve these disputes that have arisen.  And I've

13    tried to get another trial date sooner than counsel say they're

14    available.

15         All right.  We'll be back then.

16         MS. WEST:  Your Honor, may I be heard?

17         THE COURT:  Ms. West.

18         MS. WEST:  I'm sorry, sir.  Do I have to have my

19    client appear at this hearing on October 7th?

20         THE COURT:  Nope.

21         MS. WEST:  Yes.  Thank you, sir.

22         And my other issue, I wanted the Court to know that I

23    have a felony January 6th trial in December, the first week.  I

24    have a felony January 6th trial before Judge Lamberth on

25    January the 17th.  And I am purposely trying to keep March open

1    because of previous conversations I've had with the Court about

2    a trial date.  But I just wanted the Court to know, as -- as in

3    all of these other cases, I just -- my calendar is starting to

4    fill up with trials, but I have not set anything for March.

5                THE COURT:  All right.  I appreciate that.  Thank

6    you.  And if you aren't going to resolve this, we'll get a

7    March trial, we hope, get it done.

8                All right.  Thank you, Counsel.

9                (Proceedings were concluded at 2:10 p.m.)

1          CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

2

3              I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true, and complete transcript

7     of the proceedings to the best of my ability.

8

9                        Dated this 13th day of October, 2022.

10

11                   /s/ Nancy J. Meyer
                     Nancy J. Meyer
12                   Official Court Reporter
                     Registered Diplomate Reporter
13                   Certified Realtime Reporter
                     333 Constitution Avenue Northwest
14                   Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25