UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Case No. 21-cr-117-1(TFH) |
| | ) | |
| RYAN TAYLOR NICHOLS | ) | |
| *Defendant.* | ) | |

## DEFENDANT NICHOLS' SUPPLEMENT TO DEFENDANT'S MOTION FOR PRETRIAL RELEASE

### BACKGROUND

On August 30, 2022, Defendant Nichols filed an Emergency Motion for Immediate Pre-Trial Release (ECF No. 150, hereinafter, the "Motion") based on actions taken by the DC Jail one day after that the Government was served with Nichols' petition for habeas corpus. The Motion was also based on the confiscation of Nichols' hard drive containing confidential attorney client information, trial strategies, and work product. The Jail held the hard drive for 90 minutes before returning it, long enough to copy its contents, which irreparably compromised Nichols' ability to prepare for trial. Finally, the Motion sought release based on well-established Supreme Court precedent that pretrial detention violates due process when it "become[s] excessively prolonged, and therefore punitive." *United States v. Salerno,* 481 U.S. 739, 747-48, 747 n.4 (1987).[1]

---

[1] Nichols also argued that pre-trial release is warranted based on the allegations of numerous constitutional violations contained in his petition for habeas corpus, but the Government has since strategically frustrated Nichols' ability to petition for habeas corpus by transferring Nichols to a different facility, thereby mooting his habeas action against the DC Jail. Nichols has since withdrawn his petition, and therefore those allegations are no longer before the Court at this time.

1

On September 8, 2022, Nichols filed a Supplement to the Motion (ECF No. 156) based on an incident that occurred on September 5, 2022.  On that day, a senior Jail official manufactured an obvious pretext to suddenly and without warning remove Nichols from his cell and ultimately to transfer him to another facility.  To this day, Nichols has never been charged with a single disciplinary violation, nor has there been a hearing scheduled regarding the incident, and there are multiple eye witnesses and camera footage in the Jail's possession that corroborate Nichols' version of events and show his innocence.  Following the incident - which included several clear violations of Nichols constitutional rights, including, for instance, being deprived of a detox bath or even a shower after coming in contact with chemical spray and being deprived of a mental health visit to treat his diagnosed PTSD – Nichols also learned that while he was removed from his cell, another drive in his possession had mysteriously disappeared.  The disappearance of this second drive further compromised his ability to prepare for his trial.

On September 15, 2022, the Government filed its Opposition to the Motion (ECF No. 161). The government admitted to confiscating Nichols' hard drive on August 29, 2022, and implicitly admitted that it was done unlawfully, as the Jail's attorney advised the Jail to return the drive within minutes of being contacted by Nichols' attorney, *i.e.,* the Jail's attorney realized that it had no legal right to hold his hard drive and rushed to returned it to him to avoid further liability for violating Nichols constitutional rights.[2]  The Government further acknowledges that when the Jail confiscated Nichols' drive it was a clear violation of the Jail's policy at the time, which the Jail immediately changed after the incident.  The Government argued in its Opposition that there was

---

[2] *See also Ali United States v. Ali,* 965 F. Supp. 2d (D.D.C. 2013) *reversed on other grounds by United States v. Ali,* 534 F. App'x 1, 2 (D.C. Cir. 2013), where this Court found that confiscating a thumb drive containing educational materials was a violation of a pre-trial detainee's constitutional rights.

no harm no foul because the drive was returned "less than 90 minutes after it had been taken from defendant," which is more than enough time to copy the contents.

The Government falsely states that it was "his own misconduct that led to him being segregated and being deprived of access to the laptop and thumb drive." There is no evidence supporting or merit to this baseless allegation. As mentioned above, Nichols has never been charged with a disciplinary violation – not for the August 29 incident, not for the September 5 incident, and not for any incident in the nearly two years he has been held as a pretrial detainee. On the contrary, he has an exemplary record, which should weigh heavily in favor of his release, not against it. If the Government wishes to litigate the September 5 incident, Nichols welcomes the opportunity to a hearing where he can bring witnesses and evidence to show that it was the Jail that was at fault. But for the Government to use the incident against Nichols without such an opportunity violates Nichols' right to due process.

On September 30, 2022, Nichols filed a Reply to the Government's Opposition (ECF No. 168). In the Reply, Nichols noted that the Government's Opposition failed to address the mysterious disappearance of Nichols' drive after the September 5 incident. The Reply also argued that the Jail does not have adequate facilities to accommodate Nichols' constitutional right to prepare for trial, and this is grounds for release.

On October 6, 2022, the day before the hearing, the Government filed a Supplement to its Opposition based on an affidavit from Ingrid Washington, an employee in DOC's Litigation Support Unit (ECF No. 169). Regarding the drive taken from Nichols for 90 minutes on August 29, Ms. Washington claims that she "placed [the drive] into a sealed envelope in full view of Mr. Nichols," (ECF No. 169-1 ¶ 5), and that "a short time later, I was instructed to return the drive to

Nichols. I removed the USB drive from the envelope and gave it to a lieutenant, who returned it to Nichols" (ECF No. 169-1 ¶ 6).

Ms. Washington's testimony is provably false. On August 29, 2022, Ms. Washington came into Nichols' cell to confiscate his hard drive, but as Ms. Washington herself testifies, and as the Jail's attorney subsequently confirmed, she was violating Jail policy. Further, though her testimony tries to present her actions as a routine activity, she only came to confiscate Nichols' drive on that day; she admits that confiscation was not the policy in the Jail at that time, and she did not on that day confiscate the drives of any other prisoners, though many others were in possessions of drives at that time. Nichols refused to turn over the drive, so Ms. Washington left and returned with Officer Feliciano. Nichols noticed that Officer Feliciano's body camera was off, so Nichols demanded that he turn it on so that the incident could be recorded. Nichols spoke into the body camera and described the situation and that his rights were being violated. The body camera should show that Feliciano took the drive and Ms. Washington did not put the drive into a sealed envelope, as she testifies in her affidavit. When the drive was returned 90 minutes later, it was returned by an officer that Nichols has never seen before named Officer Saunders. Officer Saunders handed Nichols the drive, but it was not in any envelope, sealed or not.

Even according to her own version of events, Ms. Washington's testimony does not establish a complete chain of custody such that she can adequately provide testimony that nobody had access to the drive, and in fact, she testifies that "I am not aware of any other DOC employee who accessed the contents of Nichols' USB drive" (ECF No. 169-1). Conspicuously, she carefully fails to admit or deny whether she can testify definitively that nobody – DOC employee or otherwise – was able to access the drive while it was in her possession. Her ambiguous testimony

suggests that she was willfully blind while the drive was in her possession, and tacitly allowed access to someone, though she is technically "unaware" if it was accessed.

Moreover, based on her testimony, the Government hopes to convince the Court that Nichols only had one drive and therefore a second drive could not have been stolen from him on September 5, 2022, but evidence shows that there were other drives and Ms. Washington is aware of those other drives. Ms. Washington testifies that the first discovery drive was delivered to her for Nichols in October of 2021, but that is also provable false. As letters from Nichols' previous attorney Buck Files attached as Exhibits A and B demonstrate, Ms. Washington received two additional drives to deliver to Nichols in July of 2021. As Mr. McBride explained to the judge on the record at the hearing on October 7, 2022, there are three drives at issue. Nichols' previous attorney delivered a red and a blue thumb drive to the jail in July of 2021 containing discovery. In October of 2021, McBride delivered a black hard drive with a larger storage capacity – a terabyte - to Nichols. Nichols used that black hard drive to consolidate the contents of the red and blue thumb drives. Thereafter, Nichols used the red and blue thumb drives to store work product notes and litigation strategies. Sometime after October of 2021 but before August 29, 2022, during one of McBride's attorney visits to the DC Jail, Nichols gave McBride the red thumb drive so McBride could review the contents that Nichols had put on the drive, and Nichols retained the blue thumb drive in his possession. Before Nichols gave the red thumb drive to McBride, he showed it to one of the Jail guards and received approval to give the thumb drive to his attorney. The guard was Officer Solwannii, and proof should be available on his body camera footage. Nichols maintained the blue thumb drive and the black terabyte hard drive in his possession until August 29, 2022.

On August 29, 2022, Ms. Washington and Officer Feliciano confiscated the black terabyte hard drive, but they did not notice his blue thumb drive. On September 5, when Nichols was removed from his cell, someone came in and took the blue thumb drive.

The Government has yet to account for the missing blue thumb drive which contains highly confidential attorney-client communications as well as litigation strategies. As discussed in previous filings, the loss of this drive has compromised his ability to prepare for trial. For all the Government or the Court knows, these documents could be released at any time. Moreover, Nichols has been irreparably prejudiced by the loss of his work product that cannot be retrieved. Even if the Government is not involved in theft of his privileged documents, the egregious unconscionable breach of security while in the Government's custody should by itself justify release.

On October 19, 2022, the Government filed a second Supplement to its opposition (ECF No. 172). In the Second Supplement, the Government admits that the United States Marshals are violating Nichols' constitutional rights by detaining him in a facility that has unconstitutional policies. Specifically, the Government admits that "the Rappahonnock Regional Jail does not allow for inmates to review electronic discovery on drives outside of attorney visits." The policies of the Rappahonnock Regional Jail are worse even than the Government admits. On October 28, 2022, the day this motion was filed, counsel for Nichols received a call from Nichols. Nichols told his attorney that a senior jail official at Rappahonnock, Sgt. Foster, told Nichols that he was aware of this Court's order that Nichols was entitled to view his discovery using either evidence.com or relativity.com. Sgt. Foster said that, although the jail is capable of obeying the

Court's order, the jail refuses to do so.[3] The Government's proposed solution to this ongoing violation of Nichols' constitutional rights is for Nichols to request from the Marshals that the Marshals transfer him to a different facility that does not have policies that violate the constitutional rights of pretrial detainees. Assuming Nichols can identify such a facility, and assuming the Marshals agree, the Government says it will not oppose the transfer.

## ARGUMENT

### POINT ONE
### THE MISSING HARD DRIVE JUSTIFIES RELEASE

Section 3142(i) provides that release is warranted if it is necessary for the preparation of Nichols' defense. Since Nichols served the Government with the Petition for Habeas Corpus, two drives have been confiscated or taken from Nichols. The testimony of Ms. Washington that the Government provides in its Supplement to its Opposition is provably false on multiple counts and Ms. Washington's testimony should be discredited and disregarded.

The record shows that Nichols' confidential privileged litigation strategies have been taken from him by unknown actors and may be released at any time. Ms. Washington has much to explain to the Court that was not addressed in her testimony, including (1) why did she decide on August 29, 2022 to confiscate only Nichols' thumb drive, and not any other prisoner's drives, in direct violation of the Jail's policies? (2) why was it so urgent to confiscate the drive when Nichols refused, rather than first consult with the Jail attorney? (3) can she establish a chain of custody that can assure the Court that nobody accessed the drive while it was in her possession?

Further, Nichols alleges that he was removed from his cell on September 5 as a pretext to steal his other drive, that Ms. Washington knew was in his possession but falsely denied knowledge

---

[3] Counsel for Nichols did not have time to prepare a declaration from Nichols prior to the deadline to file this supplement.

to the Court. It has been almost two months since September 5, and Nichols was not charged with a disciplinary violation nor is there a hearing scheduled to address the incident that occurred on that day.

At the very least, this series of events that began the day after the Government was served with Nichols' habeas petition strongly suggests retaliation and/or numerous other violations of Nichols' constitutional rights, and justifies release so that he can prepare for trial without having to worry about his litigation adversaries obtaining his confidential privileged materials and trial strategies or other violations of his civil rights.

## POINT TWO
## THE GOVERNMENT ADMITS THAT UNDER THE CURRENT CONDITIONS NICHOLS CANNOT PREPARE FOR TRIAL

The Government admits that the current facility's policies regarding a pretrial detainee's access to discovery and ability to prepare for trial violate the Sixth Amendment. Sergeant Foster admitted the same.[4] The Government says they will not oppose a transfer if (1) Nichols can identify a Jail that does not violate his constitutional rights; (2) Nichols requests from the Marshals that they transfer him; and (3) the Marshals approve his request.

---

[4] The Jail has also admitted to another issue that makes it impossible for Nichols to prepare for trial. Nichols reported to his counsel that the Jail currently deprives Nichols and the other inmates of a substantial portion of their rec time because, according to the Jail, they are understaffed and cannot provide supervision. Aside from the fact that this constitutes unlawful punishment of a pretrial detainee, the loss of rec time means that Nichols has been locked down in his cell and is unable to visit the law library and is unable to speak with his attorney. Additionally, the Jail law library is woefully inadequate, especially for preparation for Nichols' case. It does not provide any internet access, and the case law library does not have any cases past 2017. As a January 6 defendant, the internet and access to current news is essential, and new case law is constantly developing in this Court in the other January 6 cases. Worst of all, on October 28, 2022, Sgt. Foster acknowledged that Nichols "has a target on his back" for filing grievances against the Jail, even as Foster acknowledged that Nichols is properly engaging in the grievance process and not abusing the system. These are but a few of the other constitutional violations that the Government does not admit to, but are easily provable.

First, Nichols has been detained pretrial for nearly two years – accordingly, detention in any facility is a violation of his constitutional rights. Second, the constitutional violations that the Government admits to, occurred while Nichols was in the custody of the U.S. Marshals. *See* Exhibit C, email from United States Marshal Lamont Ruffin affirming that the U.S. Marshals are Nichols' primary custodian. As they have at least twice detained Nichols in facilities that violate his constitutional rights, and are currently holding him for nearly two years in violation of his constitutional rights, they have demonstrated that they cannot be trusted to protect Nichols constitutional rights in any facility.

Further, the United States Marshals have demonstrated that they do not respond to Nichols' requests, even when the requests concern important constitutional rights. Nichols has not been outside under the sky for many months, other than being transferred, which by itself is a human rights violation. In early October, he requested from the Jail that he be allowed to go outside under the sky for 15 minutes to celebrate the Biblical holiday of Sukkot. The request was denied, in violation of Nichols' constitutional rights and federal law. Nichols appealed, but when the holiday arrived and the appeal had not been addressed, Nichols' attorney reached out to the Marshals and sought permission. The holiday came and went and to this day the Marshals have yet to respond. *See* Exhibit D, email from Nichols' attorney to U.S. Marshals requesting 15 minutes outside to observe a religious holiday.

As the Government admits that Nichols' constitutional rights are being violated, the solution is not for Nichols to request a transfer, but for the Court to order his temporary release so that he can properly prepare for trial, as the constitution demands.

**POINT THREE**
**THE RECENT DISCOVERY DROP AND THE ONGOING CONGRESSIONAL JANUARY 6 HEARINGS SHOW THAT THE GOVERNMENT, NOT NICHOLS, IS THE CAUSE OF NICHOLS' UNCONSTITUIONALLY LONG PRETRIAL DETENTION**

9

One of the factors for the Court to consider is "whether the strategy of one side of the other has added needlessly to that complexity." Since the last hearing, the Government released yet another massive drop of discovery, including thousands of videos that may contain exculpatory evidence for Nichols. Additionally, the Congressional January 6 Committee held yet another hearing where they revealed never-before-seen footage from January 6. Nichols has every right to wait until all of the evidence in the Government's possession has been revealed before he goes to trial. Further, it is the Government's strategy to keep Nichols locked in prison while awaiting trial that has made it incalculably more difficult for Nichols to review the thousands of videos as it would be for him to review them if he were in his home.

As argued in the Motion (ECF No. 150), the factors of section 3142(i) weigh heavily in favor of Nichols' release, especially if the Government continues to withhold information and release discovery in slow drips.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Nichols Motion for pretrial release.

Dated: October 28, 2022

                                              Respectfully Submitted,

                                              /s/Jonathan Gross
                                              Bar ID: MD0162
                                              2833 Smith Ave. Suite 331
                                              Baltimore, MD 21209
                                              (443) 813-0141
                                              jon@clevengerfirm.com

                                              Joseph D. McBride, Esq.
                                              Bar ID:  NY0403
                                              THE MCBRIDE LAW FIRM, PLLC
                                              99 Park Avenue, 6th Floor
                                              New York, NY 10016

p: (917) 757-9537<br>
e: jmcbride@mcbridelawnyc.com

### CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on October 28, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties.

/s/Jonathan Gross