UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-117 (TFH) |
| : | |
| RYAN NICHOLS (01), : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM REGARDING CONDITIONS OF RELEASE**

In response to the Court's determination to grant defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i), the government submits this brief memorandum regarding proposed conditions in advance of the bond release hearing scheduled for November 22, 2022.

Under 18 U.S.C. § 3142(i), a defendant otherwise subject to pretrial detention may be granted temporary release by showing both (1) that he would be released to "the custody of a United States marshal or another appropriate person," and (2) that the temporary release is "necessary for preparation of the person's defense or for another compelling reason." "In assessing both statutory elements for exercise of the discretion inherent in Section 3142(i), the Court must be mindful of the factors set out in 18 U.S.C. § 3142(g)." *United States v. Thorne*, No. 1:18-cr-389 (BAH), 2020 WL 1984262, at *2 (D.D.C. Apr. 27, 2020).

As previously discussed in the government's prior filings in this case, including the Government's Opposition to Defendant's Motion for Release from Pretrial Detention, filed November 29, 2021 (ECF No. 61), which is incorporated herein by reference, the defendant remains a continuing danger to the community. To address the Court's findings in the December 23, 2021 Memorandum Opinion and Order (ECF No. 75), the combination of conditions imposed in a temporary order of release must be extremely strict to reasonably assure the safety of the

community. In this memorandum, the government proposes a combination of conditions for temporary release based on the 18 U.S.C. § 3142(g) factors and the defendant's ability to review discovery materials on temporary release in compliance with the Protective Order.

## I.     Government's Proposed Conditions

In light of the nature and circumstances of the offense, the weight of the evidence, the defendant's history and characteristics, and the serious danger to the community if he were to be released, the government proposes the following combination of conditions for temporary release pursuant to 18 U.S.C. § 3142(i), in addition to any proposed by the United States Probation Office:

- Nichols shall be temporarily released into the custody of an appropriate custodian. As discussed in more detail below, the government has significant concerns about the appropriateness of Nichols' wife, Bonnie Nichols, serving as his custodian.

- Upon release, Nichols shall remain on home incarceration and may not change the location of his confinement without prior notification to, and approval of, the Court. He shall be restricted to 24-hour-a-day lockdown at the residence of the appropriate custodian except for medical necessities, court appearances, court-ordered obligations, or other activities specifically approved by the Court or pretrial services.

- Nichols shall submit to location monitoring technology as directed by pretrial services.

- Nichols shall avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendant Alex Harkrider, any other individual present at the United States Capitol on January 6, 2021, and any other individual who either collaborated, conspired, or assisted in the commission of the criminal activity that took place at the United States Capitol on January 6, 2021.

- No access to the Internet or Internet-capable devices, including smartphones, except to review discovery and communicate with counsel.

- When the Court determines that there are no longer compelling reasons for Nichols' temporary release pursuant to 18 U.S.C. § 3142(i), the Defendant shall return to the custody of the United States.

II.     **Compliance with Protective Order and Access to Discovery Databases**

Because the grounds for the defendant's motion for temporary release is to allow the defendant to review discovery materials, the government respectfully requests that prior to the defendant's release, defense counsel notify the Court of the defendant's compliance with the April 8, 2021 Protective Order Government Discovery ("Protective Order") and defense counsel's efforts to obtain access to the defense discovery databases.

As an initial matter, the government respectfully requests that the defendant file an executed copy of the written acknowledgement of the Protective Order prior to defendant's release, if defense counsel intends to share discovery materials designated as Sensitive or Highly Sensitive.

In addition, the government's understanding is that as of November 4, 2022, neither defense counsel had obtained access to either of the defense discovery databases—evidence.com or the Relativity database. *See* Attachment A (November 4, 2022 email from Gross); Attachment B (November 4, 2022 email from Rocha); Attachment C (February 12, 2022 database access letter). The government notes that since October 18, 2021, all Capitol Siege defense counsel have been able to request a license from FPD to review voluminous amounts of footage the government has shared to FPD's instance of evidence.com. Since January 21, 2022, all Capitol Siege defense counsel have been able to request a license from FPD to view materials in FPD's Relativity

workspace. Therefore, the government respectfully requests that prior to the defendant's release, defense counsel notify the Court that at least one member of the defense team has obtained access.

As noted above, the government proposes that defendant shall have no access to the Internet or Internet-capable devices except to review discovery and communicate with counsel. This condition was part of the combination of conditions imposed in the Order Setting Conditions of Release in *United States v. Jeffrey Brown.* No.1:21-cr-00178 (APM) (ECF No. 108) (July 21, 2022). In this case, the condition is necessary because the defendant broadcast his participation in the riot on social media and posted messages before, during, and after the riot encouraging others to join him. *See* ECF No. 61 at 3-20 (noting a conversation on Facebook on January 7 where he discussed "recruiting more patriots today"). He also coordinated with groups on Zello, a cell phone application that emulates walkie-talkies. *Id.*

Therefore, the government respectfully requests that prior to the defendant's release, defense counsel notify the Court regarding their plan to provide the defendant with discovery materials in compliance with this condition and the Protective Order.

### III.     Defendant Has Not Proposed an "Appropriate Custodian"

Although the Court has determined that release is necessary for preparation of defendant Nichols' release, defendant has not made the necessary showing that he would be released to an "appropriate person." Therefore, the government respectfully requests that prior to the defendant's release, defendant identify someone able to adequately supervise the defendant's compliance with all of the conditions of release. In addition to a willingness and ability to serve as a third-party custodian, an appropriate person must be willing to take any steps the Court may deem necessary to make their home suitable for home confinement, including removing electronic devices and firearms.

Defendant has proposed that his wife, Bonnie Nichols, serve as custodian. However, the government is not convinced that "if offered the choice between obeying an order of this Court and assisting her [husband] in a manner that she deemed proper and just, that [Bonnie Nichols] would heed to this Court's order." *United States v. Hite*, 76 F. Supp.3d 33, 42 (2014).

At the January 22, 2021 detention hearing, Bonnie Nichols testified that she was unaware of her husband's use of psychedelic drugs. ECF No. 61-1 at 105. She admitted that she had conversations about the defendant's concerns about law enforcement contact due to his activity, but she claimed to have no knowledge of the defendant's obstructive conduct in destroying or secreting incriminating evidence.[1]  *Id.* at 106-108.

Despite having watched the defendant's livestream to the Capitol at approximately 1:40 p.m. on January 6[2] and having participated in the defendant's initial bond hearing, Bonnie Nichols recently stated publicly that the defendant "went to the Capitol on January 6 to peacefully protest his First Amendment rights." *See* https://twitter.com/alexbruesewitz/status/1564749817443749892 (last accessed Nov. 17, 2022). Bonnie Nichols also refers to the defendant's enlistment oath, commenting that the "oath does not end whenever you leave active-duty service." *Id.*  The government is concerned about her statements because they echo the defendant's recorded justifications for his actions and threats of future violence. For example, the evening of January 6, 2021, the defendant stated the following in a video he posted on Facebook:

---

[1] As described in the Government's Opposition to Defendant's Motion for Release from Pretrial Detention, defendant's phone was missing all text messages between himself and his wife, himself and his father, and other communications. ECF No. 61 at 21.

[2] During the livestream, she posted messages of support, including "COME AND TAKE IT!" and "GOD BLESS AMERICAN AND WE THE PEOPLE!. . . DEFEND OUR VOTE! STOP THE STEAL!" *See* ECF No. 61 at 11.

> I took a constitutional oath, to uphold for the United States and its people, for all enemies, foreign and domestic. So help me God. I will f*cking die for this. But before I do that, I plan on making other people die first.

*See also* ECF No. 61 at 4-5 (describing Nichols Facebook post on December 9, 2020 regarding his enlistment oath).

Moreover, Bonnie Nichols has made several public statements reflecting the same anti-government, conspiratorial views shared by the defendant. In a video shared on defense counsel's twitter account, which appears to be in response to the Select Committee hearings, Bonnie Nichols, accompanied by the defendants' parents,[3] stood on the United States Capitol grounds at a press conference to encourage people to "do your research so you can uncover what really happened on January 6." *See* https://twitter.com/mcbridelawnyc/status/1537208948834586625 (last accessed Nov. 17, 2022) ("I demand them to uncover the truth and release the tapes because America deserves that."); *see also* ECF No. 61 at 20 n.9.

---

[3] Don Nichols authored several statements regarding access to release of video footage on the defendant's Give Send Go page, which refers to the defendant as a "Patriot Prisoner." *See, e.g.*, https://www.givesendgo.com/G26NF messages on October 11, 2021 and December 2, 2021 (last accessed Nov. 17, 2022) ("Joseph McBride, Ryan's attorney, just filed a motion to take the protective order 'OFF' so that the American public, the MSM, and other attorneys as well as their clients have equal access to unedited and redacted videos from January 6th."). The comment appears to be related to the defendant's baseless allegations to remove certain sensitivity designations, which the Court denied as moot on December 21, 2021. *See* ECF No. 70. Don Nichols also watched his son's livestream march to the Capitol the afternoon of January 6 and communicated with him during the riot, including sending him the message "Go get your guns." In an interview with law enforcement, Don Nichols acknowledged assisting his son build a box for the purpose of bringing ammunition to the Washington, D.C. area on January 6, 2021, but denied it was also for the purpose of bringing firearms.

In sum, the government is extremely concerned about Bonnie Nichols' ability to monitor and enforce the conditions of release imposed by the Court. Because she is not an appropriate custodian, the government respectfully requests the defendant identify another proposed custodian for the Court's consideration.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   /s/ *Sarah W. Rocha*
        SARAH W. ROCHA
        Trial Attorney
        D.C. Bar No. 977497
        219 S. Dearborn Street, Fifth Floor
        Chicago, Illinois 60604
        Telephone: 202-330-1735
        sarah.wilsonrocha@usdoj.gov

        DOUGLAS B. BRASHER
        Assistant United States Attorney
        Texas State Bar No. 24077601
        Federal Major Crimes – Detailee
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242
        Telephone: 214-659-8604
        douglas.brasher@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Government's Memorandum Regarding Conditions of Release is being served on defense counsel via email on November 18, 2022.

*/s/ Sarah W. Rocha*