UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-117 (RCL) |
| | : | |
| RYAN TAYLOR NICHOLS & | : | |
| ALEX KIRK HARKRIDER, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO CONTINUE ANDFOR REMOVAL OF THE PROTECTIVE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Ryan Nichols' February 27, 2023, motion to continue this case and to lift the existing protective order in this case. ECF 212.

### I. The Defendant's motion to continue this case should be denied

The Defendant moves to continue this case from March 27, 2023, which was selected by all parties as a date upon which they would be ready to commence trial, *see* ECF 191, to an indeterminate future date. The Defendant's motion to continue rests on two unfounded arguments. First, he argues that he needs additional time to review discovery, including discovery allegedly provided to him by a third party. Second, he argues that a continuance is necessary to allow him to review surveillance footage he already has, as well as to review surveillance that may later be released by a third party.

**A. Defendant Nichols has had and continues to have access to the discovery in this case.**

The Defendant has not provided sufficient reason as to why, two years into this case and one month prior to scheduled commencement of trial, a continuance is necessary. The riot at the United States Capitol on January 6, 2021, was an unprecedented event in the history of the United States. As such, it has led to an unprecedented amount of evidence. However, that evidence has been made available to January 6 defendants, including Defendant Nichols.

1

The United States has provided voluminous discovery in this case. As of March 6, 2023, over 4.91 million files (7.36 terabytes of information) have been provided to the defense Relativity workspace. These files include (but are not limited to) the results of searches of 759 digital devices and 412 Stored Communications Act accounts; 5,254 FBI FD-302s and related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps); 395 digital recordings of subject interviews; and 149,130 (redacted or anonymous) tips. Over 30,000 files that include body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies have been shared to the defense evidence.com video repositories. *All* of this information is accessible to the defense, as well as camera maps and additional tools that assist any defense counsel with conducting their own searches for information that they might believe is relevant. In addition to this case, the Defendant's attorney, Joseph D. McBride, has entered his appearance in five other criminal cases related to January 6.[1] The other attorneys on Defendant Nichols' defense team, Jonathan Gross and Brad Geyer, are also familiar with the representation of January 6 defendants.[2] Mr. McBride, Mr. Gross, and Mr. Geyer were the attorneys on a January 6 case that went to trial earlier this year.[3]

With regard to Defendant Nichols, the government has made more than twenty productions in his case-specific discovery. These productions began less than two months after the Defendant's arrest and have continued on a rolling basis. Defendant has thus had access to the materials that pertain to his case for nearly two years, including U.S. Capitol Police Closed Circuit Video ("CCV").

---

[1] *United States v. Richard Barnett*, No. 1:21-cr-38 (CRC), *United States v. Daniel Goodwyn* (RBW), No. 1:21-cr-153; *United States v. Victory Charity White*, No. 1:21-cr-563 (JDB); *United States v. Adam Lejay Jackson*, No. 1:22-cr-e30 (RC). Until recently, Mr. McBride was also the attorney in *United States v. Christopher Joseph Quaglin*, No. 1:21cr-40 (TNM).
[2] Mr. Gross was an attorney of record in *U.S. v. Barnett*, No. 1:21-cr-38 (CRC) and *U.S. v. Quaglin*, No. 1:21-cr-40 (TNM); Mr. Geyer was an attorney of record in *United States v. Kelly Meggs*, No. 1:21-cr-28 (APM) and *United States v. Kenneth Harrelson*, No. 1:22-cr-15 (APM).
[3] *U.S. v. Barnett*, No. 1:21-cr-38 (CRC).

For his case specific discovery, the government has made available specific CCV cameras, which include the period of 2:00 pm to 5:00 pm on January 6, 2021, in the Lower West Tunnel, the area in which the defendant committed the crimes alleged by the government and for which he was indicted by the grand jury. The government has further made available body-worn camera footage from 111 officers who might have encountered the Defendant in the Lower West Tunnel and provided numerous open-source videos ranging in length from a minute to more than an hour. In providing open-source materials, the government provided specific timestamps where the Defendant is viewable in those videos. The government made those video productions before October 5, 2021, meaning that the Defendant has had access to them for at least sixteen months.

The specific discovery in this case is substantial, but it strains credulity to argue that at least sixteen months is an insufficient period to review the materials specific to Defendant Nichols' case. First, the government alleges that Defendant Nichols only entered a single room in the United States Capitol. That room was not covered by video surveillance. Second, the Defendant's three attorneys have represented multiple January 6 defendants in criminal matters and accompanying civil matters. The CCV discovery is limited in this case relative to other January 6 cases. *See*, *e.g.*, *U.S. v. Barnett*, No. 1:21-cr-38 (CRC) (government introduced more than ten individual CCV cameras, multiple CCV camera compilation videos, and eight body worn camera videos in a case where the defendant moved from the West Front to the East Front, through the Capitol complex, and into the Speaker's Office Suite). This case is not one where many different cameras might need to be reviewed to see a defendant's movements about the Capitol over a lengthy period. Moreover, the Defendant's attorneys have had ample opportunity to review the CCV surveillance footage.

Subject to some exclusions, such as evacuation footage and cameras depicting certain sensitive areas, the Defendant, like all January 6 defendants, has long had access to nearly all exterior U.S. Capitol Police ("USCP") camera footage, interior Capitol footage, Capitol Visitor Center

3

footage from January 6 from noon to 8 p.m., and his counsel has been provided maps generally depicting the location of CCV cameras. To the extent the Defendant has identified a camera or angle that necessitates further probing, the government has always been and still is ready and willing to determine if it has such video in its possession. No such requests have been made in this case.

The argument that Defendant Nichols specifically has not had sufficient access to the discovery in his case is also unavailing. The Defendant posits that he has not been provided "meaningful access" to the digital databases of evidence in this case. *See* ECF 212 at 5. However, he does not state what specific problems he has encountered in accessing these databases, how his use of them has been limited such that he is unable to prepare for trial, or what "meaningful access" would even entail. Only the Defendant's refusal to agree to the terms of the protective order in this case, see ECF 26 at 7 (defendant's unsigned agreement page to the protective order), has prevented him from having direct access to *all* of the footage in evidence.com.

The Defendant further asserts that "[with] video evidence and the types of scenes shown, the actual Defendant—not just his attorneys—must be able to review the evidence." *Id.* He does not state why, in the two years since the inception of this case, Defendant Nichols' attorneys have been unable to meet with their client to review evidence that the Defendant would not be able to access absent the presence of one of his attorneys. Importantly, Judge Hogan granted Defendant's request for pretrial release pursuant to 18 U.S.C. § 3142(i) to allow the Defendant to participate in the preparation of his defense and review discovery materials with his counsel. *See* ECF 180.[4] Yet, he makes no assertions why, during the months since his release, his attorneys have been seemingly

---

[4] Because Judge Hogan correctly concluded that Nichols continued to remain a danger to the community, he imposed significant restrictions on Nichols' ability to access the Internet. In addition, contrary to defense counsel's assertions, Judge Hogan did not grant Nichols additional access beyond what is contemplated by the protective order and the procedures for other January 6 defendants to review discovery materials outlined in the government's February 12, 2022 letter regarding defense discovery databases sent to all counsel representing January 6 defendants. *See* ECF 178.

unable to travel[5] to the Defendant's home to meet with him and review the evidence or do so virtually.[6] Absent a showing as to why his access has not been "meaningful" and why his attorneys have been unable to meet with him during the time since his release, Defendant Nichols's argument becomes all the more incredible.

The events of January 6, 2021, occurred over two years ago, the Defendant was arrested and charged more than two years ago, and the Defendant has had continuing access to the discovery in this case for just under two years. The trial in this case was scheduled more than a month ago based upon the representation of all parties in this case, including both the Defendant and his counsel, that they would be ready to commence trial on that date. *See* ECF 191. Put simply, the ends of justice are not served by any further delay in the resolution of this case.

### B. The Defendant's argument that additional evidence exists is purely speculative and should be denied.

Without offering any details, Defendant states that his attorney "has obtained permission to examine the totality" of 41,000[7] hours of CCV footage that relates to January 6. ECF 212 at 1. The Defendant does not state who granted his attorney such permission, when or where he will review such footage, or what means he will use to conduct his review. In apparent connection with this

---

[5] Travelling from New York to Texas to meet with the Defendant in person is certainly an available option in this case. As of the filing of this motion, Defendant Nichols has raised $225,178 in donations to pay for his legal defense. See *Free My Patriot Prisoner*, available at https://www.givesendgo.com/G26NF. Mr. McBride has also been seeking donations to support his work defending January 6 cases. As of this filing, Mr. McBride has raised $46,667. See *January 6th Legal Fund*, available at https://www.givesendgo.com/J6GlobalMcBrideLaw.

[6] On January 3, 2023, Judge Hogan granted Defendant's December 29, 2022, unopposed Motion to Modify the Order Setting Conditions of Release to allow the Defendant "to use Google Docs and Google Sheets for the sole purpose of sharing documents and spreadsheets with his attorney[s] online." ECF 197.

[7] At various points in his motion, Defendant Nichols describes the length of the CCV footage to which he has allegedly been offered access as 40,000 hours, 41,000 hours, and 44,000 hours. These are not small variances. The variation in these suggests that he is speculating not only about the contents of the video but also about how much video there may be. We nevertheless assume, for the purposes of this motion, that the numbers refer to the same CCV footage throughout.

assertion the Defendant states that "[on] February 20, 2023, a cable news host announced that he was granted 'unfettered access' to more than 40,000 hours of camera footage relevant to January 6, 2021." *Id.* at 6. The Defendant never states how this fact connects to his earlier assertion, and instead leaves the connection open to speculation. In yet another speculative assertion, the Defendant claims to have spoken with a House of Representatives staffer who has knowledge of "100 boxes" of materials from the Select Committee to Investigate the January 6, 2021, Attack on the United States Capitol. ECF 212 at 8. Yet he offers no assertions about what is in these boxes, much less how they relate to his case. Other judges of this Court have denied continuances in January 6 cases set for trial where the Defendant's basis for a continuance was the potential acquisition of speculative evidence. *See United States v. Sara Carpenter*, No. 1:21-cr-305 (JEB), 3/3/2023 Minute Order (denying defendant's motion to continue her case based upon the potential release of CCV footage by Congress); *see also United States v. Anthony Williams*, No. 1:21-cr-377 (BAH), ECF No. 108, at 5-6.

The United States does not know the extent of any material that a member of the legislative branch purportedly provided to other individuals. This Court should not commit to an indefinite trial extension for this Defendant, or for any defendants, based on the unsupported allegation that pertinent information may exist somewhere, but is not currently known to either the prosecution or the defense. Chief Judge Howell identified this argument's fallacy when considering a similar motion in the context of the January 6 House Select Committee: "Taken to its logical endpoint, defendant's argument would preclude nearly *any* criminal trial on *any* subject, *ever*, from proceeding, as it is *always* possible that relevant information exists somewhere that is not fully known by or in the possession of the parties." *U.S. v. Williams*, No. 1:21-cr-377, ECF No. 108, at 5-6.[8]

---

[8] The Defendant did not provide any authority to suggest that the mere existence of a third-party having access to information, even if it was relevant, would necessitate the continuance of January 6-related criminal proceedings.

6

Defendant Nichols offers no non-speculative reason to believe that any such video footage will bear in any material way on the evidence in his case. The Defendant suggests that the video footage that the government has entered into evidence in January 6 cases has been selectively edited to show "only part of the story." ECF 212 at 7. The Defendant conflates trial evidence, which may be edited so that the factfinder need not—for example—watch three hours of surveillance footage when only fifteen minutes is at all relevant to a specific defendant's conduct, with the raw footage that has been provided to the defendant and all other January 6 defendants in discovery. This raw footage, which shows the full time period, is not only available to the Defendant and his attorneys but also may be admitted at trial by the Defendant or any other defendant in any form that meets the rules of evidence. The Defendant's suggestion that he faces prejudice, *see* ECF 212 at 17, due to the potential existence of additional information is unfounded because he does not state how presenting such evidence would be exculpatory. Indeed, as previously described, the indictment in this case involves allegations of violent conduct that occurred on the West Front of the Capitol and in and around the Lower West Tunnel, over the course of approximately four hours, captured on limited body-worn cameras and CCV. Such videos have been provided as part of discovery in this case. While the government does not want to similarly speculate in a wide-ranging manner, it is not remotely clear what additional evidence could be found that would undercut whether the Defendant assaulted law enforcement, obstructed justice, or unlawfully trespassed on the date in question.

As Chief Judge Howell noted, the Government's discovery obligations in a criminal case are properly limited to materials that are potentially relevant to a defendant's case in the government's possession or control, and the government is not obliged to acquire materials possessed or controlled by others. *See United States v. Anthony Williams*, 21-cr-377, ECF No. 108, at 6 (citing *United States v. Meija*, 488 F.3d 436, 444-45 (D.C. Cir. 2006) (rejecting defense argument that government's discovery obligations extended to securing potentially relevant material held by a foreign

7

government)); *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (observing that "the government cannot be required to disclose evidence that it neither possesses nor controls"); *United States v. Weisz*, 718 F.2d 413, 436 (D.C. Cir. 1983) (noting that the "duty of disclosure attaches in some form once the [g]overnment has first gathered and taken possession of the evidence in question" (quoting *United States v. Brant*, 439 F.2d 642, 644 (D.C. Cir. 1971)); *see also United States v. Liddy*, 542 F.2d 76, 83 (D.C. Cir. 1976) (declining to reach the question whether the Jencks Act or *Brady* principles reach "materials in the possession of Congressional Committees"). The Court should not continue the trial based on speculation about whether and when any such additional, likely irrelevant, information may become available.

      **II.**    **<u>The Defendant's motion to terminate the protective order in this case should be denied as premature.</u>**

In making his request to revoke the protective order in this case (and on behalf of) all January 6 defendants, the Defendant requests extraordinarily broad relief based on remarkably little. Defendant Nichols' request to lift the protective order, as with his request for a continuance, is premised upon his assertion that "Congress is in the process of making [44,000 hours of CCV surveillance] fully public." ECF 212 at 17. This request is premature.

The Defendant's assertions about these materials are amorphous. Despite stating that he has "obtained permission" to view these materials, he does not state when such review could or will begin. *Id.* at 1. He notes that a television host announced that he has "unfettered access" to the footage but does not offer any information that he might have on when those materials may be released. *Id.* at 6. The Defendant does not provide this information because he cannot.

A limited amount of CCV footage was broadcast during segments of a national television show on March 6, 2023. Nearly all the footage displayed on the program has long been in the government's production to defense counsel and, in some cases, has also been admitted in public

8

hearings and/or trials and has been available to, released to, and/or published by news media. *See* Standing Order 21-28 (BAH) (recognizing "[t]he significant public and media interest in the numerous criminal cases arising from the January 6, 2021 violent breach of the U.S. Capitol" and providing a procedure for media receipt of video evidence used in trials and public hearings); *see* Government's Global Production No. 12 (noting that all USCP CCV received had been provided in discovery except footage depicting five categories of excluded images, including "evacuation routes," but committing to reviewing all such footage for potentially discoverable information).[9]

The Defendant has not provided any information about his access to or the release of these materials beyond vague speculation. The Defendant's contentions are insufficient to support his request. *See United States v. Slough et al.*, 669 F.Supp.2d 51, 58 (D.D.C. 2009) (Urbina, J.) (denying defendants' discovery motion as premature upon finding that the defendants had not taken necessary steps to identify the material sought based upon prior disclosures by the government); *see also United States v. Dale*, 1995 WL 495995 (D.D.C. 1995) (Kessler, J.) (denying as premature speculative discovery request that dealt with defendant's theory of the case that only "raise[d] tangential and collateral issues" and failed to identify how the material sought related to a central issue in the case, specifically the defendant's guilt or innocence).

The Defendant again summarily argues without further details that these materials to which he may eventually access may contain some information relevant to some unknown aspect of his case and that some of those materials may be exculpatory. ECF 212 at 16-17. This line of argument heaps speculation upon inference to conclude that those speculative inferences support lifting the protective order. More relevant to this analysis, the protective order remains appropriate at this juncture. The order governs the dissemination of criminal discovery to third parties, as well as key important

---

[9] Demonstrating its commitment to providing all discoverable information to the Defendant, the government has continued to disclose CCV. *See* Government's Global Production Nos. 24 and 25.

classifications related to sensitive materials. Disclosure of *all* CCV footage could not only reveal the U.S. Capitol's internal surveillance system to third parties but could also jeopardize the privacy and security of certain persons depicted on such CCV footage. The good cause, as established by the consent motion for the protective order, *see* ECF No. 25, remains intact. Moreover, the limited footage produced by the television program – again, completely untethered to this ongoing prosecution – does not disturb the foundation on which this order is premised. The Defendant offers no information on when or how such disclosure may eventually happen, if it were to happen at all. His request for the lifting of the protective order thus rests on pure speculation. The Defendant's request should therefore be denied as premature.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the Defendant's motion in in full.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/ Sean P. McCauley*
SEAN P. McCAULEY
New York Bar No. 5600523
Assistant United States Attorney
601 D Street NW
Washington, DC 20579
Telephone: (202)252-1897
Sean.McCauley@usdoj.gov

SARAH W. ROCHA
Trial Attorney
D.C. Bar No. 977497
219 S. Dearborn Street, Fifth Floor
Chicago, Illinois 60604
Telephone:  202-330-1735
sarah.wilsonrocha@usdoj.gov

DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
Federal Major Crimes – Detailee
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8604
douglas.brasher@usdoj.gov