## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

v.

**RYAN TAYLOR NICHOLS,**

Defendant

Case No. 21-cr-00117-TFH-1

### RYAN TAYLOR NICHOLS' MOTION FOR REQUIRED DISCLOSURE
### OF MATERIAL OR POTENTIALLY EXCULPATORY INFORMATION

Defendant RYAN TAYLOR NICHOLS ("Nichols"), through the undersigned counsel, Joseph McBride, Esq. and Bradford L. Geyer, Esq. Moves this Honorable to enter an Order that the U.S. Government must disclose to the Defendant promptly, the following information necessary to the Defendant's defense pursuant to pretrial discovery under Rules 6(e)(3)(C) and 16(a)(1)(A) of the Federal Rules of Criminal Procedure, Rule 16 of the same, *Brady v. Maryland,* 373 U.S. 83 (1963) and progeny, and Nichols' Due Process rights under the U.S. Constitution. Commonly referred in short-hand as potentially exculpatory information, the Constitutional commands identified in *Brady* are actually broader for any information "material" to an accused person's defense, such as identifying potential witnesses or leading to other potential witnesses, preparation for cross-examination of the Government's witnesses, and/or aid of investigations that may assist the Defendant in proving innocence or proving a lesser crime or establishing defenses. Therefore it would be more accurate to discuss the requirement as being for information "material" to a Defendant's defense than as only "potentially exculpatory."  In support of his motion, Nichols makes the following specific requests:

Nichols demands any and all --

1

## A. DISCLOSURE OF CAUSE OF THE OBSTRUCTION OF THE OFFICIAL PROCEEDING (JOINT SESSION OF CONGRESS) UNDER 18 U.S.C 1512(c)(2)

Communications, messages, radio traffic, analyses, conclusions, action plans, recommendations, text messages, email messages, including FBI interview Form 302's, FBI Form 1023's, or the like including any threat assessment by the U.S. Capitol Police, the Federal Bureau of Investigation, the Secret Service, Metropolitan Police Department of the District of Columbia or other law enforcement agencies concerning any reasons for Congress to recess on January 6, 2021. Nichols primarily demands contemporaneous communications and analyses as events were unfolding on January 5-6, 2021, not so much reports generated for litigation purposes or for political discourse or to support superior's narratives. Specifically, records showing *why* the USCP and other agencies decided that there was a threat possibly requiring the Joint Session of Congress to be recessed,[1] when exactly the USCP decided that the Joint Session of Congress should recess, and from what threat exactly. These will mostly be created in or held within the headquarters of the U.S. Capitol Police and will include emails, presentations, intelligence analysis and reports generated and or (back)dated between December 20, 2022 and January 7, 2021.

## B. DISCLOSURE OF INFORMATION ABOUT PIPE BOMBS

Any and all communications, messages, radio traffic, analyses, conclusions, action plans, recommendations, text messages, email messages, including FBI interview Form 302's, FBI Form 1023's, surveillance video, geo-fencing or the like including any threat assessment by the U.S. Capitol Police, the Federal Bureau of Investigation, the Secret Service, Metropolitan Police Department of the District of Columbia or other law enforcement agencies concerning the presence of pipe bombs found near the Capitol at the Republican National Committee headquarters and

---

[1] Apparently, Congress describes adjournment or the like meaning that a hearing or other session is concluded. Recess apparently indicates that a hearing or session has been paused.

Democratic National Committee headquarters on January 6, 2021.

### C.  REMAINING UNDISCLOSED SURVEILLANCE VIDEO

From two declarations from the US Capitol Police General Counsel, one filed on November 12, 2022, and the other on March 17, 2023 (Attachments A and B), we know that the government still owes defenses surveillance video.  According to the 2022 declaration, the FBI received 14,000 hours of CCTV footage (Attachment A, footnote 2). However, Jan6 defenses have only been provided with 6,000 hours of footage from Project Plum and Evidence.Com, potentially leaving a shortfall of 8,000 hours that the FBI has not turned over.

Regarding the number of cameras, our best estimate indicates that Speaker McCarthy has granted access to the public for footage from approximately 1,750 cameras. This calculation is based on dividing the 14,000-hour footage into camera runs between noon and 8 p.m. (8 hours). In comparison, the Project Plum and Evidence.Com databases contain around 650 cameras, resulting in a potential deficit of 1,100 cameras. Upon conducting spot checks in the Speaker's and DOJ collections, we have discovered missing cameras in either collection, footage present in one collection but not the other, and missing footage from both collections during crucial times from cameras included in both.

We request the Honorable Court order the FBI data team to provide an inventory of the footage in the Project Plum and Evidence.Com databases, along with a comparison to the 14,000 hours of footage received from the FBI. This inventory should be made available to defenses for review, enabling us to ascertain what footage we have and what might be missing.  We ask that the Honorable Court order the FBI data team to request access to the Speaker's video collection to conduct a comprehensive inventory and identify any footage not previously turned over to the FBI as part of the 14,000 hours of video.

On page 5 of the 2022 declaration, it is mentioned that the aforementioned restrictions do not apply to footage used as evidence or discovery in any criminal prosecution. Considering that Speaker McCarthy has made CCTV footage accessible to the public and the press, it suggests that the existing protective order lacks a legal basis. After all, the 14,000 hours of footage were specifically turned over to the FBI for use in prosecutions and discovery. It's impossible to know what gaps may exist between what Speaker McCarthy made public and what may be missing in his collection where there may remain a lingering question about whether it is public or not. To promote the crowd-sourcing of this information, information sharing and coordination to benefit all defenses, even at this stage, we respectfully urge the Court to order the government to file a motion to lift the restrictions of protective orders for defenses. If the government can provide an inventory that clearly shows areas where there is a legitimate security concern (evacuation routes) or the information is clearly not germane to defenses (a janitor's closet) or both (a day care center), that are genuinely sensitive or irrelevant, we can easily carve those out with an updated protective order to ensure protection of these areas. However, the current approach of allowing the self-interested prosecution to unilaterally declare – without justification or explanation – videos, records, or other information to be unavailable for public disclosure is unacceptable. No person who is awake can miss the fact that the Government at every level has massively polluted the jury pool and all public understanding for over two years while hypocritically applying a double standard. This "Protective Order for Thee, But Not for Me" approach has become so extreme and comical as to rise to due process and equal protection violations. Even some District Court judges have made comments used in legal proceedings of facts not in evidence that could only be obtained from inaccurate news reporting, such as speculation that the Oath Keepers is a "hierarchical" organization in which Stewart Rhodes' orders would be followed without question, even though

nothing about the nature or structure of the Oath Keepers as an organization was introduced into evidence, especially at the time of the bail hearing in question.  Clearly double standards cannot be tolerated and are not being tolerated by public opinion.  However, it is difficult to see how now the bell can be unrung or the toothpaste put back in the tube.

### D. SURVEILLANCE VIDEO RECORDINGS VIEWING THE CAPITOL HILL CLUB AND/OR REPUBLICAN NATIONAL COMMITTEE HQ OR NEARBY AREA

Any and all surveillance video recordings taken from or including 8:00 PM on January 5, 2021, until or including 1:00 PM on January 6, 2021, which camera recordings view the alley between the Capitol Hill Club and the Republican National Committee headquarters and/or the area around the Republican National Committee, which are located diagonally across an intersection from the Capitol South Metro Station and the Canon House Office Building or immediate vicinity (within one block).  Note that a single-level, street-level parking lot for Congressional staff is located on the same block as the Capitol South Metro station and therefore security camera recordings viewing the parking lot are likely and are likely to have seen the Republican National Committee HQ in the background.

### E. SURVEILLANCE VIDEO RECORDINGS VIEWING THE DEMOCRATIC NATIONAL COMMITTEE HQ OR NEARBY AREA

Any and all surveillance video recordings taken from or including 8:00 PM on January 5, 2019, until or including 1:00 PM on January 6, 2021, which camera recordings view the Democratic National Committee HQ near Capitol Hill or immediate vicinity (within one block).

### F. CIRCUMSTANCES UNDER COUNT I OF DELAY OF RESUMPTION OF JOINT SESSION UNDER 18 U.S.C 1512(c)(2)

All video recordings, plans, reports (especially those prepared prior to January 6, 2021), chats, text messages, social media posts, analyses, radio traffic, instructions from U.S. Capitol Police

headquarters or leaders or Metropolitan Police Department leaders concerning (a) how long it would normally take to do a security sweep of the U.S. Capitol building, (b) what steps are involved in general terms, (c) what would have been faster if Defendant Ryan Nichols had not been there (having voluntarily left hours earlier), (d) whether the number of rooms to be searched would have changed if Nichols had not been there, and (e) what _additional_ steps were required before resuming the Joint Session because Ryan Nichols was in or near the Capitol building.

### A. ALL INFORMATION ABOUT THE IDENTITY AND ACTIVITIES OF 1% WATCHDOG, MARCUS DIPAOLA AND OTHER KEY FIGURES WHO CREATED EVENTS TO WHICH MR. NICHOLS WAS RESPONDING

All information about the identity of key individuals below, some as of yet unidentified, from the Government's investigation and any information relating to activities on January 6, 2021 or related communications, including FBI interview Form 302's and FBI Form 1023's. Any and all payments by any government agency directly to these individuals or paid through intermediaries. Any and all communications between law enforcement agencies and the January 6 Select Committee about these individuals. All communications, payment records, raw investigation files, emails, pretrial services files and probation files.  Please include all information including raw investigation files for any of these individuals who are symbolled assets, regardless of security classification, all confidential informants, all confidential sources whether registered or unregistered and regardless of whether they are paid.

We would respectfully request the Honorable Court to Order the government to produce

#### a.  1% WATCHDOG

All communications with or about Mark Bradman or James Randall

Taylor or anyone else who was suspected of being 1% Watchdog.

### b.  MARCUS DIPAOLA AND PROVOCATEURS HE
### CONFERRED WITH AND FILMED ON JANUARY 6

All information from its investigation about Marcus DiPaola in relation to activities on January 6, 2021.  "#Redyuppyphotog" having now been identified as DiPaola functioned almost as an official videographer of coordinated suspicious actors who were instrumental at breaching the Capitol grounds in the Northeast and entering the Capitol through the Columbus Doors.[2]  The provocateurs he filmed that may include undisclosed Confidential Human Sources (CHS) are:

1. **Israel Easterday** (#JamesDeanWannabe) who is seen on video recordings helping trap Oath Keeper James Dolan on the stairs, holding the only confederate flag visible in the area, spraying chemicals on police and entering during the second opening of the East Rotunda Doors (which stand right behind the Columbus Doors when both sets of doors are closed) at 2:38:30 thereafter pulling protestors into the Capitol, and meeting provocateurs up stairs who entered through the upper west Senate wing doors. Easterday was not arrested until December 29, 2022 in an investigation that seems primarily driven by raw geofencing rather than human intelligence (humint) when Easterday can be seen on video working closely with associates.[3]

2. **Ricky Christopher Willden** trapped Oath Keeper Dolan on the stairs and pushed him down and sprayed chemicals on police. Willden was not detained until he violated his terms of supervised release twice and was sentenced in August 2022 to two years in prison.[4]

---

[2] https://www.dropbox.com/s/vgfe0w8kj93cy8m/225-3.pdf?dl=0 pages 5-6.

[3] https://www.justice.gov/usao-dc/defendants/easterday-israel

[4] https://www.justice.gov/usao-dc/defendants/willden-ricky-c

3. **Ronald Loerke** (#MaroonPB) and **James Haffner** (#ZZTopPB) were a tactical duo who were identified within days of January 6 by Sedition Hunters but were not arrested until November 30, 2021 and are believed to have been on pretrial release ever since.[5]

4. **#LemonyKickit** and **#LemonZest** remain unidentified even though their behavior would make them easy to identify and would make one suspect they would be high priority that also shows them to confer with provocateurs around them.

5. **#PencilBeardInsider** and **#GooseinGray** remains unidentified but helped remove fencing, broke windows in the Columbus Doors, stole a police shield and shared a joke about a crowbar with **John Sullivan** (JaydenX) that Sullivan should have had no independent knowledge about.

6. John Sullivan (a/k/a/ JaydenX) filmed key events on January 5 and 6 including Ray Epps call to "go into" the Capitol and the wrongful shooting of Ashli Babbit.

### c.  ZACHARY JOHNSON

All information from its investigation about Zachary Johnson in relation to activities on January 6, 2021.  Zachary Johnson handed Defendant Nichols a spray can apparently containing pepper spray as the crowd was being sprayed by police and/or provocateurs, rather than Johnson merely using the spray can himself.

### d.  TIMOTHY ALLEN HART

All information from its investigation about Timothy Allen Hart in relation to activities on January 6, 2021. Hart was one of first individuals to arrive at the Peace Circle in the morning on January 6 and although active in the East.[6]

---

[5] https://www.justice.gov/usao-dc/defendants/loehrke-ronald

[6] https://www.justice.gov/usao-dc/defendants/hart-timothy-allen

e.   **RAY EPPS**

All information from its investigation about Ray Epps in relation to activities on January 6, 2021. Ray Epps is uncharged and played a key organizational and leading role in January 6 and was among the earliest to show up at the Peace Circle.  Epps is seen on multiple video recordings criss-crossing the West face lower terrace of the Capitol exterior where Defendant Nichols is alleged to have attacked police officers and obstructed the Joint Session of Congress.  Epps is recorded on video in the middle of clashes between the crowd and law enforcement officers that Nichols is alleged to have participated in.  Epps is a potential witness of these events.  Epps is a potential witness that there was a plan, led mainly by Epps, to obstruct the official proceeding but that Nichols was not part of any such plan.  Thus Epps is a witness of Nichols (lack of) intent. Even Epps' potential testimony that he has never heard of and does not know Ryan Nichols would rebut the Government's allegations against Nichols of seeking to obstruct the official proceeding (given the lack of any direct evidence against Nichols, in contrast to any hypothetical person who might have entered the Capitol building and physically disrupted the House and Senate chambers, none of which Nichols did).  The fact that there was a plan – openly and brazenly admitted in public by Epps – but Nichols was not part of it would be exculpatory.  Furthermore, many factors raise a strong inference that the Government knows where to reach Epps with a witness subpoena even though Epps openly declares to the news media that he and his wife are fugitives from service of process.  Serving a *subpoena ad testificandum* does not require public disclosure of his location.

### f.  SAM ANDREWS

Sam Andrews played an organizational and leading role prior to and on January 6 and was among the earliest to show up at the Peace Circle. On December 14, 2020, his alarming calls for action by 500,000 armed patriots were published on December 14, 2020 on the The Hagmann Report–five days prior to President Donald Trump announcing the January 6 rally—and his call was actively promoted on numerous media sites including Coach Dave (Daubenmire) Live and Twitter accounts.   Many of the people actively promoting these issues on conservative sites claimed to have prior experience in intelligence agencies and seem to have engaged in a voluntary endeavor similar to the Sedition Hunters. [7]    This conspicuous and widespread hyperbolic coverage must have come to the attention of USCP Intelligence and other law enforcement agencies, but very little intelligence information seems to have been shared or recognized outside extremely narrow circles.

---

[7]

https://twitter.com/freestatewill/status/1668084255992213507?s=46&t=AzjckL4mAexEptDKf_xjug In a prior case, undersigned counsel unsuccessfully requested a continuance in part because information about material witnesses and/or suspicious actors had not yet been turned over. https://www.dropbox.com/work/Brad%20G eyer/Public?preview=225-2.pdf

### g.  SEDITION HUNTERS

Sedition Hunters (SH) are portrayed as a private group of volunteers at least one of whom has been identified as a CHS.

  

Photograph #261 - AFO E          Photograph #261 - AFO D          Photograph #261 - AFO C

Figure 9
(Source: www.fbi.gov/wanted/capitol-violence-images/261e.jpg/view)

In late November 2021, FBI Washington Field Office received Confidential Human Source (CHS) information that BOLO 261-AFO, identified by the FBI using hashtag "#BlackGreyFlannel", was Luke LINTS from Traverse City, Michigan. This CHS was an established source who led a team of open-source researchers who collaborated shortly after January 6, 2021, to identify United States Capitol rioters. This CHS group was motivated by a desire to assist law enforcement regarding the events of January 6, 2021, at the United States Capitol. The CHS did not have personal knowledge of the subjects of reporting, but rather derived the information solely through open-source research. The CHS provided images and video links via Youtube, Reuters, and Propublica, that appear to depict LINTS engaging in a direct physical struggle with law enforcement officers. The CHS provided links to accounts at Linkedin.com, Facebook.com, Youtube.com, and Parler.com, believed to be associated with LINTS.

Statement of Facts – Page 6

Does SA receive financial support from the US government?  Based on its communications with the Government and information sharing, should SA be more fairly considered to be "in agency" with the Government.  How are "tips" generated, received, and processed by SH and are there instances that the government or government agents laundered tips through SH.  Similarly, did anyone from the Government provide instructions to SH to assist in reducing prominence of certain of its suspicious hashtagged actors for any number of reasons including for the purpose of concealing CHS.  Given the unprecedented nature of SH and its close working relationship with the Government, we are obligated to investigate whether the Government's discovery obligations are being skirted through delays by warehousing source information at SH.

### B. MPD OFFICER MUSTAFFA AK'S BODY CAM VIDEO RECORDING FROM TO 3:55 TO 4:05 PM

Metropolitan Police Department Officer Mustaffa Ak's body-worn camera recording from 3:55 PM to 4:05 PM. Other video recordings viewing Officer Ak show that Ak's body-worn camera was recording from 3:55 PM to 4:05 PM based on the light showing on the camera. The camera was located near enough to Nichols to hear what was being said by him and others nearby.

### C. INFORMATION ABOUT AND VIDEO FROM "# RED FACE 45" DANIEL DONNELLY'S "GO PRO" BODY-WORN CAMERA FROM 11 AM TO 5 PM

Daniel Donnelly's "GoPro" body-worn camera from 11 AM to 5 PM. Other videos show that Defendant Nichols was seen in the body-worn camera worn by Daniel Donnelly code-named "Red Face 45" or "Rally Runner" and was seen wearing the camera. Yet the video recording of his "Go Pro" camera is missing from the disclosures and discovery production.

### D. VIDEO FROM DOCUMENTARY FILM-MAKER NICK QUESTED

Videos recorded by Nick Quested on the West side of the Capitol on January 6, 2021, would show Defendant Nichols but also include the audio of conversations between Nichols, other persons, and law enforcement officers. One of the discoveries made just recently is a video showing film-maker Nick Quested standing very near to Defendant Nichols on the West side of the U.S. Capitol, positioned so that Nick Quested's video camera would have both seen and heard Defendant Nichols and events surrounding Nichols, likely including Nichols talking to law enforcement officers, including about members of the crowd being harmed by officers.

### E. DISCLOSURE OF LOCATIONS OF BARRICADES AND "AREA CLOSED" SIGNS AT EXACT TIME OF NICHOLS'S ARRIVAL AT 2:45 PM

All information from its investigation about the existence and survival and state of any signs placing the public on notice of a restricted area as defined in 18 U.S.C. § 1752, *over time* as circumstances changed throughout the day on January 6, 2021, to identify whether Ryan Nichols had effective legal notice on January 6, 2021, when he arrived around 2:45 PM.

Under *Brady*, the Government here must provide any and all photographs, video recordings, witnesses, discussions in police radio recordings, etc., of exactly where any signs were visible to the crowds **_at the time that_** Defendant Nichols arrived at the vicinity of the U.S. Capitol building at around 2:45 PM.  Defendant is entitled to exculpatory evidence as to where signs were **_at that time_** **– not at some other time earlier in the day.**

The Government must identify exactly when and where the Government contends Nichols approached the U.S. Capitol Grounds and the position of any "Area Closed" signs in that location **_at that time_**.  It must identify any and all Government personnel who are witnesses such signs being moved or obscured before Defendant Nichols arrived at the U.S. Capitol, and/or whether USCP personnel ran out into the middle of the crowd and replaced or restored missing signs.

### F. INFORMATION COLLECTED BY THE HOUSE OF REPRESENTATIVES SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6 ATTACK ON THE CAPITOL

Even if a subpoena is required to be authorized, Nichols demands of the Government all information collected by the Select Committee, including an estimated 40,000 to 41,000 hours of video, along with records, phone records, and deposition transcripts.  Nichols is unable to determine from what has been released which items are most relevant, but optimistically assumes that the Select Committee might have decided to index their work.

## G. TRAINING MATERIALS AND MANUFACTURER'S INSTRUCTIONS ON USE OF CROWD-CONTROL GAS USED BY USCP OR MPD, ON JANUARY 6, 2021

The USCP and MPD's training materials and manufacturer's warnings and instructions for all types of crowd control gas used by law enforcement officers on January 6, 2021. While these materials may be protected from public release, Defendant Nichols expects that these training materials will emphasize that various crowd-control gasses can trigger a pharmacological reaction of an extreme aggressor response or rage, particularly in excessive quantities and/or enclosed spaces. Based on such investigations as counsel can undertake so far absent precise identification of the gasses used, either law enforcement officers or demonstrators or both would have been psychologically affected by the overuse and misuse of gas in excessive concentrations and/or enclosed spaces. On one body-worn camera video, a police officer is heard in the West Terrace "tunnel" yelling that the officers "cannot" use the gas "in here" (the tunnel) because it is an enclosed space and that "it will kill people." Admittedly it is reasonably clear that different people react differently to the psychological effects of overuse of crowd control gas. However, Defendant Daniel Dean Egtvedt, for example, appears to have been transformed from a mild, polite office worker in a suit and tie into a violent wild man inside the Capitol as described by one of Nichols' team who knew Egtvedt socially, particularly after being seen wiping spray from his eyes.

## H. FAILURE TO USE CAPITOL BUILDING'S "BIG VOICE" AMPLIFIED PUBLIC ADDRESS SYSTEM TO NOTIFY CROWDS TO LEAVE

All records and documents concerning the use or decision not to use the Capitol building's massive public address system, sometimes nick-named "Big Voice," tell crowds to disperse on January 6, 2021. Video recordings indicate that the U.S. Capitol Police used a massive, incredibly-loud public address system (nick-named "Big Voice") *only after dusk* telling people to leave the

Capitol Grounds, when the sky was completely dark.  Body cam videos show that no one could hear any announcement informing the public that the Capitol grounds and buildings were not available to the public and that crowds should disperse.

**CONCLUSION**

The Court should order the production of the requested documents and records.

Dated: June 21, 2023
Brooklyn, NY

Respectfully submitted,


 /s/ *Bradford L. Geyer*                                    /s/ *Joseph D. McBride, Esq*
Bradford L. Geyer                                          Joseph D. McBride, Esq.
PHV PA 62998                                               Bar ID: NY0403
NJ 022751991                                               THE MCBRIDE LAW FIRM, PLLC
141 I Route 130 South                                      99 Park Avenue, 6th Floor
Cinnaminson, NJ 08077                                      New York, NY 10016
e: radford.geyer@formerfeds.com              e: jmcbride@mcbridelawnyc.com


**CERTIFICATE OF SERVICE**

I hereby certify on this 21st day of June 2023, a copy of the foregoing was served upon all parties

as forwarded through the Electronic Case Filing (ECF) System.

/s/*Joseph D. McBride*
Joseph D. McBride