IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**RYAN TAYLOR NICHOLS,**<br><br>Defendant | Case No. 21-cr-00117-TFH-1 |

### (PROPOSED) DISCOVERY ORDER

Based upon the Defendant Nichols' Motion For Required Disclosure of Potentially Exculpatory Information, it is ORDERED that the Government SHALL:

A. From December 20, 2020 through January 7, 2021, produce all communications, messages, radio traffic, analyses, conclusions, action plans, recommendations, text messages, email messages, including FBI interview Form 302's, FBI Form 1023's, or the like including any threat assessment by the U.S. Capitol Police (USCP), the Federal Bureau of Investigation (FBI), the Secret Service, Metropolitan Police Department of the District of Columbia (MPD) or other law enforcement agencies concerning any reasons for Congress to recess on January 6, 2021.

B. Produce any and all communications, messages, radio traffic, analyses, conclusions, action plans, recommendations, text messages, email messages, including FBI interview Form 302's, FBI Form 1023's, surveillance video, geo-fencing or the like including any threat assessment by the USCP, FBI, the Secret Service, MPD or other law enforcement

1

agencies concerning the presence of pipe bombs found near the Capitol at the Republican National Committee headquarters and Democratic National Committee headquarters on January 6, 2021.

### C. REMAINING UNDISCLOSED SURVEILLANCE VIDEO

The Government shall produce a detailed inventory to the Defense of the 14,000 hours of video turned over to the FBI deconflicted with the video actually received by Defendant Nichols through Evidence.Com clearly indicating and describing the approximately 8,000 hours of surveillance video that is alleged not to have been turned over.

The FBI shall request access to the video files secured by the Speaker of the House for the purpose of comparing it to the 14,000 hours the FBI has received from USCP noting any discrepancies between what the Speaker's Office has stored on its system compared to the 14,000 hours that are reported to have been turned over to the FBI. The Government is the only party in a position to deconflict the state of video production and it alone has the burden of disclosing any and all *Brady* information. Accordingly, it shall provide a report to the Court as to:

1) what video amongst the 14,000 hours of video provided to the FBI has not been provided to the defense.

2) What video held by the Speaker's Office has not been provided to the FBI to provide to defenses.

3) If there is any video that the Government believes SHOULD NOT be disclosed

to the defense it shall provide the Court with proper justifications clearly described.

4) A proposed plan from the government for production.

    D. Produce any and all surveillance video recordings taken from or including 8:00 PM on January 5, 2021, until or including 1:00 PM on January 6, 2021, which camera recordings view the alley between the Capitol Hill Club and the Republican National Committee headquarters and/or the area around the Republican National Committee, which are located diagonally across an intersection from the Capitol South Metro Station and the Canon House Office Building or immediate vicinity (within one block). Note that a single-level parking lot for Congressional staff is located on the same block as the Capitol South Metro station and therefore security camera recordings viewing the parking lot are likely and are likely to have seen the Republican National Committee HQ in the background.

    E. Produce any and all surveillance video recordings taken from or including 8:00 PM on January 5, 2019, until or including 1:00 PM on January 6, 2021, which camera recordings view the Democratic National Committee HQ near Capitol Hill or immediate vicinity (within one block).

    F. Produce all video recordings, plans, reports (especially those prepared prior to January 6, 2021), chats, text messages, social media posts, analyses, radio traffic, instructions from USCP headquarters or MPD leaders concerning (a) how long it would normally take to do a security sweep of the U.S. Capitol building, (b) what steps are involved in general terms, (c) what would have been faster if Defendant Nichols had not been there and voluntarily left hours earlier, (d) whether the number

3

of rooms to be searched would have changed if Nichols had not been there, and (e) what *additional* steps were required before resuming the Joint Session because Ryan Nichols was in or near the Capitol building.

G. **ALL INFORMATION ABOUT THE IDENTITY AND ACTIVITIES OF 1% WATCHDOG, MARCUS DIPAOLA AND OTHER KEY FIGURES WHO CREATED EVENTS TO WHICH MR. NICHOLS WAS RESPONDING**

Produce for the following individuals, some as of yet unidentified, any information relating to activities on January 6, 2021 or related communications, including FBI interview Form 302's and FBI Form 1023's. Any and all payments by any government agency directly to these individuals or paid through intermediaries. Any and all communications between law enforcement agencies and the January 6 Select Committee about these individuals. All communications, payment records, raw investigation files, emails, pretrial services files and probation files regarding these individuals. Please include raw investigation files for any of these individuals who are symbolled assets, regardless of security classification, all confidential informants, all confidential sources whether registered or unregistered and regardless of whether they are paid:

  a. **1% WATCHDOG**

We would respectfully request the Honorable Court to Order the government to produce all communications with or about Mark Bradman or James Randall Taylor or anyone else who was suspected of being 1% Watchdog.

4

### b. MARCUS DIPAOLA AND PROVOCATEURS HE CONFERRED WITH AND FILMED ON JANUARY 6

All information from its investigation about Marcus DiPaola in relation to activities on January 6, 2021 or related communications. "#Redyuppyphotog" having now been identified as DiPaola functioned almost as an official videographer of coordinated suspicious actors who were instrumental at breaching the Capitol grounds in the Northeast and entering the Capitol through the Columbus Doors.[1] Among the provocateurs he filmed that may include undisclosed Confidential Human Sources (CHS) are:

1. **Israel Easterday** (#JamesDeanWannabe) who helps trap Oath Keeper James Dolan on the stairs, holds the only confederate flag visible in the area, sprays chemicals on police and enters during the second opening at 2:38:30 thereafter pulling protestors into the Capitol, and meets provocateurs up stairs who entered through the upper west Senate wing doors. Easterday was not arrested until December 29, 2022 in an investigation that seems primarily driven by raw geofencing rather than humint when Easterday can be seen working closely with associates.[2]

2. **Ricky Christopher Willden** trapped Oath Keeper Dolan on the stairs and pushed him down and sprayed chemicals on police. Willden was not detained until he violated his terms of supervised release twice and was sentenced in August 2022 to two years in prison.[3]

---

[1] https://www.dropbox.com/s/vgfe0w8kj93cy8m/225-3.pdf?dl=0 pages 5-6.

[2] https://www.justice.gov/usao-dc/defendants/easterday-israel

[3] https://www.justice.gov/usao-dc/defendants/willden-ricky-c

3. **Ronald Loerke** (#MaroonPB) and **James Haffner** (#ZZTopPB) were a tactical duo who were identified within days of January 6 by Sedition Hunters but were not arrested until November 30, 2021 and are believed to have been on pretrial release ever since.[4]

4. **#LemonyKickit** and **#LemonZest** remain unidentified even though their behavior would make one suspect they would be high priority that also shows them to confer with provocateurs around them.

5. **#PencilBeardInsider** and **#GooseinGray** remains unidentified but helped remove fencing, broke windows in the Columbus Doors, stole a police shield and shared a joke about a crowbar with **John Sullivan** (JaydenX) that Sullivan should have had no independent knowledge about.

    c.  **ZACHARY JOHNSON**

Zachary Johnson handed Defendant Nichols a spray can of pepper spray as the crowd was being sprayed by police and/or provocateurs.

    d.  **TIMOTHY ALLEN HART**

Hart was one of first individuals to arrive at the Peace Circle in the morning on January 6 and although active in the East.[5]

    e.  **RAY EPPS**

Ray Epps is uncharged and played an organizational and leading role in January 6 and was among the earliest to show up at the Peace Circle.

    f.  **SAM ANDREWS**

---

[4] https://www.justice.gov/usao-dc/defendants/loehrke-ronald

[5] https://www.justice.gov/usao-dc/defendants/hart-timothy-allen

Produce any and all information to the Defense regarding Sam Andrews.

### g. SEDITION HUNTERS

Produce all communications and any payment information between Sedition Hunters and the Government.

H. Metropolitan Police Department Officer Mustaffa Ak's body-worn camera recording from 3:55 PM to 4:05 PM. Other video recordings viewing Officer Ak show that Ak's body-worn camera was recording from 3:55 PM to 4:05 PM based on the light showing on the camera. The camera was located near enough to Nichols to hear what was being said by him and others nearby.

I. Daniel Donnelly's "Go Pro" body-worn camera from 11 AM to 5 PM. Other videos show that Defendant Nichols was seen in the body-worn camera worn by Daniel Donnelly code-named "Red Face 45" or "Rally Runner." Yet the video recording of his "Go Pro" camera is missing from the disclosures and discovery production.

J. Videos recorded by Nick Quested on the West side of the Capitol on January 6, 2021, would show Defendant Nichols but also include the audio of conversations between Nichols, other persons, and law enforcement officers. One of the discoveries made just recently is a video showing film-maker Nick Quested standing very near to Defendant Nichols on the West side of the U.S. Capitol, positioned so that Nick Quested's video camera would have both seen and heard Defendant Nichols and events surrounding Nichols.

K. All information from its investigation about the existence and survival and state of

any signs placing the public on notice of a restricted area as defined in 18 U.S.C. § 1752, <u>*over time*</u> as circumstances changed throughout the day on January 6, 2021, to identify whether Ryan Nichols had effective legal notice on January 6, 2021, when Defendant Nichols arrived around 2:45 PM. Under *Brady*, the Government here must provide any and all photographs, video recordings, witnesses, discussions in police radio recordings, etc., of exactly where any signs were visible to the crowds <u>***at the time that***</u> Defendant Nichols arrived at the vicinity of the U.S. Capitol building at around 2:45 PM.  Defendant is entitled to exculpatory evidence as to where signs were <u>***at that time***</u> **– not at some other time earlier in the day.**  The Government must identify exactly when and where the Government contends Nichols approached the U.S. Capitol Grounds and the position of any "Restricted Area" signs in that location <u>***at that time***</u>.  It must identify any and all Government personnel who are witnesses of any "Restricted Area" signs being moved or obscured before any of the Oath Keeper Defendants arrived at the U.S. Capitol.

L. Even if a subpoena is required to be authorized, Nichols demands of the Government all information collected by the Select Committee, including an estimated 40,000 to 41,000 hours of video, along with records, phone records, and deposition transcripts. Nichols is unable to determine from what has been released which items are most relevant, but optimistically assumes that the Select Committee might have decided to index their work.

M. The USCP and MPD's training materials and manufacturer's warnings and instructions for all types of crowd control gas used by law enforcement officers on

January 6, 2021. While these materials may be protected from public release, Defendant Nichols expects that these training materials will emphasize that various crowd-control gasses can trigger a pharmacological reaction of an extreme aggressor response or rage, particularly in excessive quantities and/or enclosed spaces. On one body-worn camera video, a police officer is heard in the West Terrace "tunnel" yelling that the officers "cannot" use the gas "in here" (the tunnel) because it is an enclosed space and that "it will kill people." The Government is instructed to produce any and all information regarding use and training of "less than lethal" munitions and all communications regarding the same during and in the aftermath of January 6.

### N. FAILURE TO USE CAPITOL BUILDING'S "BIG VOICE" AMPLIFIED PUBLIC ADDRESS SYSTEM TO NOTIFY CROWDS TO LEAVE

All records and documents concerning the use or decision not to use or not to use the Capitol building's massive public address system, sometimes nick-named "Big Voice," to tell crowds to disperse on January 6, 2021 until *only after dusk* telling people to leave the Capitol Grounds, when the sky was completely dark.

### I. CONCLUSION

The Court should order the production of the requested documents and records.

Dated: June 21, 2023
Brooklyn, NY

Respectfully submitted,

| | |
|---|---|
| /s/ *Bradford L. Geyer* | /s/ *Joseph D. McBride, Esq* |
| Bradford L. Geyer | Joseph D. McBride, Esq. |
| PHV PA 62998 | Bar ID: NY0403 |
| NJ 022751991 | THE MCBRIDE LAW FIRM, PLLC |
| 141 I Route 130 South | 99 Park Avenue, 6th Floor |
| Cinnaminson, NJ 08077 | New York, NY 10016 |
| e: radford.geyer@formerfeds.com | e: jmcbride@mcbridelawnyc.com |

## CERTIFICATE OF SERVICE

I hereby certify on this 21st day of June 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ *Bradford L. Geyer*
Bradford L. Geyer