UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**RYAN TAYLOR NICHOLS &**<br>**ALEX KIRK HARKRIDER,**<br><br>Defendants. | Case No. 1:21-cr-117 (RCL) |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO COMPEL**

The United States, by and through undersigned counsel, respectfully opposes Defendant Ryan Nichols' Motion (ECF 244) and Supplemental Motion (ECF 245) to compel production of materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Specifically, in the motion and supplemental motion, the defendant moves to compel the disclosure of (1) the cause of the obstruction of the Joint Session of Congress on January 6, 2021; (2) information about pipe bombs that were placed at points near the Capitol on January 6, 2021; (3) remaining undisclosed surveillance video from the United States Capitol Police (hereinafter, "USCP"); (4) surveillance from the Capitol Hill Club, Republican National Committee Headquarters, and Democratic National Committee Headquarters; (5) information about additional steps required to secure the Capitol following the riot; (6) information about certain individuals; (6) recordings from Metropolitan Police Department (hereinafter, "MPD") Officer Mustafa Ak's body worn camera from between 3:55pm and 4:05pm; (7) video from a specific GoPro camera; (8) video from documentary film maker Nicholas Quested; (8) specific locations of barricades and "Area Closed" signs; (9) information collected by the United States House of Representatives Select Committee to Investigate the January 6, 2021, Attack on the United States Capitol; (10) training materials related to the crowd control gas used by USCP and MPD officers; and (11) information related to

the use of "Big Voice" public address system. These requests are either immaterial or concern information that has already been provided. The Court should therefore deny the motion.

The government is committed to ensuring that exculpatory materials are produced in a comprehensive, accessible, and useable format to the defendant. However, all the materials identified in the defendant's motion to compel and its accompanying supplement are either immaterial, outside of the possession, custody, or control of the prosecution team, duplicative of already provided discovery, or fall outside the scope of Rule 16.

## LEGAL PRINCIPLES REGARDING RULE 16 AND BRADY

Defendant seeks to compel evidence under Rule 16 of the Federal Rules of Criminal Procedure and *Brady*. "The government's *Brady* obligations are separate and distinct from its obligations under Rule 16 of the Federal Rules of Criminal Procedure." *United States v. Flynn*, 411 F. Supp. 3d 15, 28 (D.D.C. 2019).

The government has "an affirmative duty to disclose exculpatory evidence to the defense, even if no request has been made by the accused." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017). In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Badley*, 473 U.S. 667, 676 (1985).

Federal Rule of Criminal Procedure 16, on the other hand, mandates the disclosure of certain enumerated items that are material to the preparation of a defense. *Flynn*, 411 F. Supp. 3d at 28. Under Rule 16, the government must produce documents and objects, including "photograph

books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," so long as two requirements are met. Fed. R. Crim. P. 16(a)(1)(E).

First, documents and objects enumerated in the rule must be "within the government's possession, custody, or control." *Id.* To be within the government's "possession, custody, or control," the materials must be within the prosecutor's direct control or "maintained by other components of the government which are 'closely aligned with the prosecution.'" *United States v. Libby*, 429 F. Supp. 2d 1, 6 (D.D.C. 2006) (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). This limitation ensures that courts do not adopt a "monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (applying a narrow view of government control of materials in the *Brady* context) (internal quotation and citation omitted). Tangential investigation of a matter by another arm of the federal government does not automatically place records from that investigation into the control of the prosecution team. *See, e.g.*, *United States v. Chalmers*, 410 F. Supp. 2d 278, 289–90 (S.D.N.Y. 2006) (declining to incorporate several agencies outside of the Department of Justice into the prosecution team for Rule 16 purposes).[1]

Second, documents enumerated in the rule must be: (1) material to preparing the defense, (2) intended to be used in the government's case-in-chief at trial, or (3) obtained from or belonging to the defendant. Fed. R. Crim. P. 16(a)(1)(E). To prove materiality under the first factor, defendant must make a preliminary showing that the information sought is in fact material by demonstrating that the document or object would "enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996). The defense

---

[1] The government is also aware of, and intends to fully comply with, its *ongoing* discovery obligations.  To the extent the government states that an otherwise discoverable document or item is not within its possession, custody, or control as of this filing and then later obtains it, the government will produce it.

**Government's Response to**
**Defendant's Motion to Compel—Page 3**

must also show that the discovery sought would refute the government's case in chief. *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000). The document or object must bear more than "some abstract relationship to the issues in the case." *Libby*, 429 F. Supp. 2d at 7.

Courts impose such limits on defendants because the rule does not require a "broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." *Jencks v. United States*, 353 U.S. 657, 667 (1957) (quoting *Gordon v. United States*, 344 U.S. 414, 419 (1953)). Moreover, Rule 16 does not convey an entitlement to discovery that is duplicative of documents and objects already provided. *See e.g.*, *United States v. Sutton*, No. CR 21-0598-1 (PLF), 2022 WL 3134449, at *6 (D.D.C. Aug. 5, 2022); *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 346121, at *5 (D. Conn. Feb. 4, 2008).

## ARGUMENT

As the defendant seeks a litany of different and distinct materials, we respond to each demand in kind. For the factual and legal reasons stated below, each of the defendant's demands should be denied.

**I.    Discovery related to other potential causes of the certification delay on January 6 is immaterial because it does not tend to exculpate the defendant.**

The defendant's motion seeks to compel disclosure of "when exactly" and "for what threat exactly" the Congress recessed on January 6, 2021. ECF 244 at 9. The defendant argues that the government must disclose this material because "it is impossible for Nichols to disrupt something at **2:13 PM** when Nichols arrived at **2:45 PM**." ECF 244 at 21 (emphasis in original). To support this argument, the defendant makes inaccurate assertions about the discovery of pipe bombs at the headquarters of the Democratic National Committee and the Republican National Committee at approximately 1:00 p.m. ECF 244 at 10-11. The defendant additionally requests materials related

to the process for securing the Capitol and its accompanying grounds after the rioters had been forced to dissipate. ECF 244 at 11-12. The defendant is wrong in both his legal arguments and the facts upon which he recklessly relies upon in support.[2] Furthermore, he fails to establish that the information is relevant—let alone favorable—to his case.

Factually, the defendant's argument is woefully insufficient. Building upon conjecture regarding the source of the pipe bombs, which is not relevant to his case, the defense erroneously conflates separate Capitol Hill evacuations on January 6, 2021.

Certain buildings in the U.S. Capitol complex were evacuated starting at 1:11 p.m. on January 6, 2021, due to the discovery of an explosive device at the RNC headquarters. However, that did not include the Capitol itself, and the joint session remained ongoing for well over an hour after the initial evacuation. Similarly, then-Senator and Vice President-Elect Kamala Harris' evacuation from the DNC, where an explosive device was discovered at 1:07 p.m., also did not cause the recess of the joint session that was occurring at the Capitol. What caused the recess of

---

[2] The defendant's motion does not rely on any of the evidence he has received in discovery that would be relevant to an inquiry into the reasons the presiding officers of the two chambers—Senator Grassley at 2:13 p.m. in the Senate chamber and Representative McGovern at 2:29 p.m. in the House chamber, *see* 167 Cong. Rec. S18, H85 (daily ed. Jan. 6, 2021)—declared the respective Houses in recess subject to the call of the chair. This includes records for the MPD and USCP that are contemporaneous to the discovery of the explosive devices, the breach of the Capitol Building, and the recess of each chamber, such as radio communications, recorded phone calls, text messages, and emails, as well as body-worn camera and surveillance footage. Additionally, the defense possesses records drafted after January 6 in discovery, such as after-action reports and investigative reports detailing the work of each police department's internal affairs bureaus. Moreover, there are records in discovery created by the FBI that may reflect the communications or actions that led to the decision to recess each chamber. These records include memoranda of interviews of relevant personnel, including select USCP employees such as plain-clothes officers who were in the House and Senate chambers; the U.S. Secret Service; the House of Representatives, including individuals who work for the Parliamentarian, Sergeant at Arms, and Clerk; and the Senate, including individuals who work for the Secretary. Finally, publicly available records, including the Congressional Record and the C-SPAN feeds of each chamber, also show the official actions in each chamber leading up to and including the recesses. The defense also has in its possession, as part of discovery, each chamber's official time-stamped video feed while that chamber was in session.

**Government's Response to**
**Defendant's Motion to Compel—Page 5**

the Senate at 2:13 p.m. is what the staffer told U.S. Senator James Lankford at the time: rioters had breached the Senate Wing Door and were, at that very moment, climbing through broken windows. This is further reinforced by the fact that the alert from USCP at 2:10 p.m. cited danger on the West Front and that the alert at 2:17 p.m. cited a security threat within the building and urged occupants to hide and keep quiet. Neither these geographic descriptions or the precautions cited have anything to do with explosives that had been located more than an hour prior and were already contained. Even a cursory review of the evidence already available to the defense in discovery would confirm this fact.

The defendant's legal arguments fare no better. Even if evidence existed tending to show that other events caused a disruption to or additional delay in congressional business, that evidence is not material. Under 18 U.S.C. § 1512(c)(2)), the government must prove that a defendant corruptly "otherwise obstruct[ed], influenc[ed], or imped[ed] any official proceeding" or attempted to do the same. Although proof of but-for causation is sometimes required of the government, duplicative causation applies when, as here, multiple independently sufficient causes exist. *See Burrage v. United States*, 571 U.S. 204, 214–15 (2014); CAUSATION, Black's Law Dictionary (11th ed. 2019). Duplicative causation is the relevant standard for Section 1512 because of the nature of riots generally and the facts specific to the Capitol riots on January 6, 2021. The delay in the certification had both a single cause, the violent riot, and thousands of causes, the individual rioters. No one rioter caused the recess of Congress or the subsequent delay in the proceedings and each contributed in part to the ultimate delay in the certification by functioning as a member of a riotous, ever encroaching mass of people who engaged in trespassing, destruction of property, violence, and threatening lawmakers and staff. Duplicative causation is the only standard that logically fits the facts of the January 6 Riot at the United States Capitol.

In *United States v. Rivera*, No. 21-cr-060 (CKK), 2022 WL 2187851 (D.D.C. June 17, 2022), the defendant challenged the application of 18 U.S.C. § 1752 to the facts of his case. The defendant argued that he did not "in fact" cause the certification delay "because both Houses of Congress had recessed by the time he had entered the Capitol itself." *Id.* at *6. Judge Kollar-Kotelly rejected this argument because the evidence at trial showed that "even the presence of one unauthorized person in the Capitol is reason to suspend Congressional proceedings." *Id.* She concluded that the government was not required to prove that the defendant was the but-for cause of the delay, because doing so would require "read[ing] terms into statutory provisions that are not there." *Id.* Section 1752(a)(2), she found, was "aimed at protests involving several people who collectively disrupt proceedings but where no individual person's presence or actions would *alone* disrupt proceedings." *Id.* at *6 n.15. In finding Rivera guilty, Judge Kollar-Kotelly correctly reasoned, "[j]ust as heavy rains cause a flood in a field, each individual raindrop contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption." *Id.* at 9. As with the Section 1752 charge in *Rivera*, the non-restrictive language of Section 1512(c)(2) contemplates that an official proceeding may be "obstruct[ed], influenc[ed], or imped[ed]" by more than one cause. Requiring proof of but-for causation would, as in *Rivera*, necessitate "read[ing] terms into statutory provisions that are not there." *Id.*

Applying the duplicative causation standard here, Rule 16 applies only to discovery related to the delay caused by the defendant's conduct. The government has produced that evidence. This case presents the question of whether the defendant intended to obstruct the certification of the 2020 Presidential Election when he entered the restricted area around the Capitol on January 6,

sprayed officers in the Lower West Tunnel with a chemical irritant dispersal device that had been stolen from MPD officers by other rioters, and then entered the Capitol itself. The defendant, as one of thousands at the Capitol and one of hundreds assaulting law enforcement, was an independent and sufficient cause to delay the proceedings and thus satisfy his objective: obstruction of the certification of the 2020 election. Congress could not reconvene while rioters were at, in, or surrounding the Capitol, and the defendant's violent acts against law enforcement officers outside the Capitol and his breaking into the Capitol impeded the official proceeding, regardless of his location at the exact moment that Congress initially recessed. *Id.* at 8-10. Even if the defendant could identify any number of additional potential causes to the delay, the discovery would do nothing to rebut the inculpatory evidence already provided to the defense. Therefore, the discovery sought is not material because it does not refute the government's case. Moreover, it is not *Brady* material, because it is not favorable to defendant.

**II.     The defendant's demand for additional surveillance footage that is not in the government's possession is speculative.**

    **A.     The defendant's demand for additional surveillance from the United States Capitol Police is untethered to the facts of this case.**

The defendant next demands that the government provide additional footage from the United States Capitol Police's closed-circuit video (CCV) surveillance. The United States has previously addressed why the defendant's demand for additional CCV surveillance footage is uncompelling. *See* ECF 218. Nothing has changed in the time since the government first responded to the defendant's demand for additional CCV surveillance footage to now warrant such disclosure.

The government has provided the defendant with both global[3] and case specific discovery. For his case specific discovery, the government has made more than twenty discovery productions. These productions began less than two months after the defendant's arrest and have continued on a rolling basis ever since. In these productions, the government has made available specific CCV cameras, which include the period of 2:00 pm to 5:00 pm on January 6, 2021, in the Lower West Tunnel (the area in which the defendant committed many of the crimes alleged by the government and indicted by the grand jury). The government has further made available body-worn camera footage from 111 officers who might have encountered the defendant near the Lower West Tunnel and provided numerous open-source videos ranging in length from a minute to more than an hour. In providing such open-source materials, the government even provided specific timestamps where the defendant is viewable in those videos. This case is also not one where many different cameras might need to be reviewed to see a defendant's prolonged movements throughout the Capitol over a lengthy period of time. Rather, the defendant entered the Capitol by climbing in through a broken window of an office suite. He stayed within that office suite, and the interior of the suite is not captured by CCV video surveillance. The vast majority of the defendant's conduct at the Capitol occurred outside the building. Any camera showing his movements on the exterior of the building has already been disclosed.

---

[3] As in all January 6 cases, the United States has provided voluminous discovery in this case. As of June 19, 2023, 6, 2023, over 5.83 million files (8.27 terabytes of information) have been provided to the defense Relativity workspace. These files include (but are not limited to) the results of searches of 813 digital devices and 434 Stored Communications Act accounts; 6,541 FBI FD-302s and related attachments (FD- 302s generally consist of memoranda of interviews and other investigative steps); 507 digital recordings of subject interviews; and 187,341 (redacted or anonymous) tips. Over 30,000 files that include body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies have been shared to the defense evidence.com video repositories. *All* of this information is accessible to the defense, as well as camera maps and additional tools that assist any defense counsel with conducting their own searches for information that they might believe is relevant.

**Government's Response to**
**Defendant's Motion to Compel—Page 9**

Subject to some exclusions, such as evacuation footage and cameras depicting certain sensitive areas, the defendant, like all January 6 defendants, has long had access to nearly all exterior CCV surveillance, interior Capitol footage, and Capitol Visitor Center footage from January 6, 2021 between 12:00 p.m. and 8:00 p.m. His counsel has been provided maps generally depicting the location of CCV cameras. To the extent the defendant has identified a camera or angle that necessitates further probing, the government has always been and continues to be ready and willing to assist the defense. To date, no such requests have been made in this case.

Furthermore, the defendant's arguments about additional CCV surveillance and its contents that members of a different branch of government may have made available to certain individuals is based in speculation. First, the United States does not know the extent of any material that a member of the legislative branch purportedly provided to other individuals. It does not control what any Member of Congress has, is, or will provide to another person. Second, the defendant offers no non-speculative reason to believe that any such video footage will bear in any material way on the evidence in his case. As previously described, the indictment in this case involves allegations of violent conduct that occurred at on the West Front of the Capitol and in and around the Lower West Tunnel, over the course of approximately four hours, captured on limited body-worn cameras and CCV. Such videos have been provided as part of discovery in this case. While the government does not want to similarly speculate in a wide-ranging manner, it is not remotely clear what additional evidence could be found that would undercut whether the defendant assaulted law enforcement, obstructed justice, or unlawfully trespassed on the date in question. The defendant is demanding material from an entirely separate political branch, without any meaningful support for what it purports to represent. This is exactly the type of fishing expedition that neither the Rules of Criminal Procedure nor the Constitution authorizes.

As then-Chief Judge Howell has noted, the Government's discovery obligations in a criminal case are properly limited to materials that are potentially relevant to a defendant's case in the government's possession or control, and the government is not obliged to acquire materials possessed or controlled by others. *See United States v. Anthony Williams*, 21-cr-377, ECF No. 108, at 6 (citing *United States v. Meija*, 488 F.3d 436, 444-45 (D.C. Cir. 2006) (rejecting defense argument that government's discovery obligations extended to securing potentially relevant material held by a foreign government)); *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (observing that "the government cannot be required to disclose evidence that it neither possesses nor controls"); *United States v. Weisz*, 718 F.2d 413, 436 (D.C. Cir. 1983) (noting that the "duty of disclosure attaches in some form once the [g]overnment has first gathered and taken possession of the evidence in question" (emphasis in original) (quoting *United States v. Brant*, 439 F.2d 642, 644 (D.C. Cir. 1971)); *see also United States v. Liddy*, 542 F.2d 76, 83 (D.C. Cir. 1976) (declining to reach the question whether the Jencks Act or *Brady* principles reach "materials in the possession of Congressional Committees"). The defendant's request lacks factual and legal support.

    **B.**    **The surveillance from the Capitol Hill Club, Republican National Committee Headquarters, and Democratic National Committee Headquarters is irrelevant.**

The defendant's demand for surveillance from organizations outside the government should similarly be denied. The materials requested are irrelevant to the case against the defendant in this case. The defendant's stated reason for demanding these documents is that they will "show that [he] did not obstruct the Joint Session of Congress, but rather the reaction to the discovery the (*sic*) pipe bombs and the risk of there being others on the Capitol grounds was the reason or primary reason for the USCP to make the decision to recommend a recess." ECF 244 at 11. For the reasons stated above, this argument is both legally and factually deficient. The defendant's presence in the

**Government's Response to**
**Defendant's Motion to Compel—Page 11**

restricted area around the Capitol on January 6, his entry into the Capitol building, and his violent acts outside of the Lower Tunnel each was a sufficient and independent cause for the continued delay of the proceeding to certify the Electoral College count. *Rivera*, No. 21-cr-060 (CKK), 2022 WL 2187851 at *6, *9. These requested items would bear no more than "some abstract relationship to the issues in the case." *Libby*, 429 F. Supp. 2d at 7.

### C.   Discovery related to certain named and unnamed individuals.

The defendant demands production of materials related to fifteen individuals and one group who he alleges were acting as government agents on January 6, 2021, or, he claims, have since cooperated with the government's investigation into the facts of the Capitol Riot and the prosecution of related cases. The government is aware of no individual who was acting on behalf of the government as an "agent provocateur" on January 6. The government is fully aware of its obligation to disclose information that is material and favorable to the defendant. *Brady*, 373 U.S. 83; *Giglio v. United States*, 405 U.S. 150 (1972). The government is further aware that information about informants "must be disclosed whenever the informer's testimony may be relevant and helpful to the accused's defense." *United States. v. Gaston*, 357 F.2d 77, 84 (D.C. Cir. 2004) (quoting *Roviaro v. United States*, 353 U.S. 53, 61-62 (1953)). Regardless, the government provides the following information about the individuals identified[4] in the defendant's motion:

1.   1% Watchdog

The United States is aware of an individual using the name "1% Watchdog" on the voice communication application Zello. The government has disclosed material about this individual in

---

[4] The government would be remiss to not point out the reckless nature of the conjecture the defendant bombastically alleges in his motion. Whether or not a person was, is, or will be a person who works for or speaks to the government, such careless rhetoric could seriously harm a person's safety and reputation.

**Government's Response to**
**Defendant's Motion to Compel—Page 12**

discovery and in connection with the *United States v. Rhodes et al.*, 22-cr-15 (APM).[5] The government has complied and will continue to comply with its discovery obligations concerning this individual.

   2.  Marcus DiPaola

The United States is aware of an individual by this name. The government has complied and will continue to comply with its discovery obligations concerning this individual.

   3.  Israel Easterday

The United States is aware of an individual by this name. This individual is being prosecuted in connection with their participation in events at the United States Capitol on January 6, 2021. *See* 22-cr-404 (JEB). The government has complied and will continue to comply with its discovery obligations concerning this individual.

   4.  Ricky Christopher Willden

The United States is aware of an individual by this name. This individual was prosecuted in connection with their participation in events at the United States Capitol on January 6, 2021 and on August 5, 2022, was sentenced to two years in federal prison. *See* 21-cr-423 (RC). The government has complied and will continue to comply with its discovery obligations concerning this individual.

   5.  Ronald Loehrke and James Haffner

The United States is aware of individuals by these names. These individuals are being prosecuted in connection with their participation in events at the United States Capitol on January

---

[5] The government notes that this disclosure was made specifically to Mr. Geyer—who represented a defendant in that case—via email on August 22, 2022. However, the history of counsel's prior demands to and prior receipt of information from the government on this topic were omitted from the motion and supplemental motion in this case.

**Government's Response to**
**Defendant's Motion to Compel—Page 13**

6, 2021. *See* 21-mj-672. The government has complied and will continue to comply with its discovery obligations concerning these individuals.

      6.      #LemonyKickit, #LemonZest, #PencilBeardInsider, and #GooseinGray

The government has complied and will continue to comply with its discovery obligations concerning these requests.

      7.      John Sullivan (aka, "Jayden X")

The United States is aware of an individual by this name. This individual is being prosecuted in connection with their participation in events at the United States Capitol on January 6, 2021. *See* 21-cr-78 (RCL). The government has complied and will continue to comply with its discovery obligations concerning this individual.

      8.      Zachary Johnson[6]

The United States is aware of an individual by this name. This individual is being prosecuted in connection with their participation in events at the United States Capitol on January 6, 2021. *See* 22-cr-11 (RJL). The government has complied and will continue to comply with its discovery obligations concerning this individual.

      9.      Timothy Allen Hart

The United States is aware of an individual by this name. This individual is being prosecuted in connection with their participation in events at the United States Capitol on January 6, 2021, *see* 21-cr-540 (PLF), and pled guilty to a violation of 18 U.S.C. § 231(a)(3) on April 26,

---

[6] The Defendant asserts that it is "strange and inexplicable" that Johnson handed a pepper spray cannister to Nichols at the mouth of the Lower West Tunnel because "Johnson could have just sprayed the canister himself." ECF 244 at 15. The Defendant then goes on to speculate, "Why would Johnson hand it to Nichols under any scenario?" *Id*. The video evidence that the government has disclosed to the defendant shows the defendant signaling to Johnson to hand him the canister that the defendant then uses to spray a stream of chemical irritant into the Lower West Tunnel, striking many police officers.

**Government's Response to**
**Defendant's Motion to Compel—Page 14**

2023. This individual is scheduled to be sentenced on July 27, 2023. The government has complied and will continue to comply with its discovery obligations concerning this individual

        10.      Ray Epps

The United States is aware of an individual by this name. The government disclosed material about this individual in Global Discovery Production No. 14 and will continue to comply with its discovery obligations concerning this individual.

        11.      Sam Andrews

The United States is aware of an individual by this name. The government has complied and will continue to comply with its discovery obligations concerning this individual.

        12.      Sedition Hunters

The government is aware of this group. The government has complied and will continue to comply with its discovery obligations concerning this group.[7]

**III.    The Defendant's demand for other video material has either already been produced or is not in the government's possession.**

    **A.    Nicholas Quested**

The defendant demands that the government produce all materials from Nicholas Quested, a documentary filmmaker who was present at the Capitol on January 6, 2021. ECF 244 at 16-17. The government has already produced all of the materials from Mr. Quested in its possession. Moreover, Mr. Quested is a private citizen and a member of the media. Any material that he captured that day (and not obtained by the government) is not in the government's custody or control.

---

[7] Even assuming, arguendo, that any of the individuals were associated with Sedition Hunters or have cooperated in some way with law enforcement, none of the defendant's demands would bear fruit as to whether the defendant did or did not commit the crimes alleged.

### B. A Specific GoPro Camera

The defendant demands that the government produce to him a GoPro camera another rioter who was present at the Lower West Tunnel. ECF 244 at 16. This material is not in the government's possession.

### C. The government has produced all the footage from MPD Officer Mustafa Ak's body worn camera.

The defendant seeks to compel production of MPD Officer Mustafa Ak's body worn camera from the time period of 3:55 p.m. to 4:05 p.m. on January 6, 2021. The defendant contends that this footage "will show Officer Ak drenching Defendant Nichols with tear gas and other officers yelling at him to stop, and saying 'You're going to kill him.'" ECF 244 at 15-16. First, this contention is untrue. At no point in the 111 body worn cameras from the Lower West Tunnel that the government has produced in this case can other officers be heard yelling that Officer Ak's actions in the tunnel were "going to kill" anyone. Moreover, none of the 111 body worn cameras that have been produced nor any of the CCV surveillance footage showing the entire period of 2:00 p.m. to 5:00 p.m. in the Lower West Tunnel shows Officer Ak doing anything even remotely resembling "drenching" the defendant.[8] Second, the government has produced to the defendant all of the footage that it has obtained from Officer Ak's body worn camera.[9]

---

[8] The CCV footage shows Officer Ak using a small can of aerosol to direct a burst of chemical irritant in the direction of the crowd, including the defendant. However, the wind causes this small cloud of chemical irritant to dissipate back into the tunnel in the direction of the officers almost instantly after Officer Ak deploys it.

[9] The government has produced two body worn cameras from Officer Ak. The first is a recording that begins on January 6, 2021, at 1:20:06 p.m. and runs until 3:32:36 p.m. The second video begins at 4:03:17 p.m. and runs until 4:18:09 p.m. These are the only two videos from Officer Ak's body worn camera in the Evidence.com database and both have long since been produced to the defendant in both global and case specific discovery. Upon information and belief, the Metropolitan Police Department has produced every body worn camera that it has relating to the events of January 6, 2021, at the United States Capitol. The body worn camera footage that the defendant seeks from the period of 3:55 p.m. to 4:03 p.m. does not appear to exist. If the defendant wishes to call Officer Ak and question him about this period of time, then he may do so at trial.

IV. **The government has already produced evidence of barriers and "Area Closed" signs around the Capitol grounds on January 6.**

The defendant seeks to compel the production of locations of barricades and "Area Closed" signs at the time of the defendant's arrival. ECF 254 at 14. Specifically, he seeks to compel the production of evidence related to the status of barriers around the Capitol grounds. The defendant seeks "any and all photographs, video recordings, witnesses, discussions in police radio recordings, etc., of exactly where any signs were visible to the crowds ***at the time that*** Defendant Nichols arrived at the vicinity of the U.S. Capitol building." ECF 245 at 13 (emphasis in original).

As a threshold matter, the government notes that it has labored to provide the defendant with all known video footage from his time in the restricted perimeter on January 6, including from when and where he first crossed into the restricted perimeter. The government has produced to the defendant all of the video footage to this effect that it has in its possession. If and when the government locates any footage that is precisely responsive to the defendant's request, then it will immediately provide it to the defendant.

However, the requested records are largely duplicative of surveillance footage from the Capitol grounds, which has already been produced in both the defendant's case specific discovery and in global discovery. To the extent that the defendant seeks additional or specific information relating to "the state of the signs" and other barriers around the Capitol at particular times throughout the day, that evidence can be gleaned from review of the video footage that the government has already produced. And to the extent the defendant seeks work product regarding the government's interpretation of when bike racks were torn down by rioters they are not entitled to that information. *See Flynn*, 411 F. Supp. 3d at 29 ("Under Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case.") (quoting *United States v.*

**Government's Response to
Defendant's Motion to Compel—Page 17**

*Armstrong*, 517 U.S. 456, 463 (1996)). As such, the additional discovery sought would be duplicative of evidence that the government has already provided.

V.      **Materials created by the House Select Committee to Investigate January 6.**

The defendant's next baseless demand is for the entire record of the House Select Committee to Investigate January 6 (HSC) to be provided to him, including "investigation depositions, closed hearing transcripts, informal interviews, and interviews notes for anyone the committee stated it has taken testimony from under oath." ECF 244 at 24. The transcripts and associated exhibits, and certain additional materials, were made public by the HSC and remain publicly available.[10] As with all of the defendant's discovery requests, if the defendant can articulate a request for a specific document or for materials on a specific topic—as opposed to the "entire record" of the House Select Committee—the government will look for and produce any responsive and discoverable material in its possession. At this juncture, the Government will review any materials in its possession from the House Select Committee and, if there is anything contained in those materials that must be disclosed to the defendant under Rule 16 or the Constitution, will provide it to the defendant promptly.

But only evidence that is "within in the government's possession, custody or control" must be disclosed to the defendant. Fed. R. Crim. P. 16(a)(1)(E). These materials must be within the prosecutor's direct control or "maintained by other components of the government which are 'closely aligned with the prosecution.'" *Libby*, 429 F. Supp. 2d at 6 (quoting *Brooks*, 966 F.2d at 1503) *see also Liddy*, 542 F.2d at 83 (declining to reach the question whether the Jencks Act or *Brady* principles reach "materials in the possession of Congressional Committees").

---

[10] *See* SELECT JANUARY 6TH COMMITTEE FINAL REPORT AND SUPPORTING MATERIALS COLLECTION, *available at* https://www.govinfo.gov/collection/january-6th-committee-final-report?path=/GPO/January%206th%20Committee%20Final%20Report%20and%20Supporting%20Materials%20Collection

This limitation ensures that courts do not adopt a "monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *Avellino*, 136 F.3d at 255. Investigation of a matter by another arm of the federal government does not automatically place records from that investigation into the control of the prosecution team. *See, e.g.*, *Chalmers*, 410 F. Supp. 2d at 289–90 (declining to incorporate several agencies outside of the Department of Justice into the prosecution team for Rule 16 purposes); *Meija*, 488 F.3d at 444-45; *Marshall*, 132 F.3d at 68; *Weisz*, 718 F.2d at 436. To the extent that investigative materials used and created by Congress in connection with the events of January 6 are not in the possession of the United States Attorney's Office for the District of Columbia, they are not subject to disclosure.

However, the materials the defendant seeks are irrelevant to his case. Congress, a separate branch of government from the U.S. Attorney's Office, conducted an investigation into the totality of the events of that day. It did not conduct an investigation into the specific roles Ryan Nichols and Alex Harkrider played on January 6, 2021.

**CONCLUSION**

For the foregoing reasons, the defendant's motion and supplemental motion to compel discovery under *Brady v. Maryland* should be denied in full.

                                                    Respectfully submitted,

                                                    MATTHEW M. GRAVES
                                                    United States Attorney
                                                    D.C. Bar No. 481052

By:    *s/ Sean P. McCauley*
          SEAN P. McCAULEY
          Assistant United States Attorney
          New York Bar No. 5600523
          United States Attorney's Office
          For the District of Columbia
          601 D. Street, NW
          Washington, DC 20530
          Sean.McCauley@usdoj.gov

          DOUGLAS B. BRASHER
          Assistant United States Attorney
          Texas State Bar No. 24077601
          Federal Major Crimes – Detailee
          1100 Commerce Street, Third Floor
          Dallas, TX 75242
          douglas.brasher@usdoj.gov

          SARAH W. ROCHA
          Trial Attorney
          D.C. Bar No. 977497
          219 S. Dearborn Street, Fifth Floor
          Chicago, IL 60604
          sarah.wilsonrocha@usdoj.gov