IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RYAN TAYLOR NICHOLS,**<br><br>Defendant | Case No. 21-cr-00117-1 (RCL) |

**REPLY TO GOVERNMENT'S RESPONSE [at ECF 255]
TO ORDER OF THE COURT**
*[Relating To Defendant's Motions To Compel]*

I.   **INTRODUCTION**

Defendant RYAN TAYLOR NICHOLS ("Nichols"), through undersigned counsel, Joseph McBride, Esq. and Bradford L. Geyer, Esq. presents this Reply to the Government's Response to the Order of the Court entered at ECF Dkt. # 254 on August 31, 2023.

The Defendant had filed a motion to compel disclosure at ECF Dkt. #244 and his supplemental motion to compel "Motion for Required Disclosure of Potentially Exculpatory Information" on June 20, 2023, entered at ECF Dkt. # 244 asking this Court to enter an Order that the U.S. Government disclose potentially exculpatory information and/or information favorable to the Defendant under Rules 6(e)(3)(C) and 16(a)(1)(A) of the Federal Rules of Criminal Procedure, Rule 16 of the same, *Brady v. Maryland,* 373 U.S. 83 (1963) and progeny, and Nichol's Due Process rights under the U.S. Constitution.

The Government entered a first Opposition at ECF Dkt. #247. The Defendant entered his Reply to the Opposition at ECF Dkt. #351 on July 19, 2023.

The Court issued an order on August 31, 2023, at ECF Dkt. #254. The Court's Order

1

methodically identified clarification that the Court needed to be able to evaluate the motion and the Government's disclosure. The Order explicitly requires more information to evaluate the Defendant's motions. The Order is not a decision on those motions yet.

The Government entered its response to the Court's order on September 14, 2023, at ECF Dkt. # 255. The Defendant is replying now after requesting a few extra days to reply.

## II.     LEAVE REQUESTED TO FILE REPLY

Initially, one wonders if the Government's Response at Dkt. #255 is the type to which the Defendant is entitled to file a Reply. The defendant separately requests leave. Under these circumstances, the defendant interprets the Government's Response as a supplemental Opposition in response to the Court's query seeking clarification. Therefore, Defendant believes that Defendant should be able to respond with a supplemental Reply to what is, in effect, the Government's supplemental Opposition.

Technically, replies to oppositions to motions are supposed to serve a limited purpose. Here, for space, Defendant will attempt only a point-by-point clarification rather than a smooth narrative as a complete presentation.

## III.    ARGUMENT IN REPLY

Far from a fishing expedition, our outstanding discovery requests focus on what went into Mr. Nichols's decision to go to Washington, DC, the conditions that permitted him to walk unobstructed onto Capitol grounds, and what he observed at the mouth of the tunnel. While taking selfies, Mr. Nichols, a Marine Corps veteran and search and rescue specialist, observed troublesome and concerning activities that prompted him to investigate the tunnel entrance.

Mr. Nichols has always sought to accept responsibility for his actions and will continue to do so. As his legal counsel, however, we must pursue all outstanding discovery requests. Especially ones that—in our view, are likely to impact a Court's or a jury's assessment of the wrongfulness of his actions.

Our theories and arguments are not new; our asks for information are neither. What's new is the mountain of corroborating evidence and firsthand accounts corroborating much of what we have been saying since day one in this case. Namely, that government-affiliated persons were in the chatrooms before January 6th and on the ground on January 6th, and we deserve to know how they contributed to that terrible day. One only needs to look at Steven D'Antuono's admission to Congress that not only were Confidential Human Sources on the ground on January 6th, but he has no real idea of their number or what they were doing that day. Or Capitol Police Chief Steven Sund's remarks about January 6th being entirely unavoidable. Or the videos of undercover MPDC Officers encouraging protestors to approach and enter the Capitol on January 6th.

In 2021, we gave this Honorable Court advanced notice of our intent to proffer an entrapment defense in this case. Since then, we have asked for information regarding videos that we believe may be exculpatory and related to persons such as 1% Watchdog, who the January 6 Committee featured, and an alleged journalist named Marcus DiPaola. We have argued that 1% Watchdog and DiPaola were instrumental in "wrangling" Mr. Nichols and potentially hundreds of others to go to the Capitol on January 6, 2021. Mr. Nichols deserves to know if 1% Watchdog, Marcus DiPaola, and others we have named were, in any way, affiliated with, working alongside, and/or under the direction of any Government agency—because if true, Mr. Nichols could have an entrapment defense. This matter might not even see a jury.

3

We also know that the Capitol grounds were marked in the morning. Still, by the time Mr. Nichols made it to the Capitol, the fencing and barriers had all been removed, and there was a festival environment and a happy crowd of thousands on his approach to the tunnel. What role did the federal government, the DC government, Capitol police or undercover assets play in creating this confusing sight picture and context?[1] Who prepared the grounds so that thousands could walk unobstructed onto the grounds believing they had the right to be there? If government agents were involved in this elaborate preparation, that could again result in acquittals or dismissals.

The potential that this drumming behavior could have been engaged in by the government is no crackpot suspicion. Just last week, three defendants were acquitted by a jury in the Governor Whitmer case[2], which involved unorthodox government instigation of a half-baked plan to attack a governor. Meanwhile, anomalies hover over the Jan6 evidentiary record and one wonders if the next string will unravel Grandma's very ugly sweater. Since our last filing, new filings were made in an unrelated case that suggest more extensive participation by Antifa[3] and shows police may have participated or tacitly assisted or approved of wrongful conduct.[4] Much of this evidence has been suppressed from review through crowd-sourcing prevention, where the government has

---

[1] Former Capitol Police Chief Steven Sund testified that no one told him about the undercover assets. https://x.com/McBrideLawNYC/status/1704258148951871837?s=20

[2] Jury Acquits 3 in Michigan Accused of Aiding Plot to Kidnap Gov. Gretchen Whitmer - The New York Times https://www.nytimes.com/2023/09/15/us/michigan-whitmer-plot-acquittal.html; https://x.com/FreeStateWill/status/1641518002704138241?s=20

[3] Also with missing video. https://x.com/stephenehorn/status/1706334079963021425?s=20; https://www.zerohedge.com/political/antifa-discussed-plans-firebomb-federal-buildings-jan-6-court-filing-contends; https://x.com/FreeStateWill/status/1703796511560097989?s=20; https://x.com/FreeStateWill/status/1702532947482485235?s=20

[4] https://x.com/stephenehorn/status/1700263254755537016?s=20
https://x.com/FreeStateWill/status/1702543544370544906?s=20
https://x.com/FreeStateWill/status/1693608751234752746?s=20

forced every defense to be an island.   Outside the District, Americans look aghast at the prosecutorial resources directed at a protest that spilled into a riot when similar riots weren't treated with the same prosecutorial zeal.[5]

### A. Government Overlooks that a Protective Order is in Place in This Case

While the Court did order affidavit(s) to illuminate the issues, and the Government did provide an affidavit and information in response, in substance the Declaration by Thomas A. DiBlase, General Counsel of the U.S. Capitol Police ("USCP") (which was apparently not written exclusively for this case[6]) is mostly inapposite because it overlooks the existence of the Protective Order already entered in this case with regard to disclosures of evidence not already in the Defendant's possession which the Government designates as Sensitive or Highly Sensitive.[7]  For example, on Page 3 DiBlase in a largely standard presentation discusses how security camera video recordings will not be released as evidence in DUI cases (presumably on bordering roads *without a protective order*.  But we *do* have a protective order in this case.  *Id.*, Page 3).

Defendant agrees with the USCP that at least at this stage, details of or output from the Capitol's security system is subject to the protective order already in place.  Defendant might disagree for some videos after seeing the video, but that would come after a chance to review it.

---

[5] Government drops charges against all inauguration protesters https://www.nbcnews.com/news/us-news/government-drops-charges-against-all-inauguration-protesters-n889531; Prosecutors dismiss looting, rioting charges against hundreds of protesters across U.S. https://www.washingtontimes.com/news/2020/jun/4/prosecutors-dismiss-looting-rioting-charges-agains/

[6]     Paragraph 9 refers to Superior Court Judges, not this Court.  This is fine but it might be informative to interpret the information correctly as largely boilerplate.

[7]     For example, maps and blueprints of the Capitol are public information, published in books about the Nation's Capitol, and spread everywhere.  Such is incapable of being Sensitive or Highly Sensitive.

5

**B.** Is The Prosecution Answering The Wrong Questions?

Yet notice that this was not what the Defendant asked for in the first place.  Overall, the response of the U.S. Attorney's Office for the District of Columbia (USAO) for the Complainant U.S. Government argues that despite the concerns and questions raised the Government has nevertheless provided what it is required to provide.

A summary of the USAO's Response is that (i) within the very narrow limits of what the Government needs to disclose (ii) the Government can't find anything they have not disclosed.

The Defendant's rejections of that position include:

1) The wording of the Government's Response sounds like the Government is artificially narrowing the questions and leaving out material that would be material and required disclosures.  For example, if a witness is asked "Did you see a car run the red light?" but the witness answers "I did not see a green car painted with racing flames run the red light," one might inquire further why the answer is so limited.

    Here, the Government is asked to supply all video evidence, for example, that the supposedly most extensive investigation in history has collected, of all types, within the specific guidelines that the Defendant asked for.

    But the Government responds emphatically only regarding the building's physically installed security cameras.  Curiously absent from this discussion (despite throwing a few bones) are many thousands of hours of body-worn camera video and what some dub "civilian video."  In a revolutionary age when almost every person has a video camera in his or her pocket, better than television studios of the 1950s, the narrowness of the Government's Response to building cameras confuses and clouds the issues more than illuminating them.  The Government and

the Congress have also collected news videos from news outlets from all over the world who were present on January 6, 2021.

The USAO seems to curiously avoid the question of civilian video and body-worn cameras of the District of Columbia Metropolitan Police Department. (Again, the USCP did not wear body-worn cameras for some reason.)

2) The Government has consistently and zealously, in all or almost all January 6 prosecutions, insisted upon erroneous interpretations of the obligations of *Brady v. Maryland*, progeny, related precedents, and the U.S. Constitutional origins of the due process requirement at issue.

In fact, now in this case today, the U.S. Department of Justice is disagreeing with itself. The defendant has briefed in detail and relied upon in its main motion memorandum of law the DOJ's old "Justice Manual," giving instructions to prosecutors that are the opposite of what the prosecutors are doing now in all January 6 prosecutions. It is not just that a lawyer suggests a different interpretation. Rather, the DOJ required its prosecutors to take the opposite positions of what they are doing and arguing today. *See* United States Justice Manual (USJMM) § 9-5.001, https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.002. *(Emphases added.)*

Specifically, materials for which the Constitution commands disclosure to give effect to due process and to attempt a fair trial include not merely evidence that directly meets and destroys the prosecution's case outright. Disclosure is mandated for anything that might lead to the identification and location of witnesses that the Defendant could call in his defense, information that might be used to cross-examine

7

the prosecution's witnesses more effectively, evidence supporting an affirmative defense (yet not directly exploding the prosecution's case in chief) or refuting state of mind or intent, or guilt of a lesser crime instead of a more serious crime. Information that might lessen sentencing must be disclosed.

In these January 6 prosecutions, and possibly as a larger trend, the USAO has abandoned the DOJ's own "Justice Manual" guidance that what is potentially "exculpatory" is very broad and multi-faceted. The stingy, narrow view of the DOJ is alarming, for it suggests that these errors have invaded all of the January 6 prosecutions, numbering in the hundreds, questioning how many convictions are constitutionally defective. It also suggests a trend in a bad direction overall.

3) It would be extraordinary beyond belief that the Government does not have the information requested. That position would lack all credibility. Given that the Government claims to have actually looked, in supposedly the most extensive investigation in U.S. criminal history (in size if not complexity), the Government's claim to not know the identity of potential witnesses that the Defendant would like to call for valid reasons can simply not be taken at face value.

The Government provided an affidavit about the secrecy of the Capitol security system in response to the Court's Order. At a minimum, as a safeguard, the Court should further order that the U.S. Attorney or the most senior person(s) with knowledge aver under oath by Declaration that the U.S. Government does not have the information that the Defendant has requested. Given the incredibility of that position, the Government should support it under oath.

*C.* In Government's Original Opposition, What Disrupted Congress Still Not Identified

The Government does not seem to have addressed again in this context the reasons why the Joint Session of Congress was disrupted and recessed at approximately 2:13 PM to 2:30 PM (as variously described, but likely initiated as early as 2:00 PM). However, this remains of immense significance. The unwillingness of the DoJ, USAO, USCP, FBI, and Complainant United States of America to touch on this central and crucial subject is so astonishing that the silence speaks more than any statement.

Hundreds of January 6, 2021, Defendants are charged with having intents, motives, states of mind, and plans known only to the FBI and unknown then or now to the Defendants. Unknown to the Defendants, the FBI can tell us that the Defendants intended to and did disrupt the Joint Session of Congress, having reasons known to the FBI but not to the Defendants themselves. Of course the FBI discovered what was in the Defendant's mind shortly after a public outcry by politicians and journalists.

Given the enormous hyperbole surrounding January 6, 2021, surely this central event would be thoroughly investigated by the Government and the Government would eagerly disclose all of these details.

Yet, instead, quite the contrary. We are not allowed to know what – in real time – precipitated the recess of the January 6 Joint Session of Congress. This is curious.

We do know for certain that Congress recessed. We can know indirectly for certain that there was a reason why. Presumably, Congress did not recess for no reason.

We can be certain that the USCP evaluated risks and threats, real or possible, and came to a point at which the USCP recommended to Congressional leaders that they recess. We know from standard procedure that there are text messages, including on internal

networks, emails, messages, notes, radio traffic, etc. showing in real-time "as it happened" contemporaneous evaluations of the threat(s) and

We know for a fact that alternate causes existed as different explanations. We know for a fact that two (2) operational and real pipe bombs were found within about 2 blocks to the RNC and about 4 blocks to the DNC of the U.S. Capitol. We know from normal procedure that the USCP could not know at the time if other pipe bombs might be planted all around the Capitol complex. We know for a fact that the Cannon House Office Building just South of the Capitol building was evacuated and closed due to the pipe bombs, along with at least two Library of Congress buildings almost as close. Therefore, we know there is more than one explanation which might be the reason for the recess of the Congress.

Yet in the central, core issue of January 6, the subject of much hyper-ventilating about the threat to democracy, the disruption of the Congressional proceeding, the Government is furiously determined to prevent the Defendants facing up to 20 years in prison under 18 U.S.C. 1512(c)(2) and/or the public from finding out the facts of what actually happened, in real time, as it happened.

Curious.

The problem is that Defendants cannot be guilty of obstructing an official proceeding that recessed before they arrived.

It is difficult to suggest a more central core of a criminal proceeding than whether the act occurred before the accused Defendant arrived.

Where the Government goes wrong is that at this stage it is not our task to pre-judge the trial. The Defendant is entitled to all information and evidence disclosed that might bear on the question of his guilt or innocence on this crucial point.

10

**D.** <u>Government Persistently Ignores its *Brady* Obligations from Congress</u>

***The U.S. Congress is the complaining witness of alleged crimes.*** The USCP is a creation (by statute) and agency of Congress answerable to the Congressional leadership. Congress and the USCP claim to be victims of alleged crimes.

Therefore, the entire substance of the Declarations of Thomas A. Dibase is irrelevant because Congress and the USCP are victims of the alleged crimes. The standard operating procedure and posturing about information in the USCP's hands is immaterial.

The General Counsel of the USCP emphasizes in detail its own self-serving and self-appointed, procedures for treating unremarkable information as if it were nuclear secrets. None of that matters. USCP claims to be a victim in this and related cases. Its procedures do not count. We are in the U.S. District Court for the District of Columbia in criminal prosecution.

One could not report a home robbery to the police, then erase all the home security video recordings, wipe down all the surfaces, eliminate fingerprints, refuse to let the police in to inspect the house, and, when asked what is missing, destroy all the photographs showing what was in the home and burning all the purchase receipts. Having hidden all the evidence, the homeowner could not speculate that the robber must have been his rival at work competing for the same promotion. We would not merely take that on faith.

The Courts have typically addressed such conflicts by ruling that the Court has the authority to dismiss the case before the Court, irrespective of whether it has the authority to order the information disclosed, such as national security secrets. Under later legislation, the USAO would have to convene a Classified Information Procedures Act proceeding under 18a U.S. Code § 6, with an automatic right to an interlocutory appeal under 18a U.S. Code § 7.

Either (a) the Court should disregard in substance DiBlase's third Declaration, averring as

an attorney not as a fact witness, (b) or order an 18a U.S. Code § 6 hearing.

### E. Government Hints at, Does Not Establish, Anything Special About Cameras

At the bottom of page 4 of the Declaration, DiBlase repeats the standard and consistent position of the USCP: "Here, the release of Capitol security street videos [in that case involving DUI cases] could compromise USCP's ability to protect the Capitol." We saw many factors that limited the USCP's ability to protect the U.S. Capitol and its occupants, including Congress. Congressional leaders left USCP officers "out to dry" in a distressing way.

Yet one cannot imagine any way in which knowing the characteristics of the capitol security video cameras would earn a spot on the list of factors that "could compromise USCP's ability to protect the Capitol." Public awareness that the Capitol has a very extensive security camera network would discourage attacks or crime. If it is common knowledge that there is nowhere to hide that the cameras cannot see, this might be the greatest defense.

The Government's violation of disclosure requirements stands on the unstated assumption that the same type of ordinary video cameras used in every Walmart or shopping mall are somehow cutting-edge technology implicating national security when used at the Capitol. Other than hyperbole, the Government has never in any January 6 case hinted of anything about the Capitol security camera systems that are unusual. Cameras are cameras. There are two technical characteristics that counsel will not mention that make their functionality above average. However, these characteristics are commonplace in the public, commercial world.

### F. Throwing Self-Serving Shadows is Not Credible

The Government's Supplemental Opposition at ECF Dkt. # 255 again answers what was not asked and does not answer what was asked on Page 2: "Based upon a thorough investigation

into the defendant's particular conduct at the Capitol, the government believes that the defendant was only present on the West Front during the riot from approximately 2:30 p.m. to 6:00 p.m.

But this is not the question. In every January 6 prosecution, the USAO will spend much time in the trial inflaming the jury and appealing to emotion rather than fact by showing "context" videos and evidence that do not show the Defendant(s) at bar in those cases.

Are we to interpret this point by the USAO as a concession that the Government will not show any videos that do not portray Defendant Nichols? To this Counsel's knowledge, the Government has never accepted that limitation before. On the contrary, the Government has insisted upon trying to show that the entire mob is collectively guilty. Such an approach is unlawful and unconstitutional under due process. Yet unless it is decisively ruled out of this case, the Defendant must be prepared to meet it and rebut it. Disclosure is not limited to only videos showing the Defendant where the prosecution accepts no such limitation for itself.

Here, Defendant has not left the USAO adrift. Video that identifies and shows the conduct of likely witnesses who at other times were directly in the vicinity of Defendant Nichols has been painstakingly requested and clarified. Where videos show a likely witness right where Nichols was, and other videos help pin down an identification and characterization of the witness' behavior, that video specified by the Defendant must be disclosed as detailed in Defendant's motions. Defendant would prefer to see every hour and minute of video but here in this extraordinary case Counsel could not digest random video. Defendant has requested by detail.

The Opposition also states that "the government has, to date, only found video footage that shows the defendant was present on the West Front of the United States Capitol on January 6, 2021, between approximately 2:30 p.m. and 6:00 p.m. in only two specific rooms or areas: the tunnel on the Lower West Terrace and ST-2M. Of these two areas, a Capitol CCV camera covers

13

only the Lower West Terrace tunnel."[8]

This is actually very productive and constructive given the Government's usual fierce resistance to specifying details ahead of trial.

Unfortunately, however, the number of people who were in those locations is extremely large. And moreover, the Government is not prosecuting Nichols (or most people) for merely being present in those locations. The prosecution on many Counts – and we must remember to consider each Count independently – accuses Nichols of intent, motive, purpose, state of mind, as well as supposedly being part of a mob, implying some telepathic or other communicative common purpose. The nature of the prosecution implicates witnesses around the area who might testify to either what Nichols was doing or what the crowd as a whole was doing in those areas.

The Opposition then argues that "The defendant's conduct at that time in that location forms the basis of the allegations against him in this case." And that would be constitutionally proper, if the Defendant's own individual conduct and conduct alone were the entirety of the accusations made at trial. But that is not how the USAO has been prosecuting January 6 cases.

Again, are we to take this argument to mean that the Government agrees to exclude any mention of *other people's* conduct as having any relevance to Nichols' guilt or innocence (or given the number of counts alone, just math, the number of Counts that he might be found guilty to)? Does the Government agree to exclude from the trial its usual presentations telling the Defendant what he was thinking? Will the FBI engage in more mind-reading and tell the jury that the FBI knows what you intended, why you engaged in certain conduct and your motive? Or is the Government conceding that the FBI does not have a mind-reading machine and cannot tell the jury anything other than the Defendant's provable conduct and his words ripped violently out of

---

8   One hopes that this is no longer true and the Congress will appropriate funds for upgrades.

14

context? Is the Government stepping back from its practice of implying that the DOJ knows better than you do what you meant to say and what you intended by your actions?

### G. Lack of Indexing

The Opposition further argues on page 3, "Instead, it appears that the defendant wants the government to expend significant pretrial hours reviewing irrelevant video…." But the Government has chosen to prosecute the Defendant, including choosing how badly to over-charge Defendants beyond sound reasons. The Government is free to choose which counts it wishes to prosecute or not, within the limits of the Constitution. The Government had a statute of limitation period of at least 5 years, yet chose to rush.

The Government's response now assumes that neither the USCP nor the FBI engaged in any kind of indexing of the videos it collected. Counsel's support staff has personal knowledge that this is not so because when a defense counsel sought technical support to index video for an Oath Keepers Defendant and received bids, the leading company suddenly became unavailable because (at least as conveyed by the company in apology for withdrawing its bid) the DOJ hired the company instead.

Similarly, on the Congress' side, if the Select Committee to Investigate the January 6 Attack on the Capitol obtained videos from other sources, which appears to have happened in large quantities, such as "civilian video" or news video (aired or unaired), that the Committee did not index or organize such video or other information. One might have sympathy for committee staffers until recalling that Congress readily spends trillions of dollars and made this matter a high priority.

15

**H.** <u>Throwing Self-Serving Shadows is Not Credible</u>

Continuing its over-classification (bad) habits, the USCP, in every forum, makes false statements about people gathering information about the interior of the Capitol. This insults our intelligence. The amount of work to piece together the layout of the Capitol – rather than just buying a tourist book that publishes this information or looking on the internet – would be a massive waste of time. Sinister "Rohrsacht Test" hints of dark purposes, when the information is widely published and not secret, should not justify "over-classification" that occurs in D.C.

**I.** <u>Exchange Of Pleadings Did Not Seem To Resolve Anything</u>

It does not seem that the opportunity for the Government to illuminate the situation has resolved or narrowed the dispute. On the contrary, the defendant's counsel expresses their strong concerns that the persistent and consistent disregard of the Government's constitutional obligations across hundreds of January 6 prosecutions is far more serious and significant than ever due to the positions taken here in this dispute.

While the Court ordered, in effect, additional briefing, both legal and factual, it should not be ignored that the Government was ordered on December 15, 1791, when the Bill of Rights or first ten Amendments were ratified and incorporated into the U.S. Constitution to provide fair trials and due process in sharp rejection of what the Colonies had suffered under the British Crown. In other words, even without the Court's handling of the implementation of these procedures for the case, the Government would already be under "orders" for this disclosure.

**J.** <u>The Court Ordered More Than Just "An" Affidavit</u>

The Government's Response sounds to Defendant's lawyers' ears as if the Court only ordered some paperwork in the form of "any" affidavit "for the file" without concern for the actual situation and the substance of the issue. The Government has

16

indeed supplied an affidavit . But what that affidavit says and what the USAO's response says, Defendant contends do not answer the Court's substantive "questions" (recognition of unclear factors deserving more illumination). Thus the Defendant contends that the Court intended to dig into the substance of the questions at hand, and that the affidavit and response was to help the Court with the actual details of the substance.

## CONCLUSION

The Court should order the production of the requested documents and records.

Dated:  September 25, 2023   RESPECTFULLY SUBMITTED,
                            By Counsel

/s/ **Bradford L. Geyer**              /s/ **Joseph D. McBride, Esq**
Bradford L. Geyer                       Joseph D. McBride, Esq.
PHV PA 62998                            Bar ID: NY0403
NJ 022751991                            THE MCBRIDE LAW FIRM, PLLC
141 "I" Route 130 South, 303            99 Park Avenue, 6th Floor
Cinnaminson, NJ 08077                   New York, NY 10016
bradford.geyer@formerfeds.com           jmcbride@mcbridelawnyc.com


## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia to all referenced counsel of record.

**/s/ Joseph D. McBride, Esq**